A6024     90249

CCW-CA-D-322-HIGHBERGER

**BY FAX**

**LAWYERS for JUSTICE, PC**
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  V. Andre Sherman (SBN 198684)
2  **GIRARDI | KEESE**
   1126 Wilshire Boulevard
   Los Angeles, California 90017
3  Tel: (213) 977-0211 / Fax: (213) 481-1554

4  Edwin Aiwazian (SBN 232943)
   **LAWYERS for JUSTICE, PC**
5  410 West Arden Avenue, Suite 203
   Glendale, California 91203
6  Tel: (818) 265-1020 / Fax: (818) 265-1021

7  *Attorneys for* Plaintiff

8

FILED
Superior Court of California
County of Los Angeles

AUG 29 2016

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
   Moses Soto

9           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                **FOR THE COUNTY OF LOS ANGELES**

10

11  ANDREW DAWSON, individually, and on
    behalf of other members of the general public
    similarly situated;

12              Plaintiff,

13      vs.

14  HITCO CARBON COMPOSITES, INC., an
    unknown business entity; and DOES 1
15  through 100, inclusive,

16              Defendants.

17

Case No.: **BC 632212**

**CLASS ACTION COMPLAINT FOR DAMAGES**

(1) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums);
(2) Violation of California Labor Code § 226.7 (Unpaid Rest Period Premiums);
(3) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages);
(4) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid);
(5) Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment);
(6) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements);
(7) Violation of California Labor Code § 1174(d) (Failure To Keep Requisite Payroll Records);
(8) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses);
(9) Violation of California Business & Professions Code §§ 17200, et seq.

**DEMAND FOR JURY TRIAL**

18
19
20
21
22
23
24
25
26
27
28

CIT/CASE: BC632212
LEA/DEF#:

RECEIPT #: CCH524B90129
DATE PAID: 08/29/16
PAYMENT: 04:12 PM
RECEIVED: $1,435.00

$1,435.00
$0.00
$0.00
$0.00
310

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1   COMES NOW, Plaintiff ANDREW DAWSON ("Plaintiff COLLINS"),

2   individually, and on behalf of other members of the general public similarly situated,

3   and alleges as follows:

4   <u>**JURISDICTION AND VENUE**</u>

5   1.      This class action is brought pursuant to the California Code of Civil

6   Procedure section 382.  The monetary damages and restitution sought by Plaintiff

7   exceeds the minimal jurisdiction limits of the Superior Court and will be established

8   according to proof at trial.  The "amount in controversy" for the named Plaintiff,

9   including but not limited to claims for compensatory damages, restitution, penalties,

10   wages, premium pay, and pro rata share of attorneys' fees, is less than seventy-five

11   thousand dollars ($75,000).

12   2.      This Court has jurisdiction over this action pursuant to the California

13   Constitution, Article VI, Section 10, which grants the superior court "original

14   jurisdiction in all other causes" except those given by statute to other courts.  The

15   statutes under which this action is brought do not specify any other basis for

16   jurisdiction.

17   3.      This Court has jurisdiction over Defendant because, upon information and

18   belief, Defendant is a citizen of California, has sufficient minimum contacts in

19   California, or otherwise intentionally avails itself of the California market so as to

20   render the exercise of jurisdiction over it by California courts consistent with

21   traditional notions of fair play and substantial justice.

22   4.      Venue is proper in this Court because, upon information and belief,

23   Defendant maintains offices, has agents, employs individuals, and/or transacts business

24   in the State of California, County of Los Angeles.  The majority of acts and omissions

25   alleged herein relating to Plaintiff and the other class members took place in the State

26   of California, including the County of Los Angeles.

27   ///

28   ///

2

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A

## PARTIES

5. Plaintiff ANDREW DAWSON is an individual residing in the State of California, County of Los Angeles.

6. Defendant HITCO CARBON COMPOSITES, INC., at all times herein mentioned, was and is, upon information and belief, an employer whose employees are engaged throughout the State of California, including the County of Los Angeles.

7. At all relevant times, Defendants HITCO CARBON COMPOSITES, INC. was the "employer" of Plaintiff within the meaning of all applicable California laws and statutes.

8. At all times herein relevant, Defendants HITCO CARBON COMPOSITES, INC. and DOES 1 through 100, and each of them, were the agents, partners, joint venturers, joint employers, representatives, servants, employees, successors-in-interest, co-conspirators and/or assigns, each of the other, and at all times relevant hereto were acting within the course and scope of their authority as such agents, partners, joint venturers, joint employers, representatives, servants, employees, successors, co-conspirators and/or assigns, and all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and/or consent of each defendant designated as a DOE herein.

9. The true names and capacities, whether corporate, associate, individual or otherwise, of defendants DOES 1 through 100, inclusive, are unknown to Plaintiff who sues said defendants by such fictitious names. Plaintiff is informed and believes, and based on that information and belief alleges, that each of the defendants designated as a DOE is legally responsible for the events and happenings referred to in this Complaint, and unlawfully caused the injuries and damages to Plaintiff and the other class members as alleged in this Complaint. Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

10. Defendant HITCO CARBON COMPOSITES, INC. and DOES 1 through 100 will hereinafter collectively be referred to as "Defendants."

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

3

Exhibit A

11.    Plaintiff further alleges that Defendants, directly or indirectly controlled or affected the working conditions, wages, working hours, and conditions of employment of Plaintiff and the other class members and aggrieved employees so as to make each of said Defendants employers and employers liable under the statutory provisions set forth herein.

## CLASS ACTION ALLEGATIONS

12.    Plaintiff brings this action on his own behalf and on behalf of all other members of the general public similarly situated, and, thus, seeks class certification under California Code of Civil Procedure section 382.

13.    The proposed class is defined as follows:

All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment.

14.    Plaintiff reserves the right to establish subclasses as appropriate.

15.    The class is ascertainable and there is a well-defined community of interest in the litigation:

a.    <u>Numerosity</u>: The class members are so numerous that joinder of all class members is impracticable.  The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than fifty (50) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records.

b.    <u>Typicality</u>: Plaintiff's claims are typical of all other class members' as demonstrated herein.  Plaintiff will fairly and adequately protect the interests of the other class members with whom he has a well-defined community of interest.

///

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

4

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

c.  <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of each class member, with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff has no interest that is antagonistic to the other class members. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and during the pendency of this action will continue to incur, costs and attorneys' fees, that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

d.  <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual joinder of all class members is impractical.

e.  <u>Public Policy Considerations</u>: Certification of this lawsuit as a class action will advance public policy objectives. Employers of this great state violate employment and labor laws every day. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. However, class actions provide the class members who are not named in the complaint anonymity that allows for the vindication of their rights.

16.   There are common questions of law and fact as to the class members that predominate over questions affecting only individual members. The following common questions of law or fact, among others, exist as to the members of the class:

a.  Whether Defendants' failure to pay wages, without abatement or reduction, in accordance with the California Labor Code, was willful;

///

5

Exhibit A

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

b. Whether Defendants' had a corporate policy and practice of failing to pay their hourly-paid or non-exempt employees within the State of California for all hours worked, missed (short, late, interrupted, and/or missed altogether) meal periods and rest breaks in violation of California law;

c. Whether Defendants deprived Plaintiff and the other class members of meal and/or rest periods or required Plaintiff and the other class members to work during meal and/or rest periods without compensation;

d. Whether Defendants failed to pay minimum wages to Plaintiff and the other class members for all hours worked;

e. Whether Defendants failed to pay all wages due to Plaintiff and the other class members within the required time upon their discharge or resignation;

f. Whether Defendants failed to timely pay all wages due to Plaintiff and the other class members during their employment;

g. Whether Defendants complied with wage reporting as required by the California Labor Code; including, *inter alia*, section 226;

h. Whether Defendants kept complete and accurate payroll records as required by the California Labor Code, including, *inter alia*, section 1174(d);

i. Whether Defendants failed to reimburse Plaintiff and the other class members for necessary business-related expenses and costs;

j. Whether Defendants' conduct was willful or reckless;

k. Whether Defendants engaged in unfair business practices in violation of California Business & Professions Code section 17200, et seq.;

///

6

Exhibit A

l.      The appropriate amount of damages, restitution, and/or monetary penalties resulting from Defendants' violation of California law; and

m.      Whether Plaintiff and the other class members are entitled to compensatory damages pursuant to the California Labor Code.

## GENERAL ALLEGATIONS

17.     At all relevant times set forth herein, Defendants employed Plaintiff and other persons as hourly-paid or non-exempt employees within the State of California.

18.     Defendants, jointly and severally, employed Plaintiff as an hourly-paid, non-exempt employee, from approximately January 2013 to approximately June 2014, in the State of California, County of Los Angeles.

19.     Defendants hired Plaintiff and the other class members and classified them as hourly-paid or non-exempt employees, and failed to compensate them for all hours worked, missed meal periods and/or rest breaks.

20.     Defendants had the authority to hire and terminate Plaintiff and the other class members; to set work rules and conditions governing Plaintiff's and the other class members' employment; and to supervise their daily employment activities.

21.     Defendants exercised sufficient authority over the terms and conditions of Plaintiff's and the other class members' employment for them to be joint employers of Plaintiff and the other class members.

22.     Defendants directly hired and paid wages and benefits to Plaintiff and the other class members.

23.     Defendants continue to employ hourly-paid or non-exempt employees within the State of California.

24.     Plaintiff and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants.

25.     Plaintiff is informed and believes, and based thereon alleges, that Defendants engaged in a uniform policy/practice of wage abuse against their hourly-

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

7

Doc# 1 Page# 7 - Doc ID = 1662862871
Exhibit A

Exhibit A

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1 paid or non-exempt employees within the State of California. This uniform

2 policy/practice involved, *inter alia*, failing to pay them for all regular wages earned,

3 and missed meal periods and rest breaks in violation of California law.

4     26.    Plaintiff is informed and believes, and based thereon alleges, that

5 Defendants failed to provide Plaintiff and the other class members the required rest and

6 meal periods during the relevant time period as required under the Industrial Welfare

7 Commission Wage Orders and thus they are entitled to any and all applicable penalties.

8     27.    Plaintiff is informed and believes, and based thereon alleges, that

9 Defendants knew or should have known that Plaintiff and the other class members were

10 entitled to receive all meal periods or payment of one additional hour of pay at

11 Plaintiff's and the other class member's regular rate of pay when a meal period was

12 missed, and they did not receive all meal periods or payment of one additional hour of

13 pay at Plaintiff's and the other class member's regular rate of pay when a meal period

14 was missed.

15     28.    Plaintiff is informed and believes, and based thereon alleges, that

16 Defendants knew or should have known that Plaintiff and the other class members were

17 entitled to receive all rest periods or payment of one additional hour of pay at

18 Plaintiff's and the other class member's regular rate of pay when a rest period was

19 missed, and they did not receive all rest periods or payment of one additional hour of

20 pay at Plaintiff's and the other class members' regular rate of pay when a rest period

21 was missed.

22     29.    Plaintiff is informed and believes, and based thereon alleges, that

23 Defendants knew or should have known that Plaintiff and the other class members were

24 entitled to receive at least minimum wages for compensation and that they were not

25 receiving at least minimum wages for all hours worked.

26     30.    Plaintiff is informed and believes, and based thereon alleges, that

27 Defendants knew or should have known that Plaintiff and the other class members were

28 entitled to receive all wages owed to them upon discharge or resignation, including

8

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  minimum wages and meal and rest period premiums, and they did not, in fact, receive

2  all such wages owed to them at the time of their discharge or resignation.

3      31.    Plaintiff is informed and believes, and based thereon alleges, that

4  Defendants knew or should have known that Plaintiff and the other class members were

5  entitled to receive all wages owed to them during their employment.  Plaintiff and the

6  other class members did not receive payment of all wages, including minimum wages

7  and meal and rest period premiums, within any time permissible under California Labor

8  Code section 204.

9      32.    Plaintiff is informed and believes, and based thereon alleges, that

10  Defendants knew or should have known that Plaintiff and the other class members were

11  entitled to receive complete and accurate wage statements in accordance with

12  California law, but, in fact, they did not receive complete and accurate wage statements

13  from Defendants.  The deficiencies included, *inter alia*, the failure to include the total

14  number of hours worked by Plaintiff and the other class members.

15      33.    Plaintiff is informed and believes, and based thereon alleges, that

16  Defendants knew or should have known that Defendants had to keep complete and

17  accurate payroll records for Plaintiff and the other class members in accordance with

18  California law, but, in fact, did not keep complete and accurate payroll records.

19      34.    Plaintiff is informed and believes, and based thereon alleges, that

20  Defendants knew or should have known that Plaintiff and the other class members were

21  entitled to reimbursement for necessary business-related expenses.

22      35.    Plaintiff is informed and believes, and based thereon alleges, that

23  Defendants knew or should have known that they had a duty to compensate Plaintiff

24  and the other class members pursuant to California law, and that Defendants had the

25  financial ability to pay such compensation, but willfully, knowingly, and intentionally

26  failed to do so, and falsely represented to Plaintiff and the other class members that

27  they were properly denied wages, all in order to increase Defendants' profits.

28  ///

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

36.    At all material times set forth herein, Defendants failed to provide the requisite uninterrupted meal and rest periods to Plaintiff and the other class members.

37.    At all material times set forth herein, Defendants failed to pay Plaintiff and the other class members at least minimum wages for all hours worked.

38.    At all material times set forth herein, Defendants failed to pay Plaintiff and the other class members all wages owed to them upon discharge or resignation.

39.    At all material times set forth herein, Defendants failed to pay Plaintiff and the other class members all wages within any time permissible under California law, including, *inter alia*, California Labor Code section 204.

40.    At all material times set forth herein, Defendants failed to provide complete or accurate wage statements to Plaintiff and the other class members.

41.    At all material times set forth herein, Defendants failed to keep complete or accurate payroll records for Plaintiff and the other class members.

42.    At all material times set forth herein, Defendants failed to reimburse Plaintiff and the other class members for necessary business-related expenses and costs.

43.    At all material times set forth herein, Defendants failed to properly compensate Plaintiff and the other class members pursuant to California law in order to increase Defendants' profits.

44.    California Labor Code section 218 states that nothing in Article 1 of the Labor Code shall limit the right of any wage claimant to "sue directly . . . for any wages or penalty due to him [or her] under this article."

## FIRST CAUSE OF ACTION

### (Violation of California Labor Code §§ 226.7 and 512(a))

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

45.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44, and each and every part thereof with the same force and effect as though fully set forth herein.

///

10

Exhibit A

46.    At all relevant times, the IWC Order and California Labor Code sections 226.7 and 512(a) were applicable to Plaintiff's and the other class members' employment by Defendants.

47.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any meal or rest period mandated by an applicable order of the California IWC.

48.    At all relevant times, the applicable IWC Wage Order and California Labor Code section 512(a) provide that an employer may not require, cause or permit an employee to work for a work period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is no more than six (6) hours, the meal period may be waived by mutual consent of both the employer and employee.

49.    At all relevant times, the applicable IWC Wage Order and California Labor Code section 512(a) further provide that an employer may not require, cause or permit an employee to work for a work period of more than ten (10) hours per day without providing the employee with a second uninterrupted meal period of not less than thirty (30) minutes, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

50.    During the relevant time period, Plaintiff and the other class members who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period.

51.    During the relevant time period, Plaintiff and the other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period.

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

11

Exhibit A

Exhibit A

52.     During the relevant time period, Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods.

53.     During the relevant time period, Defendants failed to pay Plaintiff and the other class members the full meal period premium due pursuant to California Labor Code section 226.7.

54.     Defendants' conduct violates applicable IWC Wage Order and California Labor Code sections 226.7 and 512(a).

55.     Pursuant to applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiff and the other class members are entitled to recover from Defendants one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

## SECOND CAUSE OF ACTION

### (Violation of California Labor Code § 226.7)

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

56.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 55, and each and every part thereof with the same force and effect as though fully set forth herein.

57.     At all times herein set forth, the applicable IWC Wage Order and California Labor Code section 226.7 were applicable to Plaintiff's and the other class members' employment by Defendants.

58.     At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.

59.     At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest

12

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

1  period time shall be based on the total hours worked daily at the rate of ten (10)

2  minutes net rest time per four (4) hours or major fraction thereof" unless the total daily

3  work time is less than three and one-half (3 ½) hours.

4       60.    During the relevant time period, Defendants required Plaintiff and other

5  class members to work four (4) or more hours without authorizing or permitting a ten

6  (10) minute rest period per each four (4) hour period worked.

7       61.    During the relevant time period, Defendants willfully required Plaintiff

8  and the other class members to work during rest periods and failed to pay Plaintiff and

9  the other class members the full rest period premium for work performed during rest

10  periods.

11       62.    During the relevant time period, Defendants failed to pay Plaintiff and the

12  other class members the full rest period premium due pursuant to California Labor

13  Code section 226.7

14       63.    Defendants' conduct violates applicable IWC Wage Orders and California

15  Labor Code section 226.7.

16       64.    Pursuant to the applicable IWC Wage Orders and California Labor Code

17  section 226.7(b), Plaintiff and the other class members are entitled to recover from

18  Defendants one additional hour of pay at the employees' regular hourly rate of

19  compensation for each work day that the rest period was not provided.

20                    <u>**THIRD CAUSE OF ACTION**</u>

21              **(Violation of California Labor Code §§ 1194, 1197, and 1197.1)**

22       **(Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)**

23       65.    Plaintiff incorporate by reference the allegations contained in paragraphs

24  1 through 64, and each and every part thereof with the same force and effect as though

25  fully set forth herein.

26       66.    At all relevant times, California Labor Code sections 1194, 1197, and

27  1197.1 provide that the minimum wage to be paid to employees, and the payment of a

28  lesser wage than the minimum so fixed is unlawful.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

13

67.    During the relevant time period, Defendants failed to pay minimum wage to Plaintiff and the other class members as required, pursuant to California Labor Code sections 1194, 1197, and 1197.1.

68.    Defendants' failure to pay Plaintiff and the other class members the minimum wage as required violates California Labor Code sections 1194, 1197, and 1197.1. Pursuant to those sections Plaintiff and the other class members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorney's fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

69.    Pursuant to California Labor Code section 1197.1, Plaintiff and the other class members are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each employee minimum wages.

70.    Pursuant to California Labor Code section 1194.2, Plaintiff and the other class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## FOURTH CAUSE OF ACTION

### (Violation of California Labor Code §§ 201 and 202)

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

71.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 70, and each and every part thereof with the same force and effect as though fully set forth herein.

72.    At all relevant times herein set forth, California Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and if an employee quits his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours' notice of his or her intention to quit, in which case the employee is entitled to

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

14

1    his or her wages at the time of quitting.

2        73.    During the relevant time period, Defendants intentionally and willfully

3    failed to pay Plaintiff and the other class members who are no longer employed by

4    Defendants their wages, earned and unpaid, within seventy-two (72) hours of their

5    leaving Defendants' employ.

6        74.    Defendants' failure to pay Plaintiff and the other class members who are

7    no longer employed by Defendants' their wages, earned and unpaid, within seventy-

8    two (72) hours of their leaving Defendants' employ, is in violation of California Labor

9    Code sections 201 and 202.

10       75.    California Labor Code section 203 provides that if an employer willfully

11   fails to pay wages owed, in accordance with sections 201 and 202, then the wages of

12   the employee shall continue as a penalty from the due date thereof at the same rate until

13   paid or until an action is commenced; but the wages shall not continue for more than

14   thirty (30) days.

15       76.    Plaintiff and the other class members are entitled to recover from

16   Defendants the statutory penalty wages for each day they were not paid, up to a thirty

17   (30) day maximum pursuant to California Labor Code section 203.

18                          **FIFTH CAUSE OF ACTION**

19                  **(Violation of California Labor Code § 204)**

20       **(Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)**

21       77.    Plaintiff incorporates by reference the allegations contained in paragraphs

22   1 through 76, and each and every part thereof with the same force and effect as though

23   fully set forth herein.

24       78.    At all times herein set forth, California Labor Code section 204 provides

25   that all wages earned by any person in any employment between the 1st and 15th days,

26   inclusive, of any calendar month, other than those wages due upon termination of an

27   employee, are due and payable between the 16th and the 26th day of the month during

28   which the labor was performed.

LAWYERS for JUSTICE, PC<br>410 West Arden Avenue, Suite 203<br>Glendale, California 91203

15

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A

Exhibit A

79.    At all times herein set forth, California Labor Code section 204 provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

80.    At all times herein set forth, California Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.

81.    During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any time period permissible under California Labor Code section 204.

82.    Plaintiff and the other class members are entitled to recover all remedies available for violations of California Labor Code section 204.

## SIXTH CAUSE OF ACTION

### (Violation of California Labor Code § 226(a))

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

83.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 82, and each and every part thereof with the same force and effect as though fully set forth herein.

84.    At all material times set forth herein, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

16

Exhibit A

1    hourly rates in effect during the pay period and the corresponding number of hours

2    worked at each hourly rate by the employee.  The deductions made from payments of

3    wages shall be recorded in ink or other indelible form, properly dated, showing the

4    month, day, and year, and a copy of the statement or a record of the deductions shall be

5    kept on file by the employer for at least three years at the place of employment or at a

6    central location within the State of California.

7        85.    Defendants have intentionally and willfully failed to provide Plaintiff and

8    the other class members with complete and accurate wage statements.  The deficiencies

9    include, but are not limited to: the failure to include the total number of hours worked

10   by Plaintiff and the other class members.

11       86.    As a result of Defendants' violation of California Labor Code section

12   226(a), Plaintiff and the other class members have suffered injury and damage to their

13   statutorily-protected rights.

14       87.    More specifically, Plaintiff and the other class members have been injured

15   by Defendants' intentional and willful violation of California Labor Code section

16   226(a) because they were denied both their legal right to receive, and their protected

17   interest in receiving, accurate and itemized wage statements pursuant to California

18   Labor Code section 226(a).

19       88.    Plaintiff and the other class members are entitled to recover from

20   Defendants the greater of their actual damages caused by Defendants' failure to comply

21   with California Labor Code section 226(a), or an aggregate penalty not exceeding four

22   thousand dollars per employee.

23       89.    Plaintiff and the other class members are also entitled to injunctive relief

24   to ensure compliance with this section, pursuant to California Labor Code section

25   226(g).

26   ///

27   ///

28   ///

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

*(left margin)* LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

Exhibit A

## SEVENTH CAUSE OF ACTION

### (Violation of California Labor Code § 1174(d))

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

90.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 89, and each and every part thereof with the same force and effect as though fully set forth herein.

91.    Pursuant to California Labor Code section 1174(d), an employer shall keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments.  These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than two years.

92.    Defendants have intentionally and willfully failed to keep accurate and complete payroll records showing the hours worked daily and the wages paid, to Plaintiff and the other class members.

93.    As a result of Defendants' violation of California Labor Code section 1174(d), Plaintiff and the other class members have suffered injury and damage to their statutorily-protected rights.

94.    More specifically, Plaintiff and the other class members have been injured by Defendants' intentional and willful violation of California Labor Code section 1174(d) because they were denied both their legal right and protected interest, in having available, accurate and complete payroll records pursuant to California Labor Code section 1174(d).

///

///

///

///

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

18

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A

## EIGHTH CAUSE OF ACTION

### (Violation of California Labor Code §§ 2800 and 2802)

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

95.　Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 94, and each and every part thereof with the same force and effect as though fully set forth herein.

96.　Pursuant to California Labor Code sections 2800 and 2802, an employer must reimburse its employee for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her job duties or in direct consequence of his or her job duties or in direct consequence of his or her obedience to the directions of the employer.

97.　Plaintiff and the other class members incurred necessary business-related expenses and costs that were not fully reimbursed by Defendants.

98.　Defendants have intentionally and willfully failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs. Plaintiff and the other class members are entitled to recover from Defendants their business-related expenses and costs incurred during the course and scope of their employment, plus interest accrued from the date on which the employee incurred the necessary expenditures at the same rate as judgments in civil actions in the State of California.

## NINTH CAUSE OF ACTION

### (Violation of California Business & Professions Code §§ 17200, et seq.)

### (Against HITCO CARBON COMPOSITES, INC. and DOES 1 through 100)

99.　Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 98, and each and every part thereof with the same force and effect as though fully set forth herein.

100.　Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, other class members, to the general public,

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

19

1    and Defendants' competitors. Accordingly, Plaintiff seeks to enforce important rights

2    affecting the public interest within the meaning of Code of Civil Procedure section

3    1021.5.

4        101. Defendants' activities as alleged herein are violations of California law,

5    and constitute unlawful business acts and practices in violation of California Business

6    & Professions Code section 17200, et seq.

7        102. A violation of California Business & Professions Code section 17200, et

8    seq. may be predicated on the violation of any state or federal law. In this instant case,

9    Defendants' policies and practices of requiring employees, including Plaintiff and the

10    other class members, to work through their meal and rest periods without paying them

11    proper compensation violate California Labor Code sections 226.7 and 512(a).

12    Defendants' policies and practices of failing to pay minimum wages violate California

13    Labor Code sections 1194, 1197, 1197.1. Moreover, Defendants' policies and practices

14    of failing to timely pay wages to Plaintiff and the other class members violate

15    California Labor Code sections 201, 202 and 204. Defendants also violated California

16    Labor Code sections 226(a), 1174(d), 2800 and 2802.

17        103. As a result of the herein described violations of California law,

18    Defendants unlawfully gained an unfair advantage over other businesses.

19        104. Plaintiff and the other class members have been personally injured by

20    Defendants' unlawful business acts and practices as alleged herein, including but not

21    necessarily limited to the loss of money and/or property.

22        105. Pursuant to California Business & Professions Code sections 17200, et

23    seq., Plaintiff and the other class members are entitled to restitution of the wages

24    withheld and retained by Defendants during a period that commences four years prior

25    to the filing of this Complaint; an award of attorneys' fees pursuant to California Code

26    of Civil procedure section 1021.5 and other applicable laws; and an award of costs.

27    ///

28    ///

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiff, individually, and on behalf of other members of the general public similarly situated, requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other members of the general public similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

### Class Certification

1.     That this action be certified as a class action;

2.     That Plaintiff be appointed as the representative of the Class;

3.     That counsel for Plaintiff be appointed as Class Counsel; and

4.     That Defendants provide to Class Counsel immediately the names and most current/last known contact information (address, e-mail and telephone numbers) of all class members.

### As to the First Cause of Action

5.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7 and 512 and applicable IWC Wage Orders by willfully failing to provide all meal periods (including second meal periods) to Plaintiff and the other class members;

6.     That the Court make an award to Plaintiff and the other class members of one (1) hour of pay at each employee's regular rate of compensation for each workday that a meal period was not provided;

7.     For all actual, consequential, and incidental losses and damages, according to proof;

8.     For premium wages pursuant to California Labor Code section 226.7(b);

9.     For pre-judgment interest on any unpaid wages from the date such amounts were due;

10.    For reasonable attorneys' fees and costs of suit incurred herein; and

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

21

Exhibit A

11.    For such other and further relief as the Court may deem just and proper.

## As to the Second Cause of Action

12.    That the Court declare, adjudge and decree that Defendants violated California Labor Code section 226.7 and applicable IWC Wage Orders by willfully failing to provide all rest periods to Plaintiff and the other class members;

13.    That the Court make an award to Plaintiff and the other class members of one (1) hour of pay at each employee's regular rate of compensation for each workday that a rest period was not provided;

14.    For all actual, consequential, and incidental losses and damages, according to proof;

15.    For premium wages pursuant to California Labor Code section 226.7(b);

16.    For pre-judgment interest on any unpaid wages from the date such amounts were due; and

17.    For such other and further relief as the Court may deem just and proper.

## As to the Third Cause of Action

18.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1194, 1197, and 1197.1 by willfully failing to pay minimum wages to Plaintiff and the other class members;

19.    For general unpaid wages and such general and special damages as may be appropriate;

20.    For statutory wage penalties pursuant to California Labor Code section 1197.1 for Plaintiff and the other class members in the amount as may be established according to proof at trial;

21.    For pre-judgment interest on any unpaid compensation from the date such amounts were due;

22.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Labor Code section 1194(a);

///

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

22

Exhibit A

1      23.    For liquidated damages pursuant to California Labor Code section 1194.2;

2  and

3      24.    For such other and further relief as the Court may deem just and proper.

4      **As to the Fourth Cause of Action**

5      25.    That the Court declare, adjudge and decree that Defendants violated

6  California Labor Code sections 201, 202, and 203 by willfully failing to pay all

7  compensation owed at the time of termination of the employment of Plaintiff and the

8  other class members no longer employed by Defendants;

9      26.    For all actual, consequential, and incidental losses and damages,

10  according to proof;

11      27.    For statutory wage penalties pursuant to California Labor Code section

12  203 for Plaintiff and the other class members who have left Defendants' employ;

13      28.    For pre-judgment interest on any unpaid compensation from the date such

14  amounts were due; and

15      29.    For such other and further relief as the Court may deem just and proper.

16      **As to the Fifth Cause of Action**

17      30.    That the Court declare, adjudge and decree that Defendants violated

18  California Labor Code section 204 by willfully failing to pay all compensation owed at

19  the time required by  California Labor Code section 204 to Plaintiff and the other class

20  members;

21      31.    For all actual, consequential, and incidental losses and damages,

22  according to proof;

23      32.    For pre-judgment interest on any unpaid compensation from the date such

24  amounts were due; and

25      33.    For such other and further relief as the Court may deem just and proper.

26      **As to the Sixth Cause of Action**

27      34.    That the Court declare, adjudge and decree that Defendants violated the

28  record keeping provisions of California Labor Code section 226(a) and applicable IWC

LAWYERS for JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

---

23

CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit A

1  Wage Orders as to Plaintiff and the other class members, and willfully failed to provide

2  accurate itemized wage statements thereto;

3      35.    For actual, consequential and incidental losses and damages, according to

4  proof;

5      36.    For statutory penalties pursuant to California Labor Code section 226(e);

6      37.    For injunctive relief to ensure compliance with this section, pursuant to

7  California Labor Code section 226(g); and

8      38.    For such other and further relief as the Court may deem just and proper.

9                   **As to the Seventh Cause of Action**

10     39.    That the Court declare, adjudge and decree that Defendants violated

11 California Labor Code section 1174(d) by willfully failing to keep accurate and

12 complete payroll records for Plaintiff and the other class members as required by

13 California Labor Code section 1174(d);

14     40.    For actual, consequential and incidental losses and damages, according to

15 proof;

16     41.    For statutory penalties pursuant to California Labor Code section 1174.5;

17 and

18     42.    For such other and further relief as the Court may deem just and proper.

19                   **As to the Eighth Cause of Action**

20     43.    That the Court declare, adjudge and decree that Defendants violated

21 California Labor Code sections 2800 and 2802 by willfully failing to reimburse

22 Plaintiff and the other class members for all necessary business-related expenses as

23 required by California Labor Code sections 2800 and 2802;

24     44.    For actual, consequential and incidental losses and damages, according to

25 proof;

26     45.    For the imposition of civil penalties and/or statutory penalties;

27     46.    For reasonable attorneys' fees and costs of suit incurred herein; and

28     47.    For such other and further relief as the Court may deem just and proper.

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

24

Exhibit A

**As to the Ninth Cause of Action**

48.    That the Court decree, adjudge and decree that Defendants violated California Business and Professions Code sections 17200, et seq. by failing to provide all meal and rest periods to Plaintiff and the other class members, failing to pay at least minimum wages to Plaintiff and the other class members, failing to pay Plaintiff's and the other class members' wages timely as required by California Labor Code section 201, 202 and 204 and by violating California Labor Code sections 226(a), 1174(d), 2800 and 2802.

49.    For restitution of unpaid wages to Plaintiff and all the other class members and all pre-judgment interest from the day such amounts were due and payable;

50.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violation of California Business and Professions Code sections 17200, et seq.;

51.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

52.    For injunctive relief to ensure compliance with this section, pursuant to California Business and Professions Code sections 17200, et seq.; and

53.    For such other and further relief as the Court may deem just and proper.

Dated: August 29, 2016                    **LAWYERS** *for* **JUSTICE, PC**

By: _____
Edwin Aiwazian
*Attorneys for* Plaintiff

LAWYERS *for* JUSTICE, PC
410 West Arden Avenue, Suite 203
Glendale, California 91203

25

1 | **MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**
Matthew C. Kane (SBN #171829)
2 |   Email:  mkane@mcguirewoods.com
Sabrina A. Beldner (SBN #221918)
3 |   Email:  sbeldner@mcguirewoods.com
Sylvia J. Kim (SBN #258363)
4 |   Email:  skim@mcguirewoods.com
Jared R. Zeidman (SBN #292383)
5 |   Email:  jzeidman@mcguirewoods.com
1800 Century Park East, 8th Floor
6 | Los Angeles, CA  90067-1501
Telephone:  310.315.8200
7 | Facsimile:  310.315.8210

8 | Attorneys for Defendant
9 | TESORO REFINING & MARKETING COMPANY, LLC

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA**

12 |

| | |
|---|---|
| 13 ONOFRE SORATORIO, an individual, On Behalf of Himself and All Other | CASE NO. |
| 14 Similarly Situated Non-Exempt Former and Current Employees, | [Los Angeles County Superior Court Case No. BC642295] |
| 15 Plaintiffs, | |
| 16 | **DECLARATION OF KAREN KAWANO IN SUPPORT OF** |
| 17 vs. | **DEFENDANT TESORO REFINING & MARKETING COMPANY,** |
| 18 TESORO REFINING & MARKETING COMPANY, LLC, a Delaware | **LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE** |
| 19 Corporation; BP PIPELINES NORTH AMERICA, INC., a Maine Corporation; | **COURT** |
| 20 and DOES 1 through 10, | |
| 21 Defendants. | |

22 |
23 |
24 |
25 |
26 |
27 |
28 |

86944872.12

DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING & MARKETING COMPANY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Exhibit B

## DECLARATION OF KAREN KAWANO

I, Karen Kawano, declare as follows:

1.      I have personal knowledge of the facts and matters set forth in this declaration and could and would testify competently and truthfully to the same if called as a witness and placed under oath.  I am over eighteen years of age.

2.      I am currently Labor Specialist for Tesoro Refining & Marketing Company, LLC and Tesoro Logistics GP, LLC (collectively referred to herein as "Tesoro").  As a Labor Specialist for Tesoro, I serve as the chief spokesperson for Tesoro with the different unions that represent Tesoro employees in Southern California including, without limitation, the United Steel Workers A.F.L.-C.I.O. Southern California Local 675 (the "USW Local 675"). In addition, I handle the grievance processing and administer the applicable collective bargaining agreements setting forth the terms and conditions (including, without limitation, wages and employment benefits) between Tesoro and the unions representing employees at various Tesoro facilities in Southern California including, without limitation, its Long Beach, California facilities.   I have knowledge of Tesoro Refining & Marketing Company, LLC's and Tesoro Corporation's ("Tesoro Corp.") business entity structures and operations based on my review of their business records.

3.      Tesoro Refining & Marketing Company, LLC is a limited liability company formed and operated under the laws of the State of Delaware, and it is a wholly-owned, direct subsidiary of Tesoro Corp.

4.      At the time of commencement of this civil action and at present, Tesoro Corp. is a corporation incorporated in the State of Delaware with its corporate headquarters and principal place of business in San Antonio, Texas.

Exhibit B

5.      All of Tesoro Corp.'s corporate executive and administrative operations are managed from its headquarters in San Antonio, Texas.  These operations include final decision-making and oversight of the following Tesoro Corp. operations and divisions:   financial; legal, capital and special projects; business development; environmental, health and safety; technology; facility maintenance; pipelines, terminal, trucking and retail; product supply and trading; business development and logistics; marketing; marine; and refining.

6.      Tesoro Corp.'s corporate policies and procedures in connection with these operations and divisions are primarily formulated in Texas.

7.      Tesoro Corp.'s corporate executive officers are entirely based in Texas, including its President and Chief Executive Officer; Executive Vice-President and Chief Financial Officer and Corporate Development; Executive Vice President, Operations; Executive Vice President, Marketing and Commercial; Executive Vice President, General Counsel and Secretary; Vice President and Treasurer and Credit and Vice President and Controller.

8.      Tesoro Corp.'s corporate financial records are also maintained in Texas.

9.      In my capacity as Tesoro's Labor Specialist, I am familiar with and have access to personnel records and information concerning the employment of Plaintiff Onofre Soratorio ("Plaintiff"), the personnel policies and practices of Tesoro, rates of employee pay and collective bargaining agreements between Tesoro and the different unions that represent Tesoro employees in Southern California.

86944872.12

2

DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING & MARKETING COMPANY. LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Exhibit B

10.    Plaintiff worked at one of Tesoro's Long Beach Marine Terminals from June 1, 2013 through April 12, 2016.  Prior to June 1, 2013, Plaintiff worked at the same Long Beach Marine Terminal for BP Pipelines North America, Inc. ("BP"), until Tesoro acquired the Long Beach facility from BP on or about June 1, 2013.

11.    As of June 1, 2013, Tesoro Refining & Marketing Company, LLC assumed a collective bargaining agreement that BP had entered into with USW Local 675 for a term of February 1, 2012 through January 31, 2015 (the "BP 2012-2015 CBA"), which applied to employees at several locations, including the Long Beach Marine Terminal at which Plaintiff worked.  Attached as **Exhibit 1** is a true and correct copy of the BP 2012-2015 CBA.

12.    Effective February 1, 2015, Tesoro Logistics G.P., LLC and USW Local 675 entered into a new collective bargaining agreement covering employees at several locations, including the Long Beach Marine Terminal at which Plaintiff worked, which is effective through January 31, 2019 (the "2015-2019 Tesoro CBA").   Attached as **Exhibit 2** is a true and correct copy of the 2015-2019 Tesoro CBA.

13.    At all times during his employment with Defendants, Plaintiff was a member of USW Local 675 and was subject to the terms and conditions set forth in the BP 2012-2015 CBA and the 2015-2019 Tesoro CBA, respectively ("collectively, the "CBAs").

14.    Each of the CBAs contains separate and distinct provisions relating to hours of work, meal periods, rest periods, alternative workweek schedules, shift differentials and rates of pay which apply to the represented employees, including

86944872.12    3
DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING & MARKETING COMPANY. LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Exhibit B

1    Plaintiff.

2

3         15.    All employees covered by the BP 2012-2015 CBA who worked at the

4    Long Beach Marine Terminal earned a contractual hourly rate of more than 30%

5    above the state's eight and nine dollar minimum wages ($10.40 and $11.70,

6    respectively).  The BP 2012-2015 CBA provides for contractual hourly wage rates

7    based on position and years of service, and the minimum hourly rate during the term

8    of the contract was $25.20 in 2012, $25.96 in 2013 and $26.74 in 2014.

9

10        16.    All employees covered by the 2015-2019 Tesoro CBA who worked at

11   the Long Beach Marine Terminal earned a contractual hourly rate of more than 30%

12   above the state's nine and ten dollar minimum wages ($11.70 and $13,00,

13   respectively).  The 2015-2019 Tesoro CBA provides for contractual hourly wage

14   rates based on position and years with Tesoro, and the minimum hourly rate for

15   positions at the Long Beach Marine Terminal during the term of the contract was

16   $27.41 in 2015 and $28.23 in 2016.

17

18        17.    Both of the CBAs set forth specific provisions addressing the working

19   conditions, entitlement to and rates of pay, and final and binding arbitration for

20   alleged violations of the CBAs. As to employees like Plaintiff, the CBAs also

21   address the entitlement to meal and rest periods, require employees to identify any

22   non-compliant meal breaks on their daily time record and contain provisions for

23   when and how much additional daily compensation will be paid to an employee for

24   non-compliant meal and/or rest breaks.  The CBAs further provide that disputes

25   pertaining to compliance with the meal and rest break provisions are subject to the

26   contractual grievance procedure, and employees must exhaust the grievance

27   procedure regarding such disputes before seeking other remedies.

28

86944872.12

4

DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING &
MARKETING COMPANY. LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

18.     Tesoro's records related to Plaintiff reflect that at all times during his employment with Tesoro, through and including Plaintiff's separation from that employment, Plaintiff's home address of record was and is located in California, and he maintained a California drivers' license.

19.     Plaintiff's Complaint in this action describes the proposed class as "ALL NON-EXEMPT WAREHOUSE WORKERS who were employed at TESORO and BP's Long Beach facility at any time beginning four (4) years preceding the filing of the Complaint in this action through final judgment," including without limitation as "non-exempt Yardmen, Lineup Workers, Carmen, and other similarly situated employees of Defendants" and "all non-exempt workers at Tesoro's Long Beach location."   Under these descriptions, the number of members of all proposed plaintiff classes in the aggregate is not less than 100 (consistent with the allegations in Paragraph 14.a of Plaintiff's Complaint) and there are other employees who were and/or are subject to additional collective-bargaining agreements between Tesoro and/or BP, on the one hand, and USW Local 675 or other labor unions, on the other hand, during the four-year limitations period and which similarly address hours of work, meal periods, rest periods, alternative work schedules, shift differentials and rates of pay.

20.     In my above-described position, I have access to and have reviewed Tesoro's personnel, payroll and wage records for Plaintiff and other current and former non-exempt employees who work or worked for Tesoro at its Long Beach facilities (the "Putative Class Members" or "PCMs") during the time period of November 29, 2012 through November 29, 2016 (but not any such records of employees who were employed by BP at those facilities prior to June 1, 2013).  The business records of Tesoro referred to in this declaration are prepared and maintained by employees of Tesoro who have a business duty to do so, and they are

DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING & MARKETING COMPANY. LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

kept in the ordinary course of Tesoro's business.  The entries made in such business records were made at or near the time of the occurrence of the events recorded in such records.  In addition, the business records are kept in a safe and secure location.

21.    I have obtained, retrieved and reviewed Tesoro's business information and records containing payroll and employment data related to Plaintiff and the other PCMs working from November 29, 2012 through November 29, 2016 (but not any such information and records of employees who were employed by BP at those facilities prior to June 1, 2013), including without limitation number of days worked, dates of employment, hourly rates of pay in effect and paychecks issued during the one-year, three-year and four-year periods ending on November 29, 2016, and/or I have caused such data to be retrieved and reviewed by individuals responsible for maintaining such information and records.  That voluminous data was analyzed at my direction and under my supervision to calculate and/or test for the following:  (i) the total number of PCMs who worked during the one-year, three-year and four-year time periods ending on November 29, 2016, (ii) the total number of PCMs who left their employment during the three-year time period ending on November 29, 2016 based on their last date of employment; (iii) the number of days each of the PCMs worked during the one-year, three-year and four-year time periods ending on November 29, 2016, and the total number of workdays for all such PCMs during each such period, (iv)  the recorded hours worked per workday by each PCM during the three-year and four-year time periods ending on November 29, 2016, and the total number of recorded hours worked per workday by all such PCMs during each such period, (v) the number of wage statements issued to each of the PCMs during the one-year, three-year and four-year time periods ending on November 29, 2016, and the total number of wage statements issued to all such PCMs during such period, and (vi) the average hourly rate of pay in effect for each of the current and formerly employed PCMs during the three-year and four-year time periods ending

86944872.12                                          6
DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING &
MARKETING COMPANY. LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Exhibit B

Exhibit B

on November 29, 2016.  The results of that analysis of that voluminous data for the time period between November 29, 2012 and November 29, 2016 is summarized as follows:

    a.    The PCMs who worked for Tesoro during the **four-year** time period ending on the date of the filing of the Complaint in this action (November 29, 2012 through November 29, 2016) worked an aggregate of **54,175 days** during that timeframe.

    b.    **20** of the PCMs left their employment with Tesoro during the **three-year** time period ending on the date of the filing of the Complaint in this action (November 29, 2013 through November 29, 2016).

    c.    There are at least **87 PCMs** who worked for Tesoro during the one-year time period ending on the date of the filing of the Complaint in this action (November 29, 2015 through November 29, 2016).  These PCMs received at least **2,246 wage statements** during that timeframe, or an average of approximately **26 wage statements per PCM**.

    d.    The PCMs were paid an **average effective hourly rate** of $36.78 during the **four-year** time period ending on the date of the filing of the Complaint (November 29, 2012 through November 29, 2016).

    e.    The PCMs worked the following **average recorded hours per workday** during each of the following time periods:

86944872.12

7

DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING & MARKETING COMPANY. LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Exhibit B

1        i.     **9.74 hours** per workday during the **three-year** time period

2                 ending on the date of the filing of the Complaint

3                 (November 29, 2013 through November 29, 2016); and

4

5        ii.     **8.31 hours** per workday during the **four-year** time period

6                 ending on the date of the filing of the Complaint

7                 (November 29, 2012 through November 29, 2016).

8

9       I declare under penalty of perjury under the laws of the United States of

10 America and the State of California that the foregoing is true and correct.

11

12       Executed on February _24_, 2017, at _Carson_, California.

13

14               _Karen Kawano_

15                 KAREN KAWANO

16

17

18

19

20

21

22

23

24

25

26

27

28

86944872.12                             8

DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING &
MARKETING COMPANY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

**Exhibit B**

**<u>PROOF OF SERVICE</u>**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067-1501.  On February 24, 2017, I served the following document(s) described as:  **DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT TESORO REFINING & MARKETING COMPANY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Grant Joseph Savoy                                    Attorneys for Plaintiff
Lindsay Veronika Salk
Shoham J. Solouki
Solouki Savoy LLP
316 W. 2nd Street, Suite 1200
Los Angeles, California  90012
Tel.: 213.814.4940/Fax. 213.814.2550

Debra Nahrstadt
BP Pipelines
(by E-mail only)
Debra.Nahrstadt@bp.com

☒      **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices.  (C.C.P. § 1013 (a) and 1013a(3))

☐      **BY OVERNIGHT DELIVERY:**  I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

☐      **BY HAND DELIVERY:**  I delivered such envelope(s) by hand to the office of the addressee(s).  (C.C.P. § 1011(a)(b))

☐      **BY PERSONAL SERVICE:**  I personally delivered such envelope(s) to the addressee(s).

☒      **BY ELECTRONIC TRANSMISSION** - I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) indicated. (As to BP Pipelines)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 24, 2017, at Los Angeles, CA.

_____
Jeri Bachelis-Asher

86853122.11

DEFENDANT TESORO REFINING & MARKETING COMPANY, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

Exhibit B

**Exhibit C**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):    Order GRANTING Defendant's Motion to Dismiss**

Before the Court is Defendant HITCO Carbon Composites, Inc.'s motion to dismiss and/or strike Plaintiff Andrew Dawson's complaint.  Dkt. #10.  The Court finds the matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); L.R. 7-15.  After considering the moving, opposing, and reply papers, the Court GRANTS the motion to dismiss and DENIES the motion to strike.

I.     Background

Plaintiff Andrew Dawson ("Plaintiff") was employed by Defendant HITCO Carbon Composites, Inc. ("Defendant") as an hourly, non-exempt employee in California from January 2013 until June 2014.  Dkt. #1, Ex. A ("Complaint" or "Compl.") ¶ 18.  On August 29, 2016, Plaintiff filed a wage and hour putative class action complaint against Defendant in the Superior Court for the County of Los Angeles on behalf of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." *Compl.* ¶ 13.  Plaintiff asserts that Defendant "engaged in a uniform policy/practice of wage abuse against their hourly-paid or non-exempt employees."  *Compl.* ¶ 25.  The Complaint includes the following general allegations:

- Defendants hired Plaintiff and the other class members and classified them as hourly-paid or non-exempt employees, but failed to compensate them for all hours worked, missed meal periods and/or rest breaks.

**Exhibit C**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

- Defendants had the authority to hire and terminate Plaintiff and the other class members, to set work rules and conditions governing Plaintiff's and the other class members' employment, and to supervise their daily activities.

- Defendants exercised sufficient authority over the terms and conditions of Plaintiff's and the other class members' employment for them to be joint employers of Plaintiff and the other class members.

- Defendants directly hired and paid wages and benefits to Plaintiff and the other class members.

- Defendants continue to employ hourly-paid or non-exempt employees within the State of California.

- Plaintiff and the other class members worked over eight (8) hours in a day, and/or forty (40) hours in a week during their employment with Defendants.

- Plaintiff is informed and believes, and based thereon alleges, that Defendants engaged in a uniform policy/practice of wage abuse against their hourly-paid or non-exempt employees within the State of California. This uniform policy/practice involved, inter alia, failing to pay them for all regular wages earned, and missed meal periods and rest breaks in violation of California law.

*Id.* ¶¶ 19–25.  The Complaint also alleges that, "[a]t all material times," Defendants failed to:

- Provide the requisite uninterrupted meal and rest periods to Plaintiff and the other class members.

- Pay Plaintiff and the other class members at least minimum wages for all hours worked.

- Pay Plaintiff and the other class members all wages owed to them upon discharge or resignation.

- Pay Plaintiff and the other class members all wages within any time permissible under California law, including, *inter alia*, California Labor Code section 204.

- Provide complete or accurate wage statements to Plaintiff and the other class members.

Exhibit C

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

- Keep complete or accurate payroll records for Plaintiff and the other class members.

- Reimburse Plaintiff and the other class members for necessary business-related expenses and costs.

- Properly compensate Plaintiff and the other class members pursuant to California law in order to increase defendants' profits.

*Id.* ¶¶ 36–43.

Plaintiff brings nine causes of action for violations of: (1) Cal. Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (2) Cal. Labor Code § 226.7 (unpaid rest period premiums); (3) Cal. Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (4) Cal. Labor Code §§ 201 and 202 (final wages not timely paid); (5) Cal. Labor Code § 204 (wages not timely paid during employment); (6) Cal. Labor Code § 226(a) (non-compliant wage statements); (7) Cal. Labor Code § 1174(d) (failure to keep requisite payroll records); (8) Cal. Labor Code §§ 2800 and 2802 (unreimbursed business expenses), and (9) violation of California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code §§17200 *et seq.*

Defendant removed the case to this Court on September 29, 2016 pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Dkt. #1. On October 21, 2016, Defendant filed this motion to dismiss the case and/or strike Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(f). Dkt. #10 ("Mot.").

II.   Legal Standard

    A.   Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067–68 (9th Cir. 2009). The court, however, is not required to accept

Exhibit C

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

"legal conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679–80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

        B.    Fed. R. Civ. P. 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Redundant' matter consists of allegations that constitute a needless repetition of other averments." *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1079 (C.D. Cal. 1994). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1162 (C.D. Cal. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "'[I]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Finally, "scandalous" matter "includes allegations that cast a cruelly derogatory light on a party or other person." *In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (citation omitted). Federal courts generally disfavor motions to strike "unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *See Shabaz v. Polo Ralph Lauren Corp.*,586 F. Supp. 2d 1205, 1209 (C.D. Cal. 2008) (citation omitted).

III.    Motion to Dismiss

        1.    First and Second Causes of Action: Unpaid Meal and Rest Period Premiums

California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512(a); *see also* Cal. Lab. Code § 226.7(c) (an employer who "fails to provide" an employee a due meal period must pay an additional hour of

**Exhibit C**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

pay). An employer need not "police" meal breaks and "ensure" that employees actually take them. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). As with meal periods, California law requires only that employers "authorize and permit all employees to take rest periods . . . at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." Industrial Welfare Comm'n, Wage Order § 12(A).

Regarding meal periods, the Complaint alleges that, during the relevant time period:

- Plaintiff and the other class members who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period.

- Plaintiff and the other class members who were scheduled to work for a period of time in excess of six (6) hours were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period.

- Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods.

*Compl.* ¶¶ 50–52.

As to rest periods, the Complaint similarly alleges that, during the relevant time period: "Defendants required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked," and that "Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods." *Id.* ¶¶ 59–61.

These broad conclusory allegations are insufficient to state a plausible claim that Plaintiff was a victim of Defendant's alleged violations of the labor laws. "While the requirements for a claim under Section 512 are straightforward — the employer failed to provide the requisite meal period — a plaintiff cannot state such a claim without any factual allegations supporting the claim." *Bellinghausen v. Tractor Supply Co.*, No. C–13–02377 JSC, 2013 WL 5090869, at * (N.D. Cal. Sept. 13, 2013); *Finder v. Leprino Foods Co.*, No. 1:13–CV–2059 AWI–BAM, 2015

**Exhibit C**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

WL 1137151, at *3 (E.D. Cal. Mar. 12, 2015). Moreover, Plaintiff's allegations merely recite the statutory language, without providing any factual support. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").

Plaintiff argues in his opposition that "[a] plaintiff alleging [wage-and-hour] violations need only plead that he was employed by the defendant and worked compensable time for which he was not paid." Dkt. #23 ("Opp."), at 1. While the Court agrees that a plaintiff need not plead a wealth of factual allegations to state a plausible claim for relief under the California Labor Code, the Court disagrees with Plaintiff that his mere allegation that Defendant has violated the law defeats a Rule 12(b)(6) motion. In fact, the Complaint is replete with generic boilerplate allegations that fail to identify even the most basic information concerning Plaintiff's employment, such as the nature of Plaintiff's job with Defendant. *See generally Compl*. Without identifying any factual allegations supporting the alleged violation, the Court cannot draw a reasonable inference that Defendant is liable. *See Iqbal*, 556 U.S. at 663 (Court cannot accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Ovieda v. Sodexo Operations, LLC*, No. CV 12-1750 GHK (SSx), 2012 WL 1627237, at *2 (C.D. Cal. May 7, 2012) ("Plaintiff fails to allege that she even once worked a shift long enough to obligate Defendant to provide her with a rest period . . . .").

As the Ninth Circuit explained in *Landers v. Quality Communications,* Federal Rule of Civil Procedure 8 does not require "mathematical precision," but it does require allegations indicating that a plaintiff worked shifts during which she was harmed. 771 F.3d 638, 644–46 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1845. Allegations that speak only to class members generally are insufficient to state a claim. *Id.* at 646; *see also Anderson v. Blockbuster Inc.*, No. CV 10-158 MCE (GGH), 2010 WL 1797249, at *2–4 (E.D. Cal. May 4, 2010) (finding insufficient an allegation that "Plaintiff and class members consistently worked in excess of eight hours in a day, in excess of 12 hours in a day and/or in excess of 40 hours in a week"); *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. CV 15-2862 ODW (Ex), 2015 WL 4127905, at *2–3 (C.D. Cal. July 8, 2015) ("Looking to Raphael's Complaint, it is readily ascertainable that the language of the allegations falls well within the scope of what *Landers* and other cases have shown to be insufficient. Raphael includes no relevant facts or dates during which these alleged violations occurred, instead he claims that 'at all relevant times' Tesoro failed to comply with a laundry list of regulations.").

For the foregoing reasons, Defendant's motion to dismiss the first and second causes of action is GRANTED, with leave to amend.

Exhibit C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|----------|---------------------|------|------------------|

| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. |
|-------|----------------------------------------------------------|

2.      Third Cause of Action: Unpaid Minimum Wages

California law requires that an employer pay at least minimum wage to its employees. Cal. Lab. Code §§ 1194, 1197.  In support of this cause of action, the Complaint alleges that:

- Defendants knew or should have known that Plaintiff and the other class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for all hours worked.  *Compl*. ¶ 29.

- During the relevant time period, Defendants failed to pay minimum wage to Plaintiff and the other class members as required, pursuant to California Labor Code section 1194, 1197, and 1197.1."  *Id*. ¶ 67.

As above, these allegations provide nothing beyond generalized and conclusory statements to tie the alleged labor-code violations to Defendant.  In *Landers*, the Ninth Circuit addressed a similar situation in the context of the Fair Labor Standards Act, where the complaint alleged that the defendant's policies denied the plaintiff the minimum wage pay.  771 F.3d 638, 645–46 (9th Cir. 2014).  The plaintiff, however, did not include "any detail regarding a given workweek when [he] worked in excess of forty hours and . . . was not paid minimum wages." *Id*. at 646.  The court held that the complaint failed to state a claim because it did not include specific allegations about such a workweek.  *Id*. at 644–45.

The Complaint here fares no better.  Plaintiff's generalized allegations, devoid of any factual detail, are insufficient to state a plausible claim.  Therefore, Defendant's motion to dismiss Plaintiff's third cause of action is GRANTED, with leave to amend.

3.      Fourth Cause of Action: Final Wages Not Timely Paid

California law controls the manner of the payment of final wages upon the discharge or resignation of an employee.  Cal. Lab. Code §§ 201, 202.  If an employer "willfully fails to pay" in accordance with Sections 201 or 202, the employer is subject to statutory penalties; known as "waiting time" penalties.  *Id*. § 203(a).

The Complaint alleges that "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving

Exhibit C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

Defendants' employ." *Compl.* ¶ 73. There are no other allegations made in support of this claim.

This claim fails for the same reasons as the causes of action discussed above. Plaintiff's sole allegation repeats the language of the statute, *see* § 203(a), without any supporting facts. *See Miranda v. Coach, Inc.*, No. 14–CV–02031–JD, 2015 WL 636373, at *2 (N.D. Cal. Feb. 13, 2015) ("The problem with these allegations is that they merely parrot the statute without stating facts sufficient to make out a plausible claim."); *Lopez v. Aerotek, Inc.*, No. SACV1400803–CJC–JCGX, 2015 WL 4504691, at *2 (C.D. Cal. July 23, 2015) (dismissing Plaintiff's § 203 claim where the complaint merely alleged that "Defendants willfully failed to pay their workers accrued wages due promptly upon separation, as required by Code sections 201 and 202," and failed to even generally allege what wages were earned and paid at the time of termination, or how and in what manner any final wage payment was untimely under the Labor Code).

For these reasons, Defendant's motion to dismiss Plaintiff's fourth cause of action is GRANTED, with leave to amend.

    4.    <u>Fifth Cause of Action: Wages Not Timely Paid During Employment</u>

California law requires that "[a]ll wages ... earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Cal. Lab. Code § 204. The remedy for violation of § 204 is found in § 210, which provides that "every person who fails to pay the wages of each employee as provided in Section 204 . . . shall be subject to a civil penalty." Cal. Labor Code § 210(a). Section 210 goes on to say that "[t]he penalty shall be recovered by the Labor Commissioner as part of a hearing held to recover unpaid wages and penalties pursuant to this chapter or in an independent civil action ... brought in the name of the people of the State of California and the Labor Commissioner and the attorneys thereof may proceed and act for and on behalf of the people in bringing these actions." § 210(b).

Pursuant to this language, courts regularly hold that there is no private right of action under § 204. *Johnson v. Hewlett–Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011) ("There is nothing in section 204 or 210 that indicates, in 'clear understandable, unmistakable terms' that a private right of action exists for violations of section 204."); *Young v. ABM Sec. Servs.*, 905 F.2d 1541, at *5 (9th Cir. 1990) ("[California Labor Code] statute does not grant employees a private right of action against employers who violate section 204."); *Silva v. AvalonBay Communities, Inc.*, No. LACV–15–04157–JAK–PLAX, 2015 WL 11422302, at *9

Exhibit C

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|

| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. |
|---|---|

(C.D. Cal. Oct. 8, 2015) ("[T]here is no private right of action under [§ 204].")); *Slay v. CVS Caremark Corp.*, No. 1:14-CV-01416-TLN, 2015 WL 2081642, at *7 (E.D. Cal. May 4, 2015) ("Plaintiff cannot state a claim because Section 204 does not offer a private right of action.").

Because Section 204 does not provide a right of action, Defendant's motion to dismiss Plaintiff's fifth cause of action is GRANTED, without leave to amend.

5.     Sixth Cause of Action: Non-Compliant Wage Statements

California law requires that employers furnish employees with accurate, itemized wage statements. Cal. Lab. Code § 226(a). To recover damages under this provision, an employee "must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute." *Price v. Starbucks, Inc.*, 192 Cal. App. 4th 1136, 1142 (Cal. Ct. App. 2011). The injury requirement "cannot be satisfied simply because one of the nine itemized requirements . . . is missing from a wage statement." *Id.* The deprivation of information is not itself sufficient to establish a cognizable injury. *Id.* at 1143; *see also Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008), *aff'd*, 368 F. App'x 761 (9th Cir. 2010) ("By employing the term "suffering injury," the statute clearly requires that an employee is not eligible to recover for violations of section 226(a) unless he or she demonstrates some injury from the employer's violation.").

The Complaint alleges that "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements. The deficiencies include, but are not limited to: the failure to include the total number of hours worked by Plaintiff and the other class members." *Compl.* ¶ 85. As a result of this violation, "Plaintiff and the other class members have suffered injury and damage to their statutorily-protected rights." *Id.* ¶ 86.

Although these allegations mention the failure to include the total number of hours worked, there is no sufficient allegation of a cognizable injury. *Price*, 192 Cal. App. 4th at 114; *Silva*, 2015 WL 11422302, at *10 (dismissing Plaintiff's § 226(a) claim where complaint alleged failure to include total number of hours worked but failed to sufficiently allege any resulting cognizable injury). An employee is deemed to suffer an injury when there is an inaccuracy in any of the required information under Section 226(a) and the employee cannot "promptly and easily determine from the wage statement alone . . . the amount of the gross wages paid to the employee during the pay period." Cal. Labor Code § 226(e)(2)(B); *De La Torre v. Am. Red Cross*, No. CV 13-04302 DDP JEMX, 2013 WL 5573101, at *5 (C.D. Cal. Oct. 9, 2013) (finding insufficient Plaintiff's mere allegation that her paycheck was inaccurate because she did

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

not "properly allege that her paycheck was such that she could not 'promptly and easily determine' from the wage statement the amount of gross wages or net wages actually paid to her during the pay periods at issue."). Thus, Plaintiff's general statement that he and other class members "suffered injury," without more, fails to sufficiently allege an injury resulting from the inaccuracy of their wage statements. Furthermore, Plaintiff's conclusory allegation that Defendant violated § 226(a) "intentionally and willfully," without any factual support, is insufficient to state a plausible claim.

Therefore, as alleged, Plaintiff's §226(a) claim must be dismissed. Defendant however, also argues that insofar as Plaintiff seeks to recover statutory penalties under § 226(a), his claim is time-barred. *Mot.* 13–14.

Section 226(e)(1) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period." Cal. Lab. Code § 226(e)(1). Paragraph 88 of the Complaint indicates that Plaintiff and other class members are entitled to the greater of either actual damages or statutory penalties. *Compl.* ¶ 88. Plaintiff confirms in his opposition that he "is seeking actual damages, in addition to penalties," for the alleged violation of § 226(a). *Opp.* 18.

California has a one-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, [ ... ] except if the statute imposing it prescribes a different limitation." Cal. Civ. Proc. Code § 340. However, California provides for a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." Cal. Civ. Proc. Code § 338.

Because Plaintiff terminated his employment in "approximately June 2014," but filed his Complaint in August of 2016, Plaintiff's claim falls outside of the scope of the one-year statute of limitations applicable to statutory penalties. *Reinhardt v. Gemini Motor Transport*, 869 F. Supp. 2d 1158, 1169–70 (E.D. Cal. 2012) ("[I]f a plaintiff attempts to obtain the statutory penalties provided by Labor Code § 226(e), then the one year statute of limitations of California Code of Civil Procedure § 340(a) applies."). Plaintiff is therefore time-barred from recovering statutory penalties under § 226(a). However, Plaintiff's claim for actual damages is timely because it has been brought within the three-year statute of limitations and constitutes "liability created by statute, other than a penalty or forfeiture." § 380; *Singer v. Becton, Dickinson & Co.*, No. 08CV821 IEG (BLM), 2008 WL 2899825, at *5 (S.D. Cal. July 25, 2008).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

In light of the foregoing, Defendant's motion to dismiss Plaintiff's sixth cause of action is GRANTED, with leave to amend.  When amending the Complaint, Plaintiff may seek recovery of his alleged actual damages only, in accordance with this order.

6.     Seventh Cause of Action: Failure to Keep Requisite Payroll Records

California law provides that employers shall "[k]eep . . . payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments."  Cal. Lab. Code § 1174(d).  Defendant argues that the claim fails as a matter of law because § 1174(d) does not contemplate a private cause of action. *Mot*. 18–19.  The Court agrees.

The plain language of § 1174 suggests that employers must maintain records for inspection by the Labor Commission, not by individual employees.  *See* Cal. Lab. Code § 1174(a) ("the reports and information shall be verified if required by the commission or any member thereof."); § 1174(b) ("Allow any member of the commission or the employees of the Division of Labor Standards Enforcement free access to the place of business..."); § 1174(d) ("These records shall be kept in accordance with rules established for this purpose by the commission...").  As with remedies for violation of § 204 discussed above, § 1174.5, which provides the punishment for violations of § 1174(d), imposes "a civil penalty of five hundred dollars."  Cal. Lab. Code § 1174.5.  Rights of action for civil penalties under the Labor Code generally arise under the California Private Attorney General Act ("PAGA"), not under the Labor Code directly.  *See Thomas v. Home Depot USA, Inc*., 527 F. Supp. 2d 1003, 1006-07 (N.D. Cal. 2007) ("PAGA . . . permits individuals to bring private actions against an employer for civil penalties under specified sections of the Labor Code."); *Caliber Bodyworks v. Super. Ct*., 134 Cal. App. 4th 365, 374–75 (2005) (explaining that PAGA allows private actions for civil penalties).

The Court therefore agrees that Plaintiff's § 1174(d) claim fails as a matter of law because it does not provide for a private cause of action.  *Cordell v. PICC Lines Plus LLC*, No. 16-CV-01814-TEH, 2016 WL 4702654, at *10 (N.D. Cal. Sept. 8, 2016) ("Plaintiff . . . has no private right of action directly under the Labor Code for violation of section 1174(d)."); *Cleveland v. Groceryworks.com, LLC*, No. 14–CV–00231–JCS, 2016 WL 4140504, at *22 (N.D. Cal. Aug. 4, 2016) (holding there is no private right of action under § 1174(d)).

Accordingly, Defendant's motion to dismiss Plaintiff's seventh cause of action is GRANTED, without leave to amend.

Exhibit C

**Exhibit C**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

7.   Eighth Cause of Action: Unreimbursed Business Expenses

California law requires that employers reimburse employees for all reasonable and necessary expenditures incurred in discharging their job duties. Cal. Lab. Code §§ 2800, 2802. The Complaint alleges that "Plaintiff and the other class members incurred necessary business-related expenses and costs that were not fully reimbursed by Defendants," and that "Defendants have intentionally and willfully failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs." *Compl.* ¶¶ 97–98. There are no other allegations in support of this claim.

Plaintiff has not alleged a single specific business-related cost that he or any putative class member incurred that was not fully reimbursed. Yet again, Plaintiff resorts to conclusory boilerplate allegations that merely repeat the language of the statute. *See Kemp v. Int'l Bus. Mach. Corp.*, 2010 WL 4698490, at *6 (N.D. Cal. Nov. 8, 2010) (dismissing claims for failing to allege "any costs that he incurred that were not fully reimbursed"); *Silva*, 2015 WL 11422302, at *11 (same).

For these reasons, Defendant's motion to dismiss Plaintiff's eighth cause of action is GRANTED, with leave to amend.

8.   Ninth Cause of Action: Violation of the UCL

In his final cause of action, Plaintiff asserts violation of the UCL, which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. In support, Plaintiff alleges that Defendants' violations of California wage and hour laws "constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200, et seq." *Compl.* ¶ 101.

Under the "unlawful" prong of the UCL, which Plaintiff invokes in his allegation, "section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008); *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). Where a plaintiff cannot state a claim under the "borrowed" law, he cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992 (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim.").

**Exhibit C**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

As Plaintiff has not adequately pled his wage and hour claims, his UCL claim thus also fails. Moreover, Plaintiff has not alleged anything non-conclusory regarding unfair business practices or conduct likely to deceive members of the public. *See Pellerin*, 877 F. Supp. 2d at 992–93. Therefore, Defendant's motion to dismiss Plaintiff's ninth cause of action is GRANTED, with leave to amend.

> 9.   Dismissal of Plaintiff's Claim for Injunctive Relief

Defendant argues that Plaintiff's claim for injunctive relief should be dismissed because Plaintiff, as a former employee, lacks standing to seek injunctive relief against his former employer. *Mot.* 23–24.

To establish standing under Article III, a plaintiff must show each of the following: (i) the plaintiff suffered an injury in fact; (ii) the injury in fact was concrete and particularized; and (iii) the injury was actual or imminent rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The "injury-in-fact" prong requires a threatened future injury to be real and immediate. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) ("In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of an irreparable injury.").

The Ninth Circuit has repeatedly held that a former employee lacks standing to seek injunctive relief against a former employer in certain factual settings. For example, in *Walsh v. Nev. Dep't Human Res.*, the Court held that a former employee could not satisfy the injury component of standing because:

> "[Plaintiff] is no longer an employee of the Department. She admits that her employment ended in 2004. There is no indication in the complaint that [Plaintiff] has any interest in returning to work for the State or the Department. Therefore, she would not stand to benefit from an injunction."

471 F.3d 1033, 1037 (9th Cir. 2006); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) ("Plaintiffs not employed by Costco throughout this case do not have standing to seek injunctive relief."). District courts have also concluded that a former employee lacks standing to seek prospective injunctive relief on behalf of a putative class containing both former and current employees. *See, e.g.*, *Ramirez v. Manpower, Inc.*, No. 5:13–CV–2880–EJD, 2014 WL 116531, at *7 (N.D. Cal. Jan. 10, 2014) (finding former employee did not face any threat of real and immediate future harm where she did not allege in the complaint that she intended to return to work for defendant in the future); *Richards v. Ernst & Young LLP*, No. C 08–4988 JF (HRL), 2010 WL 682314, *3 (N.D. Cal. Feb. 24, 2010).

**Exhibit C**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

Plaintiff left his employment with Defendant in June 2014, *see Compl.* ¶ 18, and alleges no prospect of ever returning to employment there. Consequently, Plaintiff has not shown any likelihood whatsoever of future injury, let alone a real and immediate threat. Accordingly, Defendant's motion to dismiss Plaintiff's request for injunctive relief is GRANTED. The Court is skeptical that this deficiency can be cured with further allegations, but grants Plaintiff leave to amend. Any changed circumstances advanced in an amended complaint must be presented in good faith.

IV.   Motion to Strike

Lastly, Defendant moves to strike (1) Plaintiff's request for attorneys' fees and costs in connection with his meal break violation claim; (2) Plaintiff's request for attorneys' fees under Cal. Code Civ. Proc. § 1021.5; and (3) Plaintiff's request for "actual, consequential, and incidental losses and damages." *See Mot.* 24–25.

Rule 12(f) states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. §12(f); *First Nat. Ins. Co. of Am. v. Peralta Cmty. Coll. Dist.*, No. 12-CV-5943 JSC, 2013 WL 622944, at *7 (N.D. Cal. Feb. 15, 2013). However, Defendant's request to strike the prayer for attorneys' fees and damages is not the proper subject for a 12(f) motion. *See Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010) (holding that "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law"); *see also Ferretti v. Pfizer Inc.*, 855 F.Supp.2d 1017, 1029 (N.D. Cal. 2012) (denying defendant's motion to strike plaintiff's claim for damages since Rule 12(f) is not an appropriate vehicle for such relief); *Cardinale v. La Petite Acad., Inc.*, 207 F. Supp. 2d 1158, 1163 (D. Nev. 2002) ("The inclusion of claims for attorneys' fees in the Complaint does not constitute an 'insufficient defense or any redundant, immaterial, impertinent, or scandalous matter' such that a motion to strike pursuant to Rule 12(f) is proper."); *Finuliar v. BAC Home Loans Servicing, L.P.*, No. 11–02629, 2011 WL 4405659, at *14 (N.D. Cal. Sept. 21, 2011) (denying a Rule 12(f) request to strike a request for attorneys' fees under *Whittlestone*).

Accordingly, Defendant's motion to strike is DENIED.

V.   Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend

**Exhibit C**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile.  *See Sisseton-Wahpeton Sioux Tribe v. United States* , 90 F.3d 351, 355 (9th Cir. 1996).

As noted above, Plaintiff's fifth and seventh causes of action are dismissed as a matter of law because no private cause of action exists to enforce § 204 and § 1174(d).  *See Sections III.4 and III.6, supra*.  Moreover, while Plaintiff might have been able to pursue these claims on behalf of the State of California Labor and Workforce Development Agency under PAGA, such a claim is, by definition, a claim for civil penalties and therefore barred by the one-year statute of limitations.  *See* Cal. Lab. Code § 2699(a),(f); Cal. Code Civ. Proc. § 340(a) (applicable to all actions upon a statute for a penalty); *Thomas*, 527 F. Supp. 2d at 1008 ("Plaintiff's PAGA claims . . . are therefore barred by the CCP § 340(a) one-year statute of limitations.").  As Plaintiff waited more than two years to file his complaint, granting leave to amend in order to seek remedies under PAGA would be futile.  Leave to amend Plaintiff's fifth and seventh causes of action is therefore denied.

VI.   Conclusion

For the reasons stated above, Defendant's motion to dismiss is GRANTED as follows:

- Plaintiff's first cause of action under Cal. Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums) is DISMISSED, WITH LEAVE TO AMEND;

- Plaintiff's second cause of action under Cal. Labor Code § 226.7 (unpaid rest period premiums) is DISMISSED, WITH LEAVE TO AMEND;
- Plaintiff's third cause of action under  Cal. Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages) is DISMISSED, WITH LEAVE TO AMEND;

- Plaintiff's fourth cause of action under Cal. Labor Code §§ 201 and 202 (final wages not timely paid) is DISMISSED, WITH LEAVE TO AMEND;

- Plaintiff's fifth cause of action under Cal. Labor Code § 204 (wages not timely paid during employment) is DISMISSED, WITHOUT LEAVE TO AMEND;

- Plaintiff's sixth cause of action under Cal. Labor Code § 226(a) (non-compliant wage statements) is DISMISSED, WITH LEAVE TO AMEND;

**Exhibit C**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV16-7337 PSG FFMx | Date | January 20, 2017 |
|---|---|---|---|
| Title | Andrew Dawson, *et al.* v. HITCO Carbon Composites, Inc. | | |

- Plaintiff's seventh cause of action under Cal. Labor Code § 1174(d) (failure to keep requisite payroll records) is DISMISSED, WITHOUT LEAVE TO AMEND;

- Plaintiff's eighth cause of action under Cal. Labor Code §§ 2800 and 2802 (unreimbursed business expenses) is DISMISSED, WITH LEAVE TO AMEND;

- Plaintiff's ninth cause of action under the UCL is dismissed, with leave to amend;

- Plaintiff's request for injunctive relief is DISMISSED, WITH LEAVE TO AMEND.

Defendant's motion to strike Plaintiff's requests for attorneys' fees and costs in connection with his meal break violation claim and § 1021.5, as well as Plaintiff's request for "actual, consequential, and incidental losses and damages" is DENIED.

Plaintiff may file a first amended complaint ("FAC") consistent with this order no later than **February 21, 2017**.  Failure to file a SAC by that date may result in dismissal of the case with prejudice.

### IT IS SO ORDERED.

Exhibit C

**Kelly, Daniel A.**

| | |
|---|---|
| **From:** | Soto, Diana E. |
| **Sent:** | Wednesday, January 25, 2017 10:26 AM |
| **To:** | Kelly, Daniel A. |
| **Cc:** | Kramer, John R. |
| **Subject:** | FW: Activity in Case 2:16-cv-07337-PSG-FFM Andrew Dawson v. HITCO Carbon Composites, Inc. et al Order on Motion to Dismiss Case |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

From DS's inbox dated 1/20th

**From:** cacd_ecfmail@cacd.uscourts.gov [mailto:cacd_ecfmail@cacd.uscourts.gov]
**Sent:** Friday, January 20, 2017 1:21 PM
**To:** ecfnef@cacd.uscourts.gov
**Subject:** Activity in Case 2:16-cv-07337-PSG-FFM Andrew Dawson v. HITCO Carbon Composites, Inc. et al Order on Motion to Dismiss Case

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA**

**Notice of Electronic Filing**

The following transaction was entered on 1/20/2017 at 1:20 PM PST and filed on 1/20/2017
**Case Name:**      Andrew Dawson v. HITCO Carbon Composites, Inc. et al
**Case Number:**     2:16-cv-07337-PSG-FFM
**Filer:**
**Document Number:** 27

**Docket Text:**
**MINUTES (IN CHAMBERS) Order GRANTING Defendant's Motion to Dismiss by Judge Philip S. Gutierrez granting [10] MOTION to Dismiss Case: For the reasons stated above, Defendant's motion to dismiss is GRANTED as follows: Plaintiff's first cause of action under Cal. Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums) is DISMISSED, WITH LEAVE TO AMEND; Plaintiff's second cause of action under Cal. Labor Code § 226.7 (unpaid rest period premiums) is DISMISSED, WITH LEAVE TO AMEND; Plaintiff's third cause of action under Cal. Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages) is DISMISSED, WITH LEAVE TO AMEND; Plaintiff's fourth cause of action under Cal. Labor Code §§ 201 and 202 (final**

Exhibit C

Exhibit C

**wages not timely paid) is DISMISSED, WITH LEAVE TO AMEND; Plaintiff's fifth cause of action under Cal. Labor Code § 204 (wages not timely paid during employment) is DISMISSED, WITHOUT LEAVE TO AMEND; Plaintiff's sixth cause of action under Cal. Labor Code § 226(a) (non-compliant wage statements) is DISMISSED, WITH LEAVE TO AMEND; Plaintiff's seventh cause of action under Cal. Labor Code § 1174(d) (failure to keep requisite payroll records) is DISMISSED, WITHOUT LEAVE TO AMEND; Plaintiff's eighth cause of action under Cal. Labor Code §§ 2800 and 2802 (unreimbursed business expenses) is DISMISSED, WITH LEAVE TO AMEND; Plaintiff's ninth cause of action under the UCL is dismissed, with leave to amend; Plaintiff's request for injunctive relief is DISMISSED, WITH LEAVE TO AMEND. Defendant's motion to strike Plaintiff's requests for attorneys' fees and costs in connection with his meal break violation claim and § 1021.5, as well as Plaintiff's request for "actual, consequential, and incidental losses and damages" is DENIED. Plaintiff may file a first amended complaint ("FAC") consistent with this order no later than February 21, 2017. Failure to file a SAC by that date may result in dismissal of the case with prejudice. (bm)**


**2:16-cv-07337-PSG-FFM Notice has been electronically mailed to:**

Edwin Aiwazian      ss@lfjpc.com, edwin@lfjpc.com

Romina Keshishyan      ss@lfjpc.com, romina.keshishyan@gmail.com, romina@lfjpc.com

Sabrina A Beldner      mwhitney@mcguirewoods.com, sbeldner@mcguirewoods.com

Matthew Charles Kane      mkane@mcguirewoods.com, revey@mcguirewoods.com, dsoto@mcguirewoods.com, rmorrissette@mcguirewoods.com

Sylvia Jihae Kim      skim@mcguirewoods.com, rmorrissette@mcguirewoods.com, dsoto@mcguirewoods.com

Andre Sherman      asherman@girardikeese.com, kyancey@girardikeese.com, sfujioka@girardikeese.com


**2:16-cv-07337-PSG-FFM Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

Exhibit C

**Exhibit D**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 16-2482-JGB(KKx)** | Date | February 10, 2017 |
|---|---|---|---|
| Title | ***William Robles v. Schneider National Carriers, Inc.*** | | |

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:     Order: (1) GRANTING in Part and Denying in Part Defendant's Motion to Dismiss (Dkt. No. 12); and (2) VACATING the February 13, 2017 Hearing (IN CHAMBERS)**

Before the Court is Defendant's Motion to Dismiss.  (Dkt. No. 12.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After consideration of the papers filed in support of, and in opposition to, the Motion, the Court GRANTS in Part and DENIES in Part the Motion.  The February 13, 2017 hearing is VACATED.

## I.     INTRODUCTION

On September 22, 2016, William Robles ("Plaintiff") filed a complaint on behalf of himself and all others similarly situated against Schneider National Carriers, Inc ("Defendant" or "Schneider") in California Superior Court for the County of Riverside.  ("Complaint," Dkt. No. 1-1).  Defendant removed the action to this Court on December 1, 2016 pursuant to the Class Action Fairness Act.  (Dkt. No. 1.)

Plaintiff is a former truck driver for Schneider, where he worked from March 2009 through October 2015.  (Complaint ¶ 4.)  He alleges that, during that time, Schneider "willfully misclassified" him as an independent contractor in order to avoid paying him and other California truck drivers for all time worked, meal and rest periods missed, business expenses, and the employer's share of payroll taxes and mandatory insurance.  (Id. at ¶ 11.)  In particular, Plaintiff alleges that Defendant's strategy of paying its truck drivers flat rates based upon the

**Exhibit D**

Exhibit D

loads delivered meant that he was not compensated for time spent driving to the assigned locations, waiting for and loading the pick-up loads, and then transporting the goods to the assigned locations. (Id. at ¶ 22.)  Additionally, Defendant required truck drivers to personally incur and pay for expenses, including all costs and expenses of owning, maintaining, and fueling the trucks and vehicles they drove in the discharge of their duties. (Id.)

Based on the above, the Complaint asserts six causes of action: (1) unfair competition; (2) failure to pay minimum wages; (3) failure to provide accurate itemized statements; (4) failure to provide wages when due; (5) failure to reimburse employees; and (6) illegal deductions from wages.

Defendant now moves to dismiss or strike the Complaint in its entirety, arguing that it fails to support a cognizable legal theory. ("Motion," Dkt. No. 12.)[1]  Plaintiff opposed the motion on January 23, 2017.  ("Opp'n," Dkt. No. 14.)[2]  Defendant filed its reply on January 30, 2017.  ("Reply," Dkt. No. 15.)

---

[1] Together with its Motion, Defendant filed a Request for Judicial Notice. ("RJN," Dkt. No. 12.)  The request—to which Plaintiff does not object—asks that the Court take judicial notice of decisions from unpublished cases and various public documents evincing the legislative history of the statutes at issue—for example, an analysis of A.B. No. 3731 (1976) from the legislative history on California Labor Code Section 226. (RJN.)  The Court finds that all of these are proper subjects of judicial notice.  These documents are in the public record and their existence is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Indeed, courts routinely take judicial notice of these types of documents. See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of briefs, transcripts, and various other court filings from related case); Garcia v. Pacificare of California Inc., No. SACV1202022JVSRNBX, 2013 WL 12114019, at *3 (C.D. Cal. Mar. 6, 2013), aff'd, 750 F.3d 1113 (9th Cir. 2014) (taking judicial notice the legislative history of state statutes). See Louis v. McCormick & Schmick Rest. Corp., 460 F. Supp. 2d 1153, 1156 n.4. (C.D. Cal. 2006).  Accordingly, the Court GRANTS Defendant's Request for Judicial Notice.

[2] Together with its Opposition, Plaintiff also submitted the Declaration of Molly A. Desario, in which Plaintiff's counsel Ms. Desario states that Defendant's counsel has only made "two recent challenges" to the "multitude of wage and hour class action complaints Plaintiff's counsel has recently filed," and that both have failed. (Desario Decl. ¶ 2.)  She further provides her opinion that both cases "involve[d] the same kind of allegations pled in the Complaint here." (Id.)  Defendant submitted objections to the declaration, as well as the two exhibits attached therein—the two referenced cases—on the basis that they constitute a proffer of evidence that is neither referenced in the Complaint, nor a proper subject of judicial notice. (Objections, Dkt. No. 15-1.)  The Court agrees that the declaration is improper, and notes that, to the extent that Plaintiff seeks to cite to cases he believes support his position, he should do so through a request for judicial notice or through the standard citation format in his opposition papers.  However,

---

CIVIL MINUTES—GENERAL                    Initials of Deputy Clerk MG

Exhibit D

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## III.   DISCUSSION

Defendant moves to dismiss all of Plaintiff's claims in the Complaint. The Court addresses each in turn.

### A.   Unlawful, unfair, and deceptive business practices

Under the UCL, "unfair competition" means "any unlawful, unfair or fraudulent

---

because the Court need not—and does not—rely on the declaration to resolve the issues raised by Defendant's Motion, it DENIES Defendant's objections as moot.

**Exhibit D**

Exhibit D

business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. When analyzing a UCL claim, courts consider each of the three prongs to determine whether a practice is unlawful, unfair, or fraudulent. Daro v. Superior Court, 151 Cal. App. 4th 1079, 1093 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition.")

It is not entirely clear from the Complaint whether Plaintiff is asserting violations of the UCL under all three prongs or under one in particular. Plaintiff's first cause of action asserts that Defendant has engaged in a business practice "which violates California law," and has unjustly enriched Defendants at the class members' expense. (Complaint ¶¶ 47-48.) This suggests that Plaintiff seeks to proceed under the "unlawful prong," wherein the UCL claims rests on the violation of another law. Plaintiff also seems to allege claims under the fraudulent prong of the UCL: he alleges that Defendant's practices were "deceptive and fraudulent in that Defendant's uniform policy and practice was to represent to the California class members that they were not entitled to minimum wages, business expense reimbursement, payment for payroll taxes or mandatory insurance and other benefits as required by California law, when in fact these representations were false and likely to deceive." (Id. at ¶¶ 49, 50.) He does not, however, specify when or how such representations were made.

However, in his Opposition, Plaintiff clarifies his theory of liability, which raises a claim under the second prong: a practice that is unfair. Specifically, he explains that his UCL claim is predicated on Defendant's practice of failing to provide meal and rest periods or providing premium pay for missed meal and break periods. (Opp'n at 17-18.) He relies heavily on Safeway, Inc. v. Superior Court of Los Angeles Cty., 238 Cal. App. 4th 1138 (2015), review denied (Oct. 21, 2015), where a California Court of Appeal affirmed certification for a class of plaintiffs asserting a UCL claim on the basis of failure to pay premium wages for missed, shortened, or delayed meal breaks. 238 Cal. App. 4th at 1155-56.

With regard to Plaintiff's allegations relating to missed meal breaks, the Complaint states that "Defendant failed to provide all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods to Plaintiff and the other California class members . . . Defendant did not have a policy or practice which provided or recorded all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods . . . Plaintiff and other members of the class therefore forfeited meal and rest breaks without additional compensation." (Complaint at ¶ 16.)

The problem here is *not* that there is no legally cognizable theory for failure to provide premium wages where an employer has instructed an employee to work or otherwise impeded the taking of breaks. The problem is rather that Plaintiff has not alleged sufficient facts to explain how Defendant impeded him or other class members from taking breaks—or even that it did. Under California law—and as explained in the very cases cited by Plaintiff—an employer's duty with respect to meal breaks is an obligation to provide a meal period to employees. Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040 (2012). An employer satisfies this obligation "if

Exhibit D

it relieves its employees of all duty, relinquishes control over their activities, and permits them a reasonable opportunity to take an uninterrupted 30-minute break." Id.  Here, there are no factual allegations that Defendant actually required—or even encouraged—class members to skip breaks; there are only allegations that Defendant "failed to provide" these rest periods.  But without more factual context, it is unclear how Defendant "failed" to provide these rest periods; did Defendant require Plaintiff to take uninterrupted routes that would not allow him to stop for a meal? Did Defendant instruct Plaintiff to drive to so many different locations within a day that Plaintiff could not reasonably take any breaks? Did Defendant's agents indicate to Plaintiff that he should not take breaks?  As the court noted in Brinker, "work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations." Id. at 1040–41. Here, there is nothing to indicate that Plaintiff's failure to take breaks is attributable to Defendant's policies or practices, rather than his own idiosyncratic decisions.  This does not satisfy the Rule 8 pleading requirements

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's first cause of action.  The Court grants Plaintiff leave to amend his complaint to clarify the factual allegations that would support a theory of liability for failure to provide meal breaks.[3]

---

[3] Defendant's Motion also requests that the Court strike Plaintiff's allegation in his UCL claim that Schneider violated section 226.8, which imposes civil penalties for an employer's willful misclassification of an individual as an independent contractor. (Motion at 24.)  Plaintiff's Opposition makes clear that his UCL claim is brought under 226.7, not 226.8; it appears that Plaintiff's brief reference to 226.8 in the Complaint—included as it was in a long list of labor code sections—was in error.  (See Complaint ¶ 47.)  And, insofar as Plaintiff argues in his Opposition that he merely wishes to pursue *injunctive* relief under 226.8, this remedy is not available to him, since he is no longer an employee with Schneider. See, e.g., Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021–22 (9th Cir. 2004) ("Hangarter currently has no contractual relationship with Defendants and therefore is not personally threatened by their conduct . . . [thus] Hangarter lacked standing to prosecute an UCA claim for injunctive relief."); Delodder v. Aerotek, Inc., No. CV 08-6044 CAS AGR, 2009 WL 3770670, at *3 (C.D. Cal. Nov. 9, 2009) ("The Court finds that plaintiffs lack standing to seek prospective relief under the UCL because plaintiffs do not dispute that they are no longer employees of defendant, and thus, they cannot demonstrate 'a real or immediate threat of irreparable injury' by defendant's employment practices.")  Accordingly, the Court GRANTS Defendant's request to strike Plaintiff's reference to section 226.8 from his first cause of action.

The Court also notes that Plaintiff's complaint seeks injunctive relief in his prayer for relief: specifically, he requests "[a]n order temporarily, preliminarily, and permanently enjoining and restraining Defendant from engaging in similar unlawful conduct."  For the reason noted above, Plaintiff lacks standing to pursue injunctive relief; he has not alleged any continuing employment relationship with Schneider and therefore cannot establish that he will suffer any threat of real and immediate future harm as result of the conduct alleged.  Accordingly, the Court also GRANTS Defendant's request to strike Plaintiff's request for injunctive relief.

---

Exhibit D

**B.      Failure to pay minimum wages**

Plaintiff's second cause of action asserts that Schneider failed to compensate its truck drivers for all time worked by misclassifying them as independent contractors. (Complaint ¶¶ 63, 64.) Thus, "the Plaintiff and the California Class Members were regularly required to work, and did in fact work, uncompensated time, time compensated at less than minimum wage." (Id. at ¶ 63.) Plaintiff also contends that the work that went unpaid involved "time spent waiting for Defendant's loads to be ready for transport." (Id. at ¶ 22.)

Defendant argues that these statements are entirely conclusory allegations that fail to provide the level of factual specificity required to state a claim. (Motion at 4.) Specifically, Defendant notes that the allegations fail to identify "even one specific workweek in which the purported violations occurred" and "contains no facts from which the Court can reasonably infer that he actually worked any uncompensated hours." (Id. at 4-5.) That is, "Plaintiff fails to identify any time that was supposedly worked by him [and the class] that [Schneider] ostensibly failed to compensate under its piece-rate formula." (Id. at 5.)

The disagreement between Plaintiff and Defendant is rooted in different interpretations of the requirements for asserting a claim for failure to pay minimum wages. Both Parties rely on the Ninth Circuit's decision in Landers v. Quality Commc'ns, Inc., 771 F.3d 638 (9th Cir. 2014), as amended (Jan. 26, 2015), but reach different conclusions from its holding. In Landers, the Ninth Circuit laid out guidelines for courts evaluating the sufficiency of allegations in the context of wage-and-hour claims under the Fair Labor Standards Act ("FLSA"). Specifically, the Court explained that, while FLSA plaintiffs need not plead in detail the number of hours worked, their wages, or the amount of overtime owed, at a minimum a plaintiff must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week. 771 F.3d at 645. The Court also noted that pleadings "are to be evaluated in the light of judicial experience" and that "the plausibility of a claim is 'context-specific.'" Id.

In that case, the plaintiff had alleged that the compensation system used by the defendants for the plaintiff was a de facto "piecework with no overtime" system, meaning that employees were paid a certain amount for each "piece" of work they performed pursuant to a schedule, but were not paid time and a half their "regular hourly rate" for work in excess of forty hours per week and did not receive minimum wage payments for their hours worked. Id. at 645-46. These were "generalized allegations," the Court found, which merely "raise[d] the possibility of undercompensation," but "failed to provide sufficient detail about the length and frequency of his unpaid work to support a reasonable inference that he worked more than forty hours in a given week." Id. at 646 (internal marks omitted). Accordingly, the Court found that his allegations failed to state a plausible claim under Rule 8. Id.

Here, while Plaintiff's allegations do not arise under the FLSA, but under the California Labor Code—specifically, sections 1194, 1197, and 1197.1—it is hard to see how Plaintiff could persuasively distinguish his allegations from those in Landers. Exactly as in Landers, Plaintiff

alleges that his compensation was on a piecework basis, such that class members "were regularly required to work, and did in fact work, uncompensated time, time compensated at less than minimum wage." (Complaint ¶ 63.) But, like the <u>Landers</u> plaintiff, he does not explain how or why the load-based piece-rate compensation he received caused uncompensated time.

In an effort to avoid the application of <u>Landers</u>, Plaintiff cites to this Court's decision in <u>Thomas-Byass v. Michael Kors Stores, Inc.</u>, 2015 U.S. Dist. LEXIS 164690 (C.D. Cal. Sept. 16, 2015), where the Court upheld the plaintiff's claim for failure to pay overtime wages. But the decision in <u>Michael Kors</u> rested on strikingly different allegations. Specifically, the plaintiff explained that her overtime pay was wrongly calculated so as to underestimate the correct pay rate (by excluding her non-discretionary bonus pay from the calculation of her overtime rate), and that she was consequently undercompensated daily for the time she spent preparing mandatory sales reports after work. 2015 U.S. Dist. LEXIS 164690 at *11-14. Thus, the plaintiff made clear the manner in which she was undercompensated, provided information as to the regularity of the occurrence, and conveyed a sense of the scale of the under-compensation. Here, Plaintiff argues that he has fulfilled his burden by noting that he identified a specific task that went without compensation: his time spent waiting for trucks to be ready for departure. (Opp'n at 7.) But this lacks a host of additional contextual information that would take Plaintiff's claims from possible to plausible: for example, how often he was forced to wait for a truck; how long he was generally forced to wait; whether he incurred unpaid waiting time regularly between 2009 and 2015[4]; how the load-rate failed to compensate him for waiting time (for example, would the load-rate have compensated him at a minimum-wage rate had it not been for the waiting time?) Moreover, the Court does not understand Plaintiff's contention that information regarding waiting time is "within the sole possession, custody, and control of the Defendant": is Plaintiff suggesting that he himself has no sense of how long he would have to wait for trucks to be ready?

While the Court recognizes that Plaintiff need not identify an exact calendar week or a particular instance of denied overtime, he must at least provide a general estimate of the time he alleges went uncompensated. This need not be done with mathematical precision, but should be sufficient to give fair notice to Defendant as to the breadth of the claim. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's second claim, but grants Plaintiff leave to amend to remedy the informational gaps noted above.

## C.      Failure to provide itemized wage statements

Plaintiff's third cause of action asserts that Defendant violated California Labor Code Section 226 by failing to provide him with complete and accurate wage statements. He asserts that, "from time to time," Defendant's wage statements failed to show "the correct minimum wages for time worked, the correct allocation of lawfully required, paid, off-duty rest periods, and the correct payment for missed meal periods." (Complaint ¶ 70.) As a result of these inaccurate wage statements, Plaintiff alleges that he had to expend costs "to calculat[e] the true amount of

---

[4] Providing more details as to the time frame of his allegations would also clarify whether a statute of limitations defense might apply to some of Plaintiff's claims.

Exhibit D

time worked and the amount of employment taxes which were not properly paid to state and federal tax authorities." (Id. at ¶ 71.)

Defendant raises various arguments to challenge the sufficiency of these allegations. First, it argues that Plaintiff neglected to allege facts to plausibly suggest that Schneider *knowingly and intentionally* provided inaccurate wage statements. (Motion at 6.) Next, it argues that Plaintiffs fails to allege a required element: a cognizable injury beyond the fact of not receiving a compliant itemized wage statement. (Id. at 7.) Third, it points out that Plaintiff has not alleged that he received any wage statements from Schneider that were inaccurate in reporting wages *actually paid to him*, only that they did not show the "correct" wages that Plaintiff alleges should have been paid. (Id. at 8.) Finally, Defendant argues that, under Section 226.7, wage statements need not itemize payments for missed meal or rest breaks. (Id.)

In response, Plaintiffs argue that, by alleging that Defendant's policy of underpaying wages was deliberate, Plaintiff has satisfied its burden to show that the derivative wage statement was also intentional. (Opp'n at 9.) He also notes that the "injury" requirement is minimal, and satisfied by the allegation that the defendant furnished inaccurate information. (Id.) Next, he takes issue with Defendant's view that it is entitled to provide wage statements which inaccurately report the amount of wages earned so long as the statements accurately report what was paid. (Id. at 10.) Finally, he disagrees that wage statements need not itemize meal period compensation, noting that several cases have recently disagreed with the case on which Defendant relies for this point. (Id.)

The Court addresses each point in turn. First, it finds that the plain language of the statute requires wage statements to accurately report not just "wages paid," but also "gross wages earned," "total hours worked," and "net wages earned." Cal. Lab. Code § 226(a). Accordingly, the Court agrees with other district courts that, insofar as Plaintiff claims that the wage statements included only the amount he was actually paid, but not the amount he *earned*—perhaps by underrepresenting the number of hours worked, though the Complaint does not make this clear—Plaintiff may assert a violation of the statute. See also Pena v. Taylor Farms Pac., Inc., No. 2:13-CV-01282-KJM-AC, 2014 WL 1665231, at *9 (E.D. Cal. Apr. 23, 2014) ("If the statement must be accurate as to both wages earned and total hours worked, then accurate payment of inaccurately recorded hours would violate the statute."); Rodriguez v. Cleansource, Inc., No. 14-CV-0789-L DHB, 2015 WL 5007815, at *7 (S.D. Cal. Aug. 20, 2015) (rejecting defendant's contention that "employers are only required to accurately report wages that the employee is actually being paid" and upholding plaintiffs' claims where they identified specific failures by defendant in accurately reporting time).

Second, the Court repeats its conclusion from its decision in Michael Kors that Plaintiff may satisfy the intent element by alleging that Defendant deliberately underpaid its employees. See Michael Kors, 2015 U.S. Dist. LEXIS 164690, at *21 ("Plaintiff has alleged facts sufficient to infer that Defendant deliberately failed to pay wages for time worked, that it failed to provide requisite meal breaks, and therefore it knew it was providing inaccurate wage statements."); see also Davenport v. Wendy's Co., No. 2:14-CV-00931 JAM, 2014 WL 3735611, at *7 (E.D. Cal.

July 28, 2014) ("Plaintiff alleges that Defendant 'purposely' misclassified salaried General Manager employees as exempt, and therefore Plaintiff has sufficiently alleged that the failure to provide accurate wage statements was 'knowing and intentional' under section 226(e)); Hennighan v. Insphere Ins. Sols., Inc., No. 13-CV-00638-JST, 2013 WL 1758934, at *5 (N.D. Cal. Apr. 24, 2013) ("an allegation of purposeful misclassification is required" to show a "knowing and intentional failure" to provide itemized wage statements under section 226). Accordingly, the Court finds that Plaintiff *could* satisfy the intent element where he could show that Defendant engaged in a deliberate scheme to underpay its employees.[5]  As discussed in the rest of this order, however, the Complaint in general fails to support a claim that Defendant deprived him of wages—which, of course, dooms his claim that Defendant *deliberately* underpaid him.

The Court reaches a similar conclusion with regard to the injury element: the theory may work, but the claim lacks sufficient facts to support the cause of action.  The terms of the statute state that "an employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information" as required by section 226 *and* "the employee cannot promptly and easily determine from the wage statement alone" any of the following

     (i)     The amount of gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a);

     (ii)    Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a);

     (iii)   The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period;

     (iv)   The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

---

[5] The Court is not convinced otherwise by Defendant's citations to an unpublished California Superior Court decision and a Northern District decision.  (Reply at 3.)  In the first case, the court's statement that an "intentional" violation of the labor code was not identical to an "intentional" violation of section 226 appears to be dicta—the court's holding that the plaintiff could not sustain a section 226 claim rested on other grounds—*and* it involved a situation where the allegations indicated a good faith attempt by the defendant to pay for all hours worked.  Brian Driscoll et al. v. Granite Rock Company, Case No. 1:08-CV-103426, Dkt. No. 12-1 (Super. Ct., Santa Clara County, Sept. 20, 2011).  In the second case, Brown v. Wal-Mart Stores, Inc., No. C 08-5221 SI, 2013 WL 1701581 (N.D. Cal. Apr. 18, 2013), the court did not reject the theory that an intentional violation of wage and hour laws could support a claim of an intentional violation of section 226, but rather found that the plaintiff could not show an intentional violation of wage and hour laws in the first place.  2013 WL 1701581, at *8.

---

**Exhibit D**

Cal. Lab. Code § 226(e)(2)(B).  Items (2) through (4), as referenced in (i), include:

> (2) Total hours worked by the employee;
> (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; and
> (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item.

Cal. Lab. Code § 226(a)(2-4).  Here, Plaintiff has alleged that the wage statements did not provide complete and accurate information because they did not "accurately itemize the gross wages earned, the net wages earned, and all applicable hourly rates in effect."  (Complaint ¶ 70.)  Plaintiff also suggests that the wage statements did not indicate the "true amount of time worked," which satisfies the second prong of the injury element: an employee must be able to "promptly and easily" determine the "total hours worked by the employee."  Accordingly, Plaintiff's allegations, *if supported*, could suffice to make out an injury under section 226.  See also Davenport, 2014 WL 3735611, at *7 ("the injury requirement is minimal" as indicated by 2013 statutory amendment to section 226(e), "which clarifies that "[a]n employee is deemed to suffer injury . . . if the employee cannot promptly and easily determine from the wage statement alone . . . the amount of gross wages or net wages" due to the employee").[6]

However, while the theory of liability may hold up, it does not have specific factual support. As in Plaintiff's failure to pay minimum wages claim, Plaintiff does not provide any clarifying information that would explain *how* Defendant's statements were inaccurate.  For example, if Plaintiff alleges that the statements did not accurately recite the number of hours worked, in what way does he allege that the statements under-counted his hours? Does he allege that he worked additional hours that Defendant never recognized? That Defendant listed him as having worked a set number of hours per load delivery, regardless of how many hours he actually worked? The same concerns apply to his remaining allegations, which seem only to parrot the language of 226, but do not explain how these terms applied in his case.  Just as Plaintiff failed to explain in what way he was under-compensated under the piecework system, here, too, he fails to explain how the statements inaccurately represented the wages he earned.

---

[6] Again, the Court notes that Defendant's citations to cases that came out differently do not compel a contrary result here, although it acknowledges that the case law on this issue is not all in agreement.  However, in both cases that Defendant cites—Milligan v. Am. Airlines, Inc., 577 F. App'x 718, 719 (9th Cir. 2014) and Angeles v. U.S. Airways, Inc., No. C 12-05860 CRB, 2013 WL 622032, at *10 (N.D. Cal. Feb. 19, 2013)—the courts focused on the fact that an *omission* in a wage statement was insufficient to establish injury; here, Plaintiff seems to assert not just that an itemized requirement was missing, but that the information included was actually wrong.

---

**Exhibit D**

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's third cause of action, but grants leave to amend so that Plaintiff can provide additional factual support for his claim.

### D.   Failure to provide wages when due

In his fourth cause of action, Plaintiff contends that Defendant did not timely tender payment of all wages owed after Plaintiff's employment ended in violation of California Labor Code Sections 201, 202, and 203.  Again, the cause of action suffers from the same informational gaps discussed above: Plaintiff does not explain what wages he alleges were due nor the basis for asserting that such wages were due.[7]  Conclusory allegations that Defendant "did not timely tender payment of all wages owed as required by law" fall far short of the Twombly/Iqbal standard and fail to give Defendant fair notice of the grounds upon which the claim rests.  See, e.g., Guerrero v. Halliburton Energy Servs., Inc., No. 1:16-CV-1300-LJO-JLT, 2016 WL 6494296, at *8 (E.D. Cal. Nov. 2, 2016) ("The Court agrees with Defendant that these allegations fail to satisfy the pleading requirements of Rule 8. Importantly, Plaintiff has not alleged when his employment with Defendant ended, nor has he alleged exactly what wages were earned and unpaid."); Lopez v. Aerotek, Inc., No. SACV1400803CJCJCGX, 2015 WL 4504691, at *2 (C.D. Cal. July 23, 2015) (dismissing claim where "Plaintiff merely asserts that 'Defendants willfully failed to pay their workers accrued wages due promptly upon separation, as required by Code sections 201 and 202.'. . . Plaintiff does not even generally allege what wages were earned and paid at the time of termination, nor does she allege how and in what manner any final wage payment was untimely under the Labor Code.")  Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's fourth cause of action.  Plaintiff may amend his Complaint to provide additional factual support for his claim.

### E.   Failure to reimburse employees for required expenses

Plaintiff's fifth cause of action asserts that Defendant failed to indemnify or reimburse Plaintiff or the class under California Labor Code Section 2802 for required expenses incurred in the discharge of their job duties.  For example, Defendant failed to reimburse employees for the costs or expenses of owning and/or leasing and maintaining a car, or the fuel for the trucks and vehicles that employees utilized when driving to assigned locations by Defendant.  (Complaint ¶ 82.)

Defendant complains that these allegations are not specific enough to meet the standards of Rule 8.  (Motion at 16-17.)  It also argues that "the Complaint is devoid of any factual

---

[7] Although Plaintiff asserts generally in the Complaint that Defendant did not compensate him at a minimum wage rate as the result of its piecework compensation structure, these allegations lacked clarifying information, as the Court has already discussed.  Moreover, Plaintiff does not even make clear whether his section 203 claim relies on the same allegations of uncompensated work that form the basis for his failure to pay minimum wage claims.

allegation that any of the PCMs ever sought and were refused reimbursement for the alleged business expenses." (Id. at 17.)

On both counts, the Court is unpersuaded by Defendant's arguments. First, the Complaint specifies both the type of expenses that were incurred—car maintenance and fuel costs—and explains why such costs were necessary to employment: Defendant required its truck drivers to drive to assigned locations in order to complete their principal job duties: picking up and delivering loads. That employees would necessarily incur vehicle and fuel costs to fulfill the job seems obvious under the circumstances. Second, there is no requirement that employees must have sought reimbursement. See Stuart v. RadioShack Corp., 641 F. Supp. 2d 901, 902–03 (N.D. Cal. 2009) (public policy underlying section 2802 focuses not on whether employee makes a request for reimbursement but rather on whether employer "either knows or has reason to know that the employee has incurred a reimbursable expense"). Here, it is reasonable to assume that, where the job expressly involved driving from place to place, Defendant had good reason to know that employees were incurring expenses related to the vehicles they drove—and yet failed to reimburse those expenses. While the Court acknowledges that Plaintiff would have done better to more clearly itemize the expenses,[8] the deficiencies here are not so significant as to defeat his claim; the specifics of the expenses incurred may be developed through the course of discovery.

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's fifth cause of action.

**F.   Illegal deductions from wages**

In his sixth cause of action, Plaintiff asserts that Defendant illegally classified him and the putative class members as independent contractors, rather than employees, and is therefore required to comply with California law regarding deductions from wages. (Complaint ¶ 86.) Because Defendant "failed to pay all compensation due" and "made unlawful deductions from compensation," Plaintiff alleges that it is in violation of California Labor Code section 221, which makes it unlawful "for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." (Id. at ¶¶ 88-92.)

Defendant counters that the explicit remedy for a violation of section 221 is found in sections 225 and 225.5—which provide for only *criminal and agency enforcement* of section 221. (Motion at 17.) That is, neither statute creates a private right of action for violations of section 221.

The Court finds that the weight of authority—together with the clear language of the statute—supports Defendant's argument. Unlike other sections of the Labor Code, which

---

[8] For example, were employees required to purchase and maintain particular types of trucks? Did they have to maintain their trucks in a certain condition to maintain their employment? How significant were the fuel costs?

---

**CIVIL MINUTES—GENERAL**         Initials of Deputy Clerk MG

expressly allow employees to file suit to recover wages,[9] there is nothing to indicate that the legislature intended to create a private right of action to remedy violations of sections 221 or 223. See Cal. Lab. Code §§ 221, 223; see also Gunawan v. Howroyd-Wright Employment Agency, 997 F. Supp. 2d 1058, 1068 (C.D. Cal. 2014) (text of section 223 does not support existence of private right of action); Calop Bus. Sys., Inc. v. City of Los Angeles, 984 F. Supp. 2d 981, 1014 (C.D. Cal. 2013), aff'd in part, appeal dismissed in part, 614 F. App'x 867 (9th Cir. 2015) (same); Johnson v. Hewlett-Packard Co., 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011), aff'd, 546 F. App'x 613 (9th Cir. 2013) (same); contra Villalpando v. Exel Direct Inc., No. 12-CV-04137 JCS, 2014 WL 1338297, at *18 (N.D. Cal. Mar. 28, 2014) (finding "clear legislative intent" to allow private causes of action).[10]

Accordingly, the Court GRANTS Defendant's motion as to its sixth cause of action. Because amendment would be futile in light of the absence of a private right of action, the Court dismisses Plaintiff's UCL claim **without leave to amend**. See, e.g., Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1038, 1042 (9th Cir. 2011) (dismissal without leave to amend is appropriate where "amendment would be futile").

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS in Part and DENIES in Part Defendant's Motion to Dismiss.  The Court dismisses Plaintiff's first, second, third, fourth, and sixth causes of action, and grants Plaintiffs leave to amend all but the sixth cause of action, subject to the limitations described above.  Plaintiffs may file an amended complaint no later than March 3, 2017. The February 13, 2017 hearing on the Motion is VACATED.

**IT IS SO ORDERED.**

---

[9] For example, section 203 provides that, "[i]f an employer willfully fails to pay, without abatement or reductions, in accordance with sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty . . . [and] [s]uit may be filed for these penalties at any time . . ." Cal. Labor Code § 203(a)-(b). Section 218, too, states that "[n]othing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article." Cal. Lab. Code § 218.

[10] The Court is not convinced by the reasoning in Villalpando, which, as Defendant points out, appears to be an outlier in its conclusion that section 221 creates a private right of action.  In particular, the Court disagrees with Villalpando's assumption that, because the conduct prohibited by section 221 is the wrongful deprivation of wages, it *must* confer a private cause of action so that employees can recover these unpaid wages.  2014 WL 1338297, at *18.  After all, as noted above, other sections of the Labor Code involving unpaid wages expressly provide for a private right: thus, the fact that section 221 relates to unpaid wages would not seem to automatically confer a private right absent additional language in the statute confirming this to be so.

---

Exhibit D

**Boyd, David A.**

| | |
|---|---|
| **From:** | Soto, Diana E. |
| **Sent:** | Monday, February 13, 2017 7:51 AM |
| **To:** | Boyd, David A. |
| **Cc:** | Kramer, John R.; Kelly, Daniel A. |
| **Subject:** | FW: Activity in Case 5:16-cv-02482-JGB-KK William Robles v. Schneider National Carriers, Inc. et al Order on Motion to Dismiss Case |

From DS's inbox dated 2/10th

**John R. Kramer**
T: +1 310 315 8215 | M: +1 310 925 9091

**From:** cacd_ecfmail@cacd.uscourts.gov [mailto:cacd_ecfmail@cacd.uscourts.gov]
**Sent:** Friday, February 10, 2017 4:06 PM
**To:** ecfnef@cacd.uscourts.gov
**Subject:** Activity in Case 5:16-cv-02482-JGB-KK William Robles v. Schneider National Carriers, Inc. et al Order on Motion to Dismiss Case

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered on 2/10/2017 at 4:05 PM PST and filed on 2/10/2017
**Case Name:**     William Robles v. Schneider National Carriers, Inc. et al
**Case Number:**   5:16-cv-02482-JGB-KK
**Filer:**
**Document Number:** 17

**Docket Text:**
**MINUTE Order: (1) GRANTING in Part and Denying in Part Defendants Motion to Dismiss (Dkt. No. [12]); and (2) VACATING the February 13, 2017Hearing (IN CHAMBERS) by Judge Jesus G. Bernal. (SEE ORDER FOR DETAILS.) (mga)**

**5:16-cv-02482-JGB-KK Notice has been electronically mailed to:**

Exhibit D

Victoria Bree Rivapalacio      victoria@bamlawca.com

Karen W Luh      kluh@mcguirewoods.com, dsoto@mcguirewoods.com, rmorrissette@mcguirewoods.com

Norman B Blumenthal      norm@bamlawlj.com

Ruchira Piya Mukherjee      piya@bamlawca.com

Kyle R Nordrehaug      kyle@bamlawlj.com

Aparajit Bhowmik      aj@bamlawlj.com

Matthew Charles Kane      mkane@mcguirewoods.com, revey@mcguirewoods.com, dsoto@mcguirewoods.com

Sabrina A Beldner      mwhitney@mcguirewoods.com, sbeldner@mcguirewoods.com

David C Parisi      ecf-88fc16a14521@ecf.pacerpro.com, dcparisi@parisihavens.com

Molly Ann DeSario      molly@bamlawca.com, norm@bamlawca.com

**5:16-cv-02482-JGB-KK Notice has been delivered by First Class U. S. Mail or by other means <u>BY THE FILER</u> to :**

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

Exhibit D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | CV 13–891 DSF (RZx) | | Date | 6/18/13 |
|---|---|---|---|---|
| Title | Marco Rodriguez v. Old Dominion Freight Line, Inc. | | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge | |
|---|---|---|
| Debra Plato | | Not Present |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     (In Chambers) Order GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (Docket No. 19)

The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7–15.

## I.   INTRODUCTION

Marco Rodriguez brings claims for violation of California Business and Professions Code § 17200 *et seq.* (UCL Claims), violation of California Labor Code §§ 201 and 202, Violation of California Labor Code § 226(a), wrongful termination in violation of public policy, retaliation in violation of public policy, intentional infliction of emotional distress (IIED), and defamation against Old Dominion Freight Line, Inc. (ODFL). ODFL moves to dismiss Rodriguez's First Amended Complaint (FAC).

From March 2010 to January 5, 2012, Rodriguez worked as a "Pick-Up and Delivery" driver for ODFL, a non-exempt and hourly position. (FAC ¶ 3.) He earned $18.85 per hour at the time of his termination. (Id.) During his time with ODFL, Rodriguez was employed in ODFL's "Less than Truckload" (LTL) shipping business. (Id.) This business generally consists of intrastate transportation of relatively small packages and freight. (Id.)

From April 2010 to late-2011, Rodriguez worked on a regular route between ODFL's Montebello terminal to areas in the San Fernando Valley. (Id. ¶ 12.) He thereafter worked as an "on-call" Pick-Up and Delivery driver until he was terminated.

Rodriguez alleges that on average he worked 50 hours per week and that he

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## **MEMORANDUM**

regularly worked 60 hours per week.  (Id. ¶ 13.)  ODFL classified Rodriguez as "part-time" and did not provide him with benefits such as health insurance.  (Id.)  Rodriguez alleges that ODFL failed to pay him at the proper overtime rate and that ODFL failed to provide uninterrupted meal periods and rest breaks.  (Id. ¶¶ 13, 17.)  Rodriguez claims that ODFL required employees to "clock-in" and "clock-out" for meal periods on handheld devices immediately after starting their shifts and that ODFL would require him on occasion to indicate — fraudulently — on his handheld device that he took his meal period from 7:30 a.m. to 8:00 a.m.  (Id. ¶ 17.)

Rodriguez claims that he was told by ODFL's dispatcher, "Marty," that ODFL's policy was to pay overtime for shifts of 13 hours or more only.  (Id. ¶ 14.)  He alleges that he has nine wage statements dated between May 7, 2010 and January 6, 2012 that all indicate "small payments of overtime for shifts of 13 hours or more only."  (Id.)

Rodriguez was terminated on January 5, 2012 for "poor performance."  (Id. ¶ 21.)  He claims the reasons for his dismissal were pretextual and that he was terminated in retaliation for complaining about ODFL's overtime policy and failure to provide required meal and rest breaks.  (Id. ¶¶ 21–22.)  He claims that he was denied subsequent employment as a result of ODFL telling his prospective employers that he was terminated for "poor performance."  (Id. ¶ 26.)  Specifically, Rodriguez claims that he received an offer of employment on October 1, 2012 with a October 22, 2012 start date that was rescinded due to ODFL's statements about his performance.  (Id.)

Rodriguez also brings several class action claims.

## **II.   LEGAL STANDARD**

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (alteration in original) (internal quotation marks omitted).  But Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson, 551 U.S. at 94.  However, allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true, Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), and a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original) (internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Ruling on a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." Id. at 1950 (alteration in original) (citation and internal quotation marks omitted).

"Normally, when a viable case may be pled, a district court should freely grant leave to amend." Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011). Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegation of different or additional facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## III. DISCUSSION

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." The Court dismissed Rodriguez's Complaint on April 2, 2013 because he failed to respond to ODFL's motion to dismiss and failed to notify the Court that he had elected to amend his pleading as Rule 15(a)(1) permits. (Docket No. 11.) The Court's order permitted Rodriguez to file an amended complaint no later than April 24, 2013. (Id.) Rodriguez filed his FAC on April 24, 2013. (Docket No. 16.) As the Court provided Rodriguez until April 24, 2013 to file his amended complaint and did not place restrictions on any amendment, the Court will allow Rodriguez to add the wrongful termination claim and class action claims in his FAC.

In any event, as Rule 15(a)(2) provides that, in considering amendments to pleadings, "[t]he court should freely give leave when justice so requires." This rule should be interpreted and applied with "extreme liberality," Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir. 1991), and leave to amend "should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176 F.3d 1241, 1246 (9th Cir. 1999) (internal quotation marks omitted); see also Foman, 371 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

at 182 (identifying these factors).  It is far from clear that permitting the amendments here would prejudice ODFL, create undue delay, or that the amendments were sought in bad faith.  The new claims and amendments in Rodriguez's FAC are permissible.

### A.      Individual UCL Claims

Rodriguez bases his UCL claims on violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, failure to provide meal and rest breaks as required by California Labor Code § 226.7, failure to timely pay wages on termination in violation of California Labor Code §§ 201 and 202, and failure to provide accurate itemized wage statements in violation of California Labor Code § 226(a).

"The UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (citations and quotation marks omitted)).  "Virtually any law — federal, state or local — can serve as a predicate for an action under Business and Professions Code section 17200."  Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1361 (2010) (citations and quotation marks omitted).

### 1.      FLSA Violations

ODFL wrongly argues that Rodriguez's FLSA violation allegation fails because Rodriguez "fails to allege any facts that could show he was not exempt from the overtime provisions under . . . the FLSA."  (ODFL's Mot. to Dismiss 7 (citations omitted)).  "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies."  Reich v. Am. Driver Serv., Inc., 33 F.3d 1153, 1156 (9th Cir. 1994) (citation and quotation marks omitted).  Rodriguez has pleaded that ODFL's business "consists of intrastate transportation, wholly within the State of California . . . ."  (FAC ¶ 11.)  He has adequately pleaded that the FLSA applies and that ODFL is subject to the FLSA's regulations and overtime provisions.  See Reich, 33 F.3d at 1155 (footnote omitted) ("Any motor carrier that engages in wholly intrastate commerce . . . is subject to the Secretary of Labor's jurisdiction, and consequently, to the maximum hours provisions of the FLSA").  While ODFL may ultimately be exempt from the FLSA's requirements, any exemption inquiry is necessarily fact-intensive.  See id. at 1155–56.  Such an inquiry is ill-suited to a motion to dismiss.

The FLSA requires that "no employer shall employ any of his employees who in a workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

compensation" for hours worked beyond forty hours "at a rate not less than one and one half times the rate at which he or she is regularly employed." 29 U.S.C. § 207(a)(1). "To establish a claim for failure to pay overtime under the FLSA, the plaintiff must aver that: (1) defendant was plaintiff's employer; (2) plaintiff worked more than forty hours in a week; and (3) plaintiff did not receive compensation for his employment in excess of the forty hours." McKeen-Chaplin v. Franklin Am. Mortg. Co., No. C 10–5243 SBA, 2011 WL 4082543, at *3 (N.D. Cal. Sept. 13, 2011) (citation and quotation marks omitted).

Rodriguez has alleged that he worked more than 40 hours per week without adequate overtime compensation. (FAC ¶¶ 13, 24, 40.) He has adequately pleaded a violation of the FLSA and satisfied the requirements of Federal Rule of Civil Procedure 8(a)(2). In addition to his allegations regarding working 50 hours per week on average, Rodriguez specifically points to nine wage statements in which he alleges he was paid overtime for shifts of 13 hours or more only. (FAC ¶ 14.) This is more than enough to satisfy the pleading requirements of Rule 8(a)(2).

## 2.   Meal and Rest Break Violations

Rodriguez also bases his UCL claim on ODFL's alleged violation of California Labor Code § 226.7. (See FAC ¶¶ 17, 18, 41.) "State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." Brinker Rest. Corp. v. Super. Ct., 53 Cal. 4th 1004, 1018 (citations omitted). "Labor Code section 226.7, subdivision (a) prohibits an employer from requiring an employee 'to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission [(IWC)].'" Id. (footnote omitted). ODFL argues that Rodriguez's UCL claim based on a § 226.7 violation is deficient because Rodriguez's UCL claim is inadequately pleaded under Rule 8 and because § 226.7 violation payments are not subject to restitution under the UCL.

Rodriguez's UCL claim is adequately pleaded with respect to § 226.7. He specifically alleges that he was not provided a lawful meal period or rest break. (FAC ¶¶ 17, 41.) He further alleges that he was not provided the pay required by § 226.7 in lieu of a rest break. (Id. ¶ 18.) Rodriguez details specific practices, (e.g. id. ¶ 17), and instances, (e.g. id. ¶ 19), in the FAC. These allegations are plainly sufficient under Rule 8(a)(2) to support Rodriguez's UCL claims with respect to the alleged § 226.7 violations.

Claims for § 226.7 violations are actionable as UCL claims. Under relevant California law, payments owed for § 226.7 violations are restitutionary in nature and are therefore actionable under the UCL. See Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1099–1100 ("We conclude that the remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations . . ."); Brinker, 53 Cal. 4th at 1018 (citations omitted) ("Employers who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

violate these requirements must pay premium wages"); <u>see also</u> <u>Brandon v. Nat'l R.R.</u>
<u>Passenger Corp. Amtrak</u>, No. CV 12–5796 PSG (VBKx), 2013 WL 800265, at *4 (C.D.
Cal. Mar. 1, 2013) (citations omitted) ("Plaintiff seeks restitution for unpaid meal and rest
periods and unreimbursed business expenses.  These expenses are restitutionary and
therefore recoverable under the UCL"); <u>Ordonez v. Radio Shack</u>, No. CV 10–7060 CAS
(MANx), 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) (citations omitted) ("The
Court concludes that plaintiff's UCL claim can be maintained to the extent it is based on
allegations of section 226.7").

    ODFL argues that <u>Kirby v. Immoos Fire Prot., Inc.</u>, 53 Cal. 4th 1244 (2012)
stands for the proposition that a UCL restitution claim cannot be maintained when the
basis for the UCL claim is an alleged §226.7 violation.  <u>Kirby</u> held that "section 226.7
claims do not constitute 'action[s] brought for the nonpayment of wages' within the
meaning of section 218.5." <u>Id.</u> at 1259.

    However, <u>Kirby</u> also reaffirmed that "the remedy for a violation of the statutory
obligation to provide IWC-mandated meal and rest periods is 'one additional hour of pay
at the employee's regular rate of compensation for each work day that the meal or rest
period is not provided.'" <u>Id.</u> at 1256 (quoting § 226.7(b)).  Thus, if, as Rodriguez alleges,
ODFL failed to provide him the required meal and rest breaks, he is entitled to one
additional hour of pay for each work day in which he was not provided the required
breaks.  In a UCL claim, "restitution means the return of money to those persons from
whom it was taken or who had an ownership interest in it."  <u>Shersher v. Super. Ct.</u>, 154
Cal. App. 4th 1491, 1497 (2007) (citation and quotation marks omitted).  Regardless of
whether ODFL's failure to pay Rodriguez what he was owed under § 226.7 is considered
a wage, he has alleged that he is owed money and may thus maintain a UCL restitution
claim to obtain the money he is owed.  Rodriguez has adequately pleaded an actionable
UCL claim for violation of § 226.7.

    **3.**    **Labor Code §§ 201**

    For the reasons below, Rodriguez may maintain a UCL claim for Labor Code §
201 violations only for unpaid overtime compensation.  He may not maintain a UCL
claim for money owed for required meal period and rest breaks that were not provided as
Labor Code sections 201 and 202 do not permit recovery for unpaid meal and rest breaks.
The portion of his UCL claim based on violations of Labor Code § 201 is dismissed with
prejudice.

    **4.**    **Labor Code § 226(a)**

    As explained below, Rodriguez may not maintain a claim for the provision of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

inaccurate wage statements in violation of California Labor Code § 226(a).  Accordingly, he may also not maintain a UCL claim on this basis.  This portion of his UCL claim is dismissed without prejudice.

### B.      Individual Labor Code §§ 201 and 203 Claims

Rodriguez claims that ODFL failed to timely pay all wages owed to him on his termination, including all overtime, meal period, and rest break pay.  (FAC ¶¶ 52–53.)

California Labor Code § 201(1) requires that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Under California law, "'[w]ages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."  Cal. Labor Code § 200(a).  California Labor Code § 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 . . . any wages of an employee who is discharged . . . the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days . . . .

As explained above, Rodriguez has adequately pleaded an FLSA claim and, as such, has stated a claim for unpaid overtime wages.  He may pursue a § 201(a) claim to recover those unpaid wages.

Section 203 entitles a terminated employee to "waiting time penalties" of up to 30 days' wages if the employer "willfully fails to pay" the employee any outstanding wages immediately upon termination.  Choate v. Celite Corp., 215 Cal. App. 4th 1460, 155 Cal. Rptr. 3d 915, 922 (2013) (citing Cal. Labor Code § 201).  "To act willfully, an employer need not act with a deliberate evil purpose."  Id. (citation and quotation marks omitted).  "Rather, the employer need only intentionally fail or refuse to perform an act which was required to be done."  Id. (citation and quotation marks omitted).  "However, an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness."  Id. (quoting Cal. Code Regs. tit. 8, § 13520(a)).  Rodriguez has alleged that he complained to ODFL's plant manager, his direct supervisor, regarding ODFL's allegedly unlawful overtime policy.  (FAC ¶ 19.)  He has also alleged that several wage statements indicate that he was not paid the proper overtime amounts.  (Id. ¶ 14.)  Rodriguez has sufficiently pleaded that ODFL intentionally failed or refused to pay him what he was due.  He has adequately pleaded a § 203 violation with respect to unpaid overtime compensation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Rodriguez may not, however, pursue section 201 and 203 claims for the non-payment of premium wages due as a result of ODFL failing to provide required meal periods and rest breaks.  Kirby forecloses the possibility of an action under sections 201 and 203 for the nonpayment of wages.

When an employee sues for a violation of section 226.7, he or she is suing because an employer has allegedly "require[d] [the] employee to work during [a] meal or rest period mandated by an applicable order of the Industrial Welfare Commission." (§ 226.7, subd. (a).)  In other words, a section 226.7 action is brought for the nonprovision of meal and rest periods, not for the "nonpayment of wages."

Sections 201 and 202 provide a useful contrast to section 226.7.  Section 201 provides that when "an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately" (§ 201, subd. (a)), and section 202 provides that when an "employee has given 72 hours previous notice of his or her intention to quit, . . . the employee is entitled to his or her wages at the time of quitting" (§ 202, subd. (a)).  When an employee sues on the ground that his or her former employer has violated one of these provisions, the suit is an "action brought for the nonpayment of wages."  In other words, the employer's nonpayment of wages is the basis for the lawsuit.  By contrast, when an employee sues on the ground that his or her employer has violated section 226.7, the basis for the lawsuit is the employer's nonprovision of statutorily required rest breaks or meal breaks. . . .

The failure to provide required meal and rest breaks is what triggers a violation of section 226.7.  Accordingly, a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks.

53 Cal. 4th at 1255–57.  Kirby makes clear that an employer who owes an employee a premium wage under § 226.7 is not also liable for a violation of § 203.  See Jones v. Spherion Staffing LLC, No. LA CV11–06462 JAK (JCx), 2012 WL 3264081, at *8–*9 (C.D. Cal. Aug. 7, 2012) ("For several reasons, the Court finds that Plaintiff cannot advance a claim for . . . failure to pay wages due upon termination pursuant to section 203 based solely on alleged violations of section 226.7").  As Rodriguez cannot maintain a § 203 claim on the basis of unpaid compensation due under § 226.7 as a matter of law, this portion of his § 203 claim is dismissed with prejudice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**C.     Individual Labor Code § 226(a) Claims**

Rodriguez has failed to adequately plead a Labor Code § 226(a) claim.  Labor Code § 226(a) "sets forth nine itemized requirements for a wage statement."  <u>Price v. Starbucks Corp.</u>, 192 Cal. App. 4th 1136, 1142 n.4 (2011).[1]  "To recover damages under section 226, subdivision (e), an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute."  <u>Id.</u> at 1142 (footnote omitted).  "The injury requirement in section 226, subdivision (e), cannot be satisfied simply because one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement."  <u>Id.</u>

As currently pleaded, Rodriguez's alleged injury, the non-payment of overtime wages owed, did not arise "as a result of a knowing and intentional failure" of ODFL to list the proper hourly rate for overtime.  In fact, Rodriguez alleges that he was able to determine that he was not properly compensated for all hours he considered to be overtime hours because the wage statements were "accurate" in the sense that they listed the hourly rate that ODFL actually applied to hours worked.  (<u>See</u> FAC ¶ 14.)  By contrast, <u>Price</u> held that a cognizable injury in fact arises from, for example, cases in which plaintiffs "sufficiently alleged (and presented evidence) of an injury arising from inaccurate or incomplete wage statements, which required those plaintiffs to engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid."  192 Cal. App. 4th at 1143 (citations omitted).  Rodriguez pleads that he "independently knew that [ODFL's] overtime policy was unlawful" and specifies that he was paid overtime in "similar position[s] with similar duties . . . for shifts over 8 hours per day and/or 40 hours per week."  (FAC ¶ 16.)  Rodriguez has failed to state a claim for a § 226(a) violation.

While it appears Rodriguez is unable to state a § 226(a) claim as a matter of law, he may amend the FAC as it is not certain that any amendment would be futile.

**D.     Wrongful Termination in Violation of Public Policy**

As explained above, Federal Rule of Civil Procedure 15(a)(2) dictates that Rodriguez be permitted to amend his complaint to include a wrongful termination claim. This claim will not be dismissed.

---

[1] The relevant § 226(a) requirement is that a wage statement lists "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . . ."

**Exhibit E**

Exhibit E

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

### E.      Retaliation in Violation of Public Policy

Rodriguez has sufficiently pleaded his retaliation in violation of public policy claim.  (See FAC ¶¶ 69–75.)  He has alleged sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  In any event, ODFL's arguments regarding temporal proximity and admissibility are more properly addressed in a motion for summary judgment.

### F.      Intentional Infliction of Emotional Distress (IIED)

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted).

Taking his allegations as true, Rodriguez has done enough under California law to survive a motion to dismiss as to his IIED claim as he has alleged that ODFL had knowledge of the falsity of its conduct, including making allegedly false representations to the California Employment Development Department, (FAC ¶¶ 22–27), and retaliating against him, which allegedly constitutes outrageous conduct, (id. ¶¶ 69–71, 75), and that such conduct could cause the "severe emotional distress, anxiety" and other injuries Rodriguez claims, (id. ¶¶ 88).  See Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243, 288 (2009) (reversing a grant of summary judgment on an IIED claim and explaining that "[a] claim for distress arising out of employment is not barred where the distress is engendered by an employer's illegal discrimination practices . . . [n]either discrimination nor harassment is a normal incident of employment" (citations and quotation marks omitted)).  Rodriguez has done enough to provide ODFL with fair notice of the scope and substance of his IIED claim and questions as to admissibility and applicable evidence supporting the claim are best addressed in a motion for summary judgment.

### G.      Defamation

"Defamation is an invasion of the interest in reputation.  The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage."  Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999) (citations omitted).  "Publication means communication to some third person who understands the defamatory meaning of the statement and its application

Exhibit E

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

to the person to whom reference is made." Id. " Publication need not be to the 'public' at large; communication to a single individual is sufficient." Id. (quotation marks omitted) (citing Cunningham v. Simpson, 1 Cal. 3d 301, 306 (1969)).

"Under the 'common-interest privilege,' codified in California in Civil Code section 47, subdivision (c) . . . a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made 'without malice.'" Lundquist v. Reusser, 7 Cal. 4th 1193, 1279 (1994) (footnote omitted).

> [I]n enacting section 47(c), the Legislature intended to codify without change the common law common-interest privilege. At common law, that privilege embodied a two-step analysis, under which the defendant bore the initial burden of demonstrating that the allegedly defamatory communication was made upon a privileged occasion, and the plaintiff then bore the burden of proving that defendant had made the statement with malice.

Id. at 1208. "Courts have consistently interpreted section 47, subdivision (c) to apply in the employment context." Noel v. River Hills Wilsons, Inc., 113 Cal. App. 4th 1363, 1369 (2003) (citation omitted). Further, the plain text of § 47(c) makes clear that it "applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant."

As currently pleaded, Rodriguez's defamation claim concerns statements regarding "poor performance" made to a prospective employer. (FAC ¶ 93.) Section 47(c) clearly applies to his defamation claim. As he has failed to allege that the statements were made with malice, his claim is deficient. Rodriguez's defamation claim is dismissed without prejudice.

**H.    Class Claims**

Motions to dismiss class allegations are rarely granted. See, e.g. In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (explaining that "dismissal of class allegations at the pleading stage should be done rarely and . . . the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery") (citations and quotation marks omitted). The Ninth Circuit has explained that "[a]lthough a party seeking class certification is not always entitled to discovery on the class certification issue, the propriety of a class action cannot be determined in some cases without discovery [and] the better and more

**Exhibit E**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." <u>Vinole v. Countrywide Home Loans, Inc.</u>, 571 F.3d 935, 942 (9th Cir. 2009) (citations and quotation marks omitted). "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." <u>Id.</u> (citations and quotation marks omitted). ODFL's motion is premature and the Court declines to consider its substantive arguments at this time.

**I.      Injunctive Relief**

Former employees may not seek injunctive relief because they "would not stand to benefit from an injunction . . . at [their] former place of work." <u>Walsh v. Nev. Dep't of Human Res.</u>, 471 F.3d 1033, 1037 (9th Cir. 2006). Rodriguez is a former employee. (<u>See</u> FAC ¶ 3.) Rodriguez seeks "injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code § 17200 . . . ." (FAC Prayer ¶ 8.) His legal basis for injunctive relief is unclear, however, as he argues only that he "seeks injunctive relief only as is necessary to enforce the restitution, including, if necessary, the appointment of a receiver." (Pl.'s Opp'n 23.) He cites no cases or statutory support for the propriety of his injunction request and the scope or effect of his requested injunctive relief is entirely unclear from the FAC. The injunctive relief request is dismissed without prejudice.

**J.      Damage Claims**

Rodriguez seeks punitive damages for his wrongful termination, retaliation, IIED, and defamation claims. As noted above, his wrongful termination, retaliation, and IIED claims will not be dismissed. "California law long has recognized that discharges in violation of public policy may be actionable torts for which punitive damages can be recovered under Civil Code section 3294." <u>Commodore Home Sys., Inc. v. Super. Ct.</u>, 32 Cal. 3d 211, 220 (1982) (citations omitted). California Civil Code § 3294 provides "that punitive damages are available in all noncontractual civil actions unless otherwise limited." <u>Id.</u> at 217.

Rodriguez brings claims directly against his employer. (<u>See</u>, <u>e.g.</u>, FAC ¶¶ 68, 72, 75–76). An action for wrongful discharge in violation of public policy "can only be asserted against <em>an employer</em>." <u>Miklosy v. Regents of Univ. of Cal.</u>, 44 Cal. 4th 876, 900 (2008). A corporation such as ODFL "is a legal fiction that cannot act except through its employees or agents, a corporation and its employees generally function as a single legal unit and are the same legal person for purposes of applying various tort, agency, and jurisdiction principles." <u>Kight v. CashCall, Inc.</u>, 200 Cal. App. 4th 1377, 1392 (2011)

**Exhibit E**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

(citations omitted).  Civil Code § 3294(b) applies because it states that "[a]n employer shall not be liable" for punitive damages "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice."  As ODFL is a corporate employer, in order to maintain his punitive damage claims, Rodriguez must allege that the relevant "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  See Miklosy, 44 Cal. 4th at 900 ("An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which an employer commits that tort").  He fails to do so.  For example, he does not plead any facts about the knowledge or intentions of any "officer, director, or managing agent of" ODFL.

As Rodriguez's IIED and retaliation claims are brought directly against ODFL, they are also subject to the § 3294(b) limitation.  Rodriguez's punitive damage claims are dismissed without prejudice.

Rodriguez brings Labor Code §§ 201 and 203 claims for "actual, consequential, and incidental losses and damages."  ODFL properly points out that the statutory language of sections 201 and 203 provide only for the payment of wages due, § 201, and penalty wages, § 203.  There is no provision for "consequential, and incidental losses and damages."  Rodriguez's "consequential, and incidental losses and damages" claim is dismissed without prejudice.

**K.      Attorneys' Fees under California Code of Civil Procedure § 1021.5**

"Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees." Robinson v. City of Chowchilla, 202 Cal. App. 4th 382, 390 (2011) (citing Olson v. Auto. Club of S. Cal., 42 Cal. 4th 1142, 1147 (2008)).  "The purpose of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." Id. (citing Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 565 (2004)).  A court may award attorneys fees under § 1021.5 to:

> (1) a successful party in any action (2) that has resulted in the enforcement of an important right affecting the public interest if (3) a significant benefit has been conferred on the general public or a large class of persons, (4) private enforcement is necessary because no public entity or official pursued enforcement or litigation, (5) the financial burden of private enforcement is such as to make a fee award appropriate, and (6) in the interests of justice the

Exhibit E

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

fees should not be paid out of the recovery.

Id. (footnote omitted).  As the class allegations remain, it remains possible for Rodriguez to satisfy the second and third criteria above.  The attorneys' fees request will not be stricken.

## IV.   CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.  The FAC is dismissed with leave to amend consistent with this order.  An amended complaint must be filed and served no later than July 9, 2013.  Failure to file by that date will waive the right to do so.  The Court does not grant leave to add new defendants or new claims. Leave to add defendants or new claims must be sought by a separate, properly noticed motion.  Defendant's response will be due July 30, 2013.

IT IS SO ORDERED.

Exhibit E

Exhibit F

**E-FILED**

Sep 20, 2011 9:05 AM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-08-CV-103426 Filing #G-35133
By R. Walker, Deputy

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| BRIAN DRISCOLL, KENNETH GALLARDO, DONALD HOPF, CHRIS NOWAK and BRAD STORM, | Case No.: 1-08-CV-103426 |
| Plaintiffs, | **STATEMENT OF DECISION** |
| vs. | |
| GRANITE ROCK COMPANY, a California corporation, and DOES 1-50, inclusive, | |
| Defendants. | |
| JOHN MASON, and other similarly situated employees, | |
| Plaintiffs, | |
| vs. | |
| GRANITE ROCK COMPANY, and DOES 1-20, | |
| Defendants. | |

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

1

Exhibit F

Pursuant to Code of Civil Procedure § 632 and Rule 3.1590, California Rules of Court, the Court issues this final Statement of Decision after considering Plaintiffs' Request for Statement of Decision on Principal Controverted Issues ("Plaintiffs' Request") of September 6, 2011 and Defendant's Response and Proposed Statement of Decision of September 16, 2011.

## I.    PROCEDURAL BACKGROUND

Concrete ready-mix drivers Driscoll, Gallardo, Hopf, Nowak and Storm, none of whom work for Defendant at this time, filed this lawsuit on January 17, 2008.  Plaintiffs assert causes of action for: (1) missed meal compensation under Wage Order 1; (2) waiting time penalties under Labor Code § 203; (3) penalties for inaccurate paystubs based on Labor Code § 226(e); (4) the default penalty under PAGA, Labor Code § 2699(f); and, (5) restitution and injunctive relief under Business and Professions Code § 17200.  Plaintiffs represent a certified class of approximately 200 current and former ready-mix drivers.  The *Driscoll* action was consolidated with *Mason v. Graniterock*, Case No. CIV474411 (San Mateo County Superior Court).

Plaintiffs' principal claim is that Graniterock failed to provide off-duty meal periods and/or failed to pay Plaintiffs one additional hour of pay for duty-free meal periods.

This action was tried over approximately 14 days from June 20 through July 13, 2011, in Department 1 of the above entitled court, the Honorable James P. Kleinberg presiding without a jury.  During the trial 55 witnesses testified and 285 exhibits were admitted into evidence.  Harvey Sohnen, Esq., Patricia Kelly, Esq., Joe Clapp, Esq., Jason Rabinowitz, Esq. and Susan Garea, Esq. appeared for Plaintiffs.  Alan Levins, Esq., Laura Hayward, Esq. and Alison Hightower, Esq. appeared for Defendant.

Having heard and observed the testimony of witnesses, considered the documentary evidence presented, having reviewed the written submissions of the parties, having considered the argument of counsel, and being fully advised, the Court finds and rules as follows:

//

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

2

## II.   FACTUAL BACKGROUND AND THE NATURE OF THE BUSINESS

Graniterock operated the first concrete ready-mix plant in California.  (RT 1324:5-14)  Eighty percent of Graniterock's non-management, non-office employees are unionized.  (RT 1327:24-27)  Graniterock currently has five branches; an additional two branches closed during the class period due to the economy.  (RT 1328:4-1329:25)  Each branch is staffed by concrete mixer drivers who deliver concrete to Graniterock's customers and by dispatchers who schedule the drivers and coordinate the deliveries of individual loads to customers.  Drivers do not have a regular schedule.  (RT 174:11-15; 303:27-304:8)  When a driver arrives at work, he does not know how long his day will last, and unless he has communicated to his dispatcher that he would like an off-duty meal that day, he does not know whether he will be asked to work through his meal.  When drivers are directed to work through their meal periods, they are subject to the dispatcher's direction and control throughout the thirty minute period.  They are paid a premium wage for this time at a rate determined by collective bargaining agreements or company policy, depending on the branch and date involved.  Graniterock has used form On-Duty Meal Period Agreements ("ODMPAs") since the end of 2000.

The physical properties of concrete dictate Graniterock's business.  Concrete is a mixture of rock, sand and cement.  Adding water to the mixture causes a chemical reaction that hardens it.  For this reason, the mixer truck drum must rotate when it contains concrete or concrete residue.  The truck must be turned on and monitored when the drum rotates.  (RT 1336:10-25; Exh. 532)

The parties stipulated that concrete is a perishable product that cannot be stored.  Furthermore, if more than one load of concrete is being poured in the same form or structure, subsequent loads must be poured in a continuous fashion to avoid cold joints, or areas where concrete does not bond, creating a weakness in the structure.  (RT 220:13-26; 532:20-533:3; Exh. 562)  Freshly batched concrete generally must be poured within 90 minutes of batching, as required by CalTrans and by customers based upon industry practice and American Concrete

Institute (ACI) or American Society of Testing and Materials (ASTM) specifications. (Exh. 562)  Projects such as schools and hospitals may require concrete to be poured within 60 minutes. (RT 1332:14-27)  If it is later determined that there is a defect that can be traced to pouring expired concrete, the concrete may have to be removed, which is often 120 times as expensive as initially pouring the concrete, and customers will seek to recover these "back charges" from the concrete supplier. (RT 7/7 114:25-115:20)

Plaintiffs are all former employees of Graniterock.  No current employees testified during Plaintiffs' case.

## II.    DISCUSSION

This case is the reverse of the more familiar pattern where the plaintiff focuses on facts and defendant relies on the law.  Here, relying principally on statutes and regulations, Plaintiffs have essentially argued that California law (at least to their principal claim) is self-evident to the degree that Defendant had two choices: either grant the subject employees a meal break or pay the penalty proscribed by law.

Plaintiffs' counsel stated their position as follows in closing argument: "Now the facts in this case are relatively undisputed.  There are a few little facts along the margin.  But by and large, we know what this case is about.  The major dispute is a legal dispute not a factual dispute. ..." Tr. 1578 at 16-19.

Plaintiffs have taken the position that Judge Joseph Huber's April 23, 2010 ruling granting Plaintiffs' motion for summary adjudication as to Defendant's First Affirmative Defense leaves Defendant without much, if anything, left to say.  That ruling is not as significant as it first appears, as discussed below.

### A.    Graniterock's On-Duty Meal Period Agreement

California law recognizes that there are circumstances, and industries, where an employee will be precluded from being relieved of all duty during his meal period. Since 2001,

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

4

Exhibit F

Wage Order 1 has authorized employees to work an "on duty" meal period "when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." Wage Order 1-2001 § 11(C). The written agreement must state that the employee may, in writing, revoke the agreement at any time. *Id.*

Graniterock's "on-duty meal period agreement" ("ODMPA") states: "I understand that I may revoke this Waiver Agreement at any time by providing at least one (1) working day's advance written notice to my Manager of my decision." (e.g. Exh. 273). When Defendant's President and CEO Bruce Woolpert and Human Resources Director Shirley Ow drafted the ODMPA in anticipation of January 2001 changes to the Wage Order, they included the Wage Order language that the ODMPA could be revoked at "any time" but observed that the Wage Order was silent on how quickly an employer needed to act after receiving the revocation. Graniterock has argued, and continues to advance the proposition that one day was the shortest reasonable notice to process revocation and provide the required meal period. That provision resulted in a court decision that remains actively debated in this case.

**B.      The Court's April 23, 2010 Order**

Judge Huber's April 23, 2010 Order (the "April 23 Order") held that the "one day notice" revocation provision did not comply with the Wage Order and granted Plaintiffs summary adjudication of the First Affirmative Defense asserted by Graniterock.

That Order reads as follows, in pertinent part:

"Defendant's 1st Affirmative Defense states: "The nature of Plaintiffs' work frequently prevented them for being relieved of all duty for a thirty minute meal period and Plaintiffs were signed to *valid, written on-duty meal period agreements."* (emphasis supplied).  Even if it is assumed for purposes of argument that the "nature of the work" performed by ready-mix drivers does not readily allow for off duty meal periods Plaintiffs' motion may go forward based on their assertion that Defendant cannot possibly satisfy a required element for a valid

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

5

ODMPA; that it expressly allow the employee to revoke it "at any time" provided it is done in writing.  It is undisputed that the three versions of ODMPAs entered into by Defendant and its driver employees (exemplars of which are included in Defendant's verified responses to requests for admissions presented by Plaintiff) each required one working day's notice before the employee's request to revoke the ODMPA would become effective.

"Plaintiffs' initial burden is met here simply by their presenting and comparing the language of Wage Order 1, sec. 11(C) with the language in each of the three versions of Defendant's ODMPAs requiring one working day's advance written notice before drivers could revoke their concessions to the employer and have off-duty meal periods again.  Wage Order 1, sec. 11(C) states, referring to ODMPAs, that "The written agreement shall state that the employee may, in writing, revoke the agreement at any time."  This language is not ambiguous, nor is giving it a logical common-sense interpretation an "absurd" result as Defendant argues. The Order is issued under the authority of remedial statutes meant to be construed broadly to promote the worker protections provided.  A required delay of one business day before a driver may revoke their ODMPA is simply not compatible with the Wage Order's clear requirement that an employee must be able to revoke it in writing "at any time."

"When the burden shifts to Defendant it is unable to raise any triable issues of material fact as to whether its ODMPA language fully complies with Wage Order No. 1 (or 9) and can therefore serve as an affirmative defense.  Neither Defendant nor any other employer is the judge of what is the shortest reasonable notice period, the Legislature is, and to date it has declined to allow a one working day's delay on an employee's ability to cancel their ODMPA "at any time" anywhere but in the health care industry.  Wage Order 4 establishes that the Legislature knew how to select a one working day waiting period before an employee could revoke an ODMPA when it chose to.  The language of Wage Order 1 (and 9) establishes that it has chosen not to do so outside of the health care industry.  The most logical interpretation of "at any time" is the same day, not after one working day. A driver who presents his employer with a written revocation of his ODMPA must be allowed an off-duty meal period that same

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

6

Exhibit F

day. This is not an absurd result and whether this is inconvenient to Defendant is simply irrelevant[1]."

Indeed, Plaintiffs have gone further. The Court posed this question to Plaintiffs' counsel at closing argument:

> THE COURT: When you say they are invalid on their face, you are basing that on the order that was signed by this Court in April of 2010; correct?
>
> MR. CLAPP: That is correct.
>
> THE COURT: And if the on-duty meal period agreement had not said that Graniterock was to have 24 hours advanced notice, if it had said -- if it had said immediately, or upon request, or something like that, would we -- would you even have a case?
>
> MR. CLAPP: Yes, your Honor.
>
> THE COURT: How would you have a case if that were so?
>
> MR. CLAPP: Because we would be in here trying to persuade you that the

---

[1] Defendant did not move for reconsideration of this order, choosing instead to seek a writ from the District Court of Appeal. The Court of Appeal did not grant the writ. Nevertheless, because of the importance of this affirmative defense, this Court examined whether the prior ruling could be appropriately modified or severed in some fashion. The doctrine of law of the case provides that where an *appellate court* states in its opinion a principle of law necessary to its decision, the principle becomes the law of the case for later proceedings. (*Bovard v. American Horse Enterprises, Inc., et al.* (1988) 201 Cal.App.3d 832, 841.) Law of the case "deals with the effect of the first appellate decision on the subsequent retrial or appeal." (9 Witkin, *Cal. Proc.* 5th (2008) Appeal, §§ 459, 460.

California courts in general adhere to the belief that judges should not revisit interlocutory orders ruled on by a previous judge. *People v. Riva* (2003) 112 Cal.App.4th 981, 991.) In *Metropolitan Water Dist. Of Southern California v. Campus Crusade for Christ, Inc.* (2005) 37 Cal.Rptr.3d 598, the Fourth Appellate District ruled that based on "fundamental principles of judicial comity, efficiency, and the rule of law" a superior court judge could not overturn rulings on motions in limine made by a previous judge on the same case. (*Id.* At p. 609.) The Second Appellate District came to a similar conclusion in a criminal case in which a judge increased the bail for a criminal defendant awaiting trial because he believed that the first judge did not comply with statutory requirements. (*In re Alberto* (2002) 102 Cal.App.4th 421.) The court said that the power of one judge to vacate an order made by another judge is limited due to policy considerations: "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court." (*Id.* At p. 427.) cf. *Lacey v. Betrone* (1952) 109 Cal.App.2d 107

The rule against vacating an interlocutory ruling by a previous judge is especially strong when concerning motions that have been fully litigated through written motions and noticed hearings. *Green v. State Farm Fire & Casualty Co.* (1990) 224 Cal.App.3d 1583, 1589. The summary adjudication order fits into this category, as it was fully briefed and included a full hearing.

Defendant did not ask this Court to overturn the April 23 Order. In any event, the Court declines to do so *sua sponte* under the circumstances and principles presented.

---

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

7

1   nature of the work did not prevent these drivers from taking meal periods.

2   THE COURT:  Are you saying the Court should determine how to run this

3   business?

4   MR. CLAPP:  No, we are not.  Not even slightly, your Honor.  They have

5   basically two options here.  What they can do is one of two things.  If they believe

6   the nature of the work prevents them from running it through the meal periods, they

7   can either get a valid on-duty meal period, which for some reason they don't want to

8   do; or, as I mentioned, they can pay the additional hour of pay, your Honor.

9   Significantly, the parties stipulated that the one-day notice language did not deter

10  any driver from revoking his or her ODMPA. (RT 1129:10-12; Exh 563) That

11  stipulation provides, in part:

12  "(3) The one-day revocation provision in the ODMPA has nothing to do with the

13  [driver's] decision not to revoke the ODMPA;"

14

15  Thus, the sole impact of the "one-day notice" revocation provision was at most a one-

16  day delay in providing an off-duty meal period *to those drivers who revoked their ODMPA.*

17  However, damages by drivers who did not revoke, and damages for any driver in excess of one

18  day's meal period compensation, are not legally tenable.  *Starbucks Corp. v. Superior Court,*

19  168 Cal.App.4th 1436 (2008).

20  Graniterock contends that even if it provided on-duty meal periods that contravened the

21  Wage Order, nevertheless it simultaneously provided off-duty meal periods that did comply

22  with the Wage Order.  Graniterock argues that it provided these off-duty meal periods in two

23  ways:  First, by informing drivers that they were not required to enter into the On-Duty Meal

24  Period Agreements (or could revoke them if they had already entered into the Agreements); and

25  second, by informing drivers that they could simply ask the dispatchers to take off-duty meal

26  periods.  Graniterock argues that it was the drivers themselves who chose to waive their right to

27  take off-duty meal periods.

28  Plaintiffs bear the burden of proving that Graniterock did not provide meal periods and

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

8

the evidence does not support Plaintiffs' position on the issue of missed meal compensation. The Court finds that Graniterock did not require, expect or train its drivers to involuntarily sign an ODMPA or to work through lunch; Graniterock had a legally compliant meal period policy published in its handbook and the drivers made their decisions voluntarily. The Court further finds that during the class period, Graniterock informed drivers that they could ask dispatchers for off-duty meal periods and the dispatchers acceded to these requests. The drivers thus each determined on a daily basis whether they wanted an off-duty meal period. The evidence showed that those few drivers who refused to sign ODMPAs were given off duty meal periods or they received a "Code 38" payment that equaled one hour of pay. (RT 446:26-447:7; 1076:16-23; Exh. 242) It is undisputed that only three Graniterock drivers revoked their ODMPA and that each of those drivers received an off-duty meal period on the very next occasion possible. (RT 506:5-7,19-27; Exh. 419,426; RT 7/11 1493:17-1494:17 (Crews); RT 506:8-10, 507:6-11 Exhs. 422, 427; RT 7/111493:17-1494:17 (Marketello); RT 377:1-16 (Nelson)). Thus, Plaintiffs offered no evidence that any delay or damage occurred. While Mr. Nelson testified that he had revoked the agreement 24 hours beforehand because of the one-day's notice provision (RT 7/11 1536:18-21), the Court does not give weight to this self-serving, after-the-fact testimony because Mr. Nelson was inconsistent with respect to compliance with the terms of the ODMPA. He also claimed that he was "retaliated against" *by being given off-duty meals* after he revoked his waiver. (RT 7/11 1537:6-25) His bias, moreover, was evident. (RT 7/11 1538:19-1541:8; Exh. 571.)

Defendant has argued that, without exception, the employees didn't want what Plaintiffs claim the law provided, but rather preferred to "work through lunch" and leave early. The Court finds this argument supported by the vast weight of the evidence.

## C.   *Brinker* and *Lamps Plus*

The question of whether an employer must *mandate* that rest and meal breaks are taken is currently unsettled (see *Brinker Restaurant Corp. v. Superior Court* (2008) 165 Cal.App.4[th]

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

9

Exhibit F

25 [de-published pending review, *Brinker Restaurant Corporation v. S.C. (Hohmbaum)* (2008) 196 P.3d 216] and *Lamps Plus Overtime Cases* (2011) 195 Cal.App.4th 389 [de-published pending review, *In re Lamps Plus Overtime Cases*, 2011 Cal. LEXIS 7468])

While cognizant of the appeals pending before the Supreme Court, in ruling on *motions in limine* this Court determined that the word "provide" as used in Wage Order 1 and California Labor Code Sections 226.7 and 512 means to make meal periods "available," to not "frustrate or prevent" taking of meal periods. It does not mean the employer must "ensure" that meal periods are actually taken. *Lamps Plus Overtime Cases*, 195 Cal.App.4th 389, 402 (2011), *review granted*. This Court reaches the same conclusion based on the weight of authorities to date.

This interpretation is consistent with the state Supreme Court decision in *Murphy v. Kenneth Cole Productions*, 40 Cal.4th 1094, 1104 (2007), where the Court described the one hour's wage to be owed to "an employee *forced to forego* his or her meal period" because that employee "has been deprived of the right to be free of the employer's control during the meal period[,]"(emphasis added) not when employees are simply "permitted" to work through a meal. Many federal courts that have squarely considered the meaning of the same statutory and regulatory provisions have concluded that "an employer [must] *offer* meal breaks, without forcing employers actively to ensure that workers are taking these breaks." In *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1088 (N.D. Cal. 2007), the court held that "the employee must show that he was *forced to forego* his meal breaks as opposed to merely showing that he did not take them..." *Id.* The court noted that if the employer had to ensure that each employee actually took a 30 minute meal break "employees would be able to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes," and the court declined to find a rule that "would create such perverse and incoherent incentives." *Id.* at 1089.

In *Brown v. Federal Express Corp.* 249 F.R.D. 580, 584-85 (C.D. Cal. 2008), the court likewise interpreted "provide," noting that "[r]equiring enforcement of meal breaks would

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

10

Exhibit F

1   place an undue burden on employers whose employees are numerous or who, as with Plaintiffs,

2   do not appear to remain in contact with the employer during the day." The court in *Marlo v.*

3   *United Parcel Service, Inc.*, 2009 U.S. Dist. Lexis 41948 at *27 (C.D. Cal. May 5, 2009)

4   characterized this interpretation as "the most natural reading of the statute's language."

5       The Court finds *Cicairos v. Summit Logistics*, 133 Cal.App.4th 949 (2005), cited by

6   Plaintiffs to be distinguishable, since in that case the employer interfered with employees' right

7   to take meal periods.

8       Plaintiffs contend that the "provide" standard requires that the employer affirmatively

9   schedule a meal period to distinguish from its duty to simply "authorize and permit" rest

10  periods. However, there is no requirement that an employer affirmatively schedule meal

11  breaks, as the court held in *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008).

12  Further, in *Kenny* the court opined that even under the scenario where an employee might

13  choose to work through meals to earn more tips or to avoid keeping a valued customer waiting,

14  meals could still be "provided" if employees were not forced or pressured to forego them. In

15  any event, Plaintiffs' interpretation could not apply at Graniterock where <u>nothing</u> during the

16  day is scheduled other than the first load.

17      Further, Plaintiffs' assertion that an employee must be relieved from all control during

18  an off-duty meal period (citing *Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000)) is off the

19  mark. Whether an employee was *provided the opportunity* to take an off-duty meal in which

20  the employer relinquishes all control is a separate issue from whether an employee who decided

21  to work during his meal period and/or was under the employer's control was paid for that time.

22  Graniterock is only required to relieve from its control *those drivers who elected to take an off-*

23  *duty meal period.* The Court rejects Plaintiffs' assertion that the correct legal standard is that

24  the employer must guarantee or ensure that an employee takes a 30 minute off-duty meal

25  period or the employer has "engaged, suffered or permitted" an employee to work. In any

26  event, the Court finds that the drivers who took on-duty meal periods did so voluntarily and

27  without any compulsion, coercion or interference by Graniterock.

28

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

11

Exhibit F

### D.   Defendant's Compliance with the Law and "Code 38" Pay

Graniterock's written meal period policies (which are contained within its Employee Handbook) notified all drivers that they are entitled to a 30 minute off-duty meal period. (Exhs. 205-208)  Under this policy, drivers are free from Graniterock's control during their 30 minute off-duty meal.  (RT 370:11-25)  Many drivers acknowledged having received and reviewed this policy.  (RT 1004:13-22; 1023:16-26; 1064:17-22)  In addition, since 2000, Graniterock posted the Wage Order and mandatory state and federal postings at each branch advising employees of their right to an off-duty meal period. (RT 1311:4-21; Exhs. 550, 552)

In December 2000, anticipating the January 2001 changes to the Wage Order, Ms. Ow and Mr. Woolpert drafted a letter to Graniterock employees outlining California law and advising drivers that they had a right to an off-duty meal period, but that if they wished to, they could sign an ODMPA to indicate that they chose to work through their meals.  The drivers received premium pay of double time or time and a half plus an additional 15 minutes added to their time cards at regular or overtime rates for working through lunch pursuant to collective bargaining agreements and/or Company policy. (RT 455:21-456:21; Exhs. 516-520) The letter advised drivers that if they did not sign an ODMPA and were asked to work through a meal they would get one hour of pay in addition to applicable premium pay. (RT 495:26-496: 12; Jt. Exh. 9)

It is undisputed that most, if not all, of the drivers signed these ODMPAs, and only three ever revoked.  Regardless of the validity of the one day's notice provision in the ODMPA, the ODMPA served as a statement of the employee's preference.  Plaintiffs failed to prove that the drivers were forced, expected, or trained to involuntarily sign ODMPAs or to miss off-duty meal periods against their will.  Moreover, numerous drivers testified that despite signing an ODMPA, they understood that they could get a meal at any time without revoking their ODMPA. For instance, Bruce Nicholson understood he could ask for an off-duty meal at any time because it was in the Handbook and "it was told to us." (RT 902:4-10)  Kelly Sones knew she could ask for time off without revoking her ODMPA.  (RT 919:12-15)  Brian

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

12

Sheridan testified that "anytime we want lunch all we have to do is ask for it." (RT 938:10-14) Richard Walrod knew he could have asked for lunch off on the same day, but chose not to. (RT 1145:22-1146:17)

Plaintiffs offered no evidence that any driver who requested a meal period was denied one. Some requested meals by revoking or not signing an ODMPA. (RT 1075:2-1076:15; 1083:10 – 1084:8, Exh. 419; 1085:15-27; 1086:19-26) Notably, Graniterock paid an extra hour of regular pay, referred to as "Code 38 pay," to drivers who did not sign an ODMPA and who were not relieved from its control for a 30 minute off-duty meal period. (RT 446:26-447:7; 1076:16-23; Exh. 242) Others asked for meals without revoking their ODMPA and were given them even when they made the request the same day. Dispatcher (and class member) Dave Fontes reported that if someone asks for an off-duty meal, he does "whatever it takes" to give that meal period. (RT 417:10-17) Dispatcher Terri Galvin bent over backwards to accommodate her drivers' personal requests for time off. (RT 400:4-11) Driver Jerry Pineda, who asked for unpaid lunch for appointments, or to pick up his kids, after which he would return to work, stated "[the dispatchers] always worked with my schedule, because they know I'm a single parent." (RT 981:6-24) Marc Fanning received an off-duty meal to take care of personal business when he requested it that same morning. (RT 971:12-972:2) Brian Sheridan (RT 938:15-939:4) and Pete Diaz had the same experience. (RT 1134:14-20) Graniterock affirmatively informed drivers that they could take off-duty meal periods if they wished. (Exhs. 205-208; RT 1311:4-21; Exhs. 550, 552) Plaintiffs offered no evidence to prove that drivers were unaware of their ability to obtain off-duty meal periods. Therefore, the weight of the evidence established that drivers were aware of the availability of off-duty meal periods and exercised the ability to take off-duty meal period regardless of whether an ODMPA was signed or on file. (E.g. RT 919:12-15; 938:10-14)

However, the vast majority of drivers—including Plaintiffs—voluntarily chose to eat on the job—not because they were forced or even pressured to do so, but because they wanted to. It is undisputed (and was stipulated to) that there was ample down time during the drivers' days

Driscoll, et al. v. Granite Rock Company
Santa Clara County Superior Court, Case No. 1-08-CV-103426
Statement of Decision

13

Exhibit F

during which they had time to eat while at the plant or a customer site. (Exh 563) It is significant that none of the named Plaintiffs/Class representatives testified that he wanted off-duty meal periods. Plaintiffs' rebuttal witness, Tom Nelson, testified that he asked for off-duty meals, but when he received them, he felt that this was a form of retaliation. (RT 7/11 1537:16-23) That testimony did not ring true. Every single current employee has signed an ODMPA indicating his/her preference to work through meals. (RT 487:18-22)

Drivers preferred to eat on-duty in order to get home earlier, to receive a premium for working through lunch, and/or because they did not wish to sit around "twiddling their thumbs" off-the-clock. Ryan Fontes would rather get paid to work through lunch and go home and enjoy his family. (RT 343:25-344:17) Bruce Nicholson wanted to get off early to coach basketball. (RT 904:17-905:5) Brian Sheridan worked through lunch because "who wouldn't want to" get paid extra premium and get home early. (RT 936:22-25; *see also* Kelly Sones (RT 917:26-918:5), Mark Fanning (RT 969:24-970:3), Jerry Pineda and Fred Eisenstadt (RT 980:3-5; 991:10-21).

Drivers complained to their dispatchers about having to take off-duty meals and asked to be given other work instead. Former dispatcher Patty Carter testified that drivers saw being asked to take meal periods as "punishment" and told her they preferred to continue working. (RT 313:18-314:2) Ed Yancey testified that drivers pled with him to go home, to help the batch man, "help Glen in the shop," to shovel debris, or do anything rather than take an off-duty meal. (RT 379:12-26) When Terri Galvin tells her drivers to take off-duty meals "they get angry with [her]." (RT 398:19-26) David Fontes' drivers denote "no lunch" on their timecards with a happy face. (RT 413:11-13)

Drivers opted to work through lunch even knowing that they were agreeing not to get the one hour's pay. (*E.g.* Nicholson (RT 912:4-7); Fanning (RT 973:12-18); Pineda (RT 982:18-983:4); Rodriguez (RT 1005:2-5).) This is because the drivers knew that if they did revoke, they would get more off-duty unpaid meals, which they did not want. *E.g.*, Tom Regan believed that if he revoked, the dispatcher would "probably break me for lunch every day."

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

14

Exhibit F

(RT 1024:25-1025:4)  Others shared this sentiment.  (*E.g.* Sones (RT 918:22-25); Sheridan (RT 940:15-21); Amparan (RT 1063:20-26).)   Thus, while Graniterock dispatchers did direct drivers as to which customer sites they needed to deliver concrete to and when, drivers elected whether or not they wanted to take an off-duty meal by notifying the dispatcher.  The evidence showed that the drivers' requests for an off-duty meal period were granted.  Plaintiffs failed to show that Code 38 pay was not given in the event such requests could not be granted.  The practice of other companies is not persuasive as to whether Graniterock had any legal obligation under the Labor Code to pay its drivers who chose to forego off-duty meal periods.

It is particularly probative that no employee has ever complained or filed a grievance regarding meal periods.  Nor has the Union filed any such grievance.  (RT 486:24-487:17)  Graniterock reasonably relied on this conduct by the drivers and Union representatives—as well as the written agreements they signed and chose not to revoke—as evidencing the drivers' stated desire to not take off-duty meal periods whenever possible.  Evid. Code § 623.

In summary on this issue, the Court finds that Plaintiffs have not proven that Graniterock forced any driver to forego an off-duty meal period.  Graniterock has affirmatively notified its employees that they are entitled to a 30 minute off-duty meal period free from its control through its policies, postings and communications.  Graniterock did nothing to interfere with drivers' ability to take an off-duty meal period.  Rather, drivers did not take off-duty meal periods because they did not want them.  No one went hungry – they ate during their downtime.  While the dispatchers did not ask each employee every day whether s/he wanted an off-duty meal period, every driver stated that if asked s/he would say s/he did not want one.  The law does not require that the dispatchers ask each day because that would be an exercise in futility.  Even if the Court were to adopt the "suffer or permit" legal standard that Plaintiffs advocate, it would still find that Graniterock exercised at least reasonable care to see that its employees received off-duty meal periods.  Plaintiffs therefore have not met their burden of proof and judgment on their First and Fifth Causes of Action must be entered for Graniterock.  Since all

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

15

of the remaining causes of action are dependent upon Plaintiffs proving that meal periods were not provided, judgment for Graniterock on these causes of action shall be entered as well.

### E.    Plaintiffs' Damages Claims

Beyond the merits of their liability claims, Plaintiffs have the burden of proving as an essential element of their case that they suffered damage and the amount of the monies they seek under Section 17200. *Carpenter Foundation v. Oakes*, 26 Cal.App.3d 784, 799 (1972); Evid. Code § 500. Plaintiffs rely on the testimony of Dr. Levine to establish a violation rate, and upon Dr. Drogin to calculate damages and penalties based on that violation rate. The Court finds this testimony unreliable and unpersuasive.

To qualify to testify as an expert witness, a person must have "special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." Evid. Code § 720(a). It does not follow, and the Court is unaware of any authority, that permitting a witness to testify in an expert capacity because of their credentials compels the Court to credit their testimony. Dr. Levine was not shown to be an expert in coding techniques and the mistakes he made in his coding process and his failure to use an appropriate scientific method establish that he is not so qualified. (RT 7/7 14:10-19:20) The Court accordingly does not find Dr. Levine to be qualified as an expert to render the proffered opinions seeking to establish a "violation rate" for Graniterock's concrete-mixer drivers.

Even if Dr. Levine were qualified, his conclusions as to a violation rate, or which drivers were not provided meal periods on given days, are speculative, lack foundation, and are unreliable. An expert witness "does not possess a *carte blanche* to express any opinion within the area of expertise." *Jennings v. Palomar Pomerado Health Systems, Inc.*, 114 Cal.App.4th 1108, 1117 (2003) (striking expert testimony on causation); Evid. C. § 801. Dr. Levine did not use accepted scientific techniques to ensure that his analysis was reliable. For instance, Dr. Levine failed to ensure that the population from which the sample was drawn was correct, and thus included a timecard of driver Brad Tarp that was outside the correct population (because it was from a date before the relevant time period), which was extrapolated to hundreds of cards.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

16

Exhibit F

RT 7/7 14:3-15:7)  Dr. Levine failed to ensure that the population he analyzed included all of the timecards.  (*Id.*)  Only after Graniterock noted these mistakes did Dr. Levine fix them.  (RT 7/7 14:10-19)  Dr. Levine did not take measures to ensure that all mistakes were found and corrected. (RT 7/7 16:8-18:22)

Dr. Levine did not use a consistent set of coding rules that could be independently verified—he offered no written rules and Defendant's expert, Dr. Levy, was unable to replicate his analysis.  (RT 7/7 RT 18:23-27)  Dr. Levine failed to conduct any validation process to ensure that his coding reflected reality.  (RT 7/7 16:8-18:22)  The fact that a timecard from one Mr. McElroy was erroneously assumed to be a "no lunch" when he had the day off with pay, highlights that Dr. Levine's process made unsupported assumptions.  (RT 625:13-626:9)  Even Dr. Levine admitted at trial that he was not sure "it [was] the wise thing to do" to have re-coded McElroy's timecard, because by so doing, "there is inconsistency" in following his own coding rules.  (RT 625:24-626:15)  Dr. Levine testified that he relied on plaintiffs' counsel, Mr. Clapp, to tell him how to code the cards.  (RT 605:26-607:7)  While an expert may rely on hearsay, "it should be considered an improper matter unless the elements of necessity and indications of reliability are present" and without them "a finding against reasonable reliance by an expert is justified."  *Korsak v. Atlas Hotels, Inc.*, 2 Cal.App.4th 1516, 1524 (1992).  Dr. Levine's reliance on unspecified hearsay is not a reliable method of obtaining information, particularly where no evidence was admitted to evaluate what information plaintiffs' counsel imparted or how he obtained it. Dr. Levine never established that his method of coding the timecards accurately reflected the experiences of the class, since Dr. Levine relied on what Plaintiffs' counsel told him rather than on any direct evidence of how the drivers completed their timecards or how Graniterock interpreted the time cards.  Dr. Levine could not cure these deficiencies by reducing the violations based on Graniterock's criticisms of his specific coding decisions because the entire process utilized by him was so unreliable as to be of insufficient probative value.

In summary, even if the Court were to admit Dr. Levine as a qualified expert and

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

17

conclude that Graniterock failed to "provide" the class meal periods, the Court concludes that the reliability of Dr. Levine's opinions and conclusions as to who missed meal periods is sufficiently in doubt that they are not persuasive. Plaintiffs thus failed to prove the number of missed meal periods for the class (or the "violation rate").

### F.    Dr. Drogin's Analysis

Plaintiffs' damages expert, Dr. Drogin, in turn relied on Dr. Levine's suspect coding which he assumed was done perfectly. (RT 686:19-24; 1520:24-28; Pltfs. Ex. 9) While expert opinion testimony may be premised on material that is not itself admitted into evidence, the material that forms the basis for an expert's opinion testimony must be reliable. *Korsak*, 2 Cal.App.4th at 1524; Evid. Code § 801(b). As our Supreme Court noted, "an expert's opinion which rests on assumptions of fact without evidentiary support or on speculative or conjectural factors has no evidentiary value . . . and may be excluded from evidence." *Lockheed Martin Corp. v. Superior Court*, 29 Cal.4th 1096, 1110 (2003)(citations omitted). This Court therefore does not rely upon either Dr. Drogin's calculation of a violation rate, or the damages calculated based on those violation rates, because they lack foundation, being based entirely on Dr. Levine's unreliable analysis.

Even assuming Dr. Drogin could rely on Dr. Levine's analysis, his damages calculations remain unpersuasive. For example, Dr. Drogin does not provide the true margin of error—only the margin of error based on the assumption that the coding was done perfectly. The real margin of error could be higher than 10%, which is too high to be reliable based on *Bell v. Farmers Insurance Co.*, 115 Cal.App.4th 715 (2004), noted by Dr. Drogin as supporting a 10% margin. Further, *Bell v. Farmers* is distinguishable based on its unusual facts. In that case, both experts agreed on a method to calculate unpaid overtime and on the average or mean amount of overtime worked. *Id.* at 753. This average overtime was based on deposition testimony of 295 persons—not an expert's interpretation of time records. Most importantly, the court in *Bell* considered only whether the trial court abused its discretion in adopting its trial

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

18

management plan and whether the use of statistical inference violated due process. *Id.* at 747.
The court found that Farmers had waived its objections to the procedure and to the "one hour"
of overtime margin of error used by Dr. Drogin. *Id.* at 755. By contrast, Graniterock objected
to the qualifications of Dr. Levine and to the admission of the opinions of both Dr. Levine and
Dr. Drogin, including their methodology and margin of error. (RT 650:15-651:9; 672:7-673:9;
675:21-28; 679:26-680:4; 681:21-27; 685:12-17)

Moreover, the Court finds Dr. Drogin's attempted projection of damages for the time
period after March 31, 2011, (Pltfs. Exh. 8) speculative and unreliable, even if Dr. Levine's
coding was assumed to be entirely accurate. Dr. Drogin ignored his own data that showed that
violation rates dropped from 89% to 81% over time, and instead assumed that the violation rate
stayed the same in 2010 and 2011, including during the time period after March 31, 2011, for
which Dr. Drogin and Dr. Levine had no data. (RT 7/7 37:2-38:12) Dr. Drogin did not dispute
that his small sample size means that the range of damages calculated is extremely broad. His
calculated margin of error—without considering the error rate in coding the timecards—is plus
or minus 14.84%, or roughly 30% of the claimed projected damages for this time period. (RT
7/7 38:17-39:10)

Damages must be proven with a reasonable certainty. "Damages which are uncertain,
contingent, or speculative cannot be recovered." *American Poultry Feeder Co. v. Wedel*, 213
Cal.App.2d 509 (1963) (reversing damages award). Plaintiffs failed to establish that the
timecards showed when (if ever) members of the class were not "provided" meal periods as
that term is defined above (that being times when class members were frustrated or prevented
from taking off-duty meal periods). Plaintiffs consequently failed to prove the number of times
(if any) Graniterock drivers were not provided 30 minute uninterrupted off-duty meal periods
when employed for more than six hours in a day, or the number of times that Graniterock did
not pay one hour's pay in such instances. As a result, Plaintiffs did not meet their burden of
proving ascertainable damages or the entitlement to restitution with a reasonable certainty, an
essential element of their First and Fifth Causes of Action. Since the Court has not found that

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

19

Plaintiffs proved damages, the Court need not discuss the amount of offset that might be appropriate based on the premium pay that Graniterock proved that it paid the drivers.[2] Judgment for Graniterock shall be entered on these causes of action and the remaining penalty causes of action which are dependent thereon and discussed below.

## G.    Penalty Causes of Action

Plaintiffs seek waiting time penalties under Labor Code § 203. Since Plaintiffs have not met their burden to prove that meals were not provided, to establish a violation rate or to demonstrate with reasonable certainty the amount of damages that should flow from any failure to provide meal periods, the Court finds that Plaintiffs are not entitled to these penalties. Moreover, these penalties are not assessed when the parties have a good faith dispute regarding whether meal periods were "provided" to drivers. Graniterock has shown that its CEO had a good faith belief that the nature of the work justified on-duty meal periods and that its meal period agreement was valid, relying upon the result of an action brought by the concrete mixing trade association in 2005 that such ODMPAs were appropriate for the industry. (RT 497:18-498:28, 1322:13-1323:5; Exh. 562)[3] The Court finds no credible evidence of pressure to sign ODMPAs. Even though the form of the ODMPA was not revised, Graniterock never enforced the one day revocation period, including after the April 23, 2010 Order, and even if Plaintiffs could claim that it did, only three drivers revoked and they were offered meal periods promptly. The fact that Graniterock had a process to pay "Code 38" pay and in fact did pay the one hour's wage (Ex. 242) to drivers who did not sign ODMPAs or revoked and were directed to work through lunch demonstrates its good faith attempt to comply with the law.

---

[2] However, the Court observes that an offset would be legally available to Graniterock if damages had been proven, and further notes that the testimony of Dr. Levy computing the amount of offset was undisputed.

[3] The Court is concerned that Mr. Woolpert continued at trial to contend the "one-day's" notice in Defendant's ODMPA was legitimate. A refusal of Defendant to abide by the Court's decision is a separate issue which may serve as the basis for further proceedings.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

20

Exhibit F

1    Plaintiffs contend that Graniterock's interpretation of its ODMPA was not reasonable,

2  relying on the April 23, 2010 order.  Plaintiffs cite no authority that previously so held, and

3  thus the dispute between the parties was in good faith.  As the court held in *Amaral v. Cintas*,

4  163 Cal.App.4th 1157, 1209 (2008), the fact that the defense ultimately proves unsuccessful

5  does not mean the dispute was not in good faith.  *Id.* at 1202.  While Plaintiffs contend that

6  after Judge Huber's ruling Graniterock could not have had any good faith dispute, the evidence

7  shows that Defendant did not enforce the "one day's written notice" after the April 23 Order.

8  Plaintiffs assert that Graniterock never informed its drivers that it was not enforcing the one-

9  day notice provision in the ODMPA after the April 23 Order, but this assertion is irrelevant

10  since Plaintiffs stipulated that the one-day revocation provision had nothing to do with any

11  driver's decision not to revoke the ODMPA. (RT 1129:10-12; Exh. 563)  The Court finds that

12  Plaintiffs did not prove that Graniterock acted "willfully" within the meaning of Section 203.

13  Since Plaintiffs failed to prove the essential elements of this claim, as well as failing to prevail

14  on their First Cause of Action, the Court therefore grants judgment in favor of Graniterock on

15  Plaintiffs' Second Cause of Action.

16
17  **H.    Plaintiffs' Third Cause Of Action For Wage Statement Penalties**

18
19    Labor Code § 226(a) specifies nine categories of information that must be provided on

20  wage statements, including the hours worked.  Plaintiffs contend that Graniterock violated

21  Section 226(a) not because it excluded any of these categories, but because Graniterock failed

22  to state that Plaintiffs had earned one additional hour of pay for meal periods not provided, the

23  very issue in this case.  The legislative history shows that the purpose of Section 226 was for

24  transparency, not double recovery.  *See* Cal. Dept. of Indus. Relations, Enrolled Bill Rep. on

25  A.B. No. 3731 (1976) at p. 1 ("[e]mployees would benefit by having an itemized statement of

26  deductions which would include both the gross and net wages so that they will be in a better

27  position to evaluate the effect of payroll deductions and their accuracy."); Assem. Com. On

28  Lab. Relations, Analysis of A.B. No. 3731 (1976), pp. 1-2 ("The purpose of requiring greater

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

21

Exhibit F

wage stub information is to insure that employees are adequately informed of compensation received and are not shortchanged by their employers.") The DLSE has agreed that the purpose of the wage statement requirement is to provide transparency as to the calculation of wages." Cal. DLSE Op. Ltr (May 17, 2002), p. 3; Cal. DLSE Op. Ltr (July 6, 2006), p. 2. This Court granted judicial notice of these documents, finds them persuasive and adopts their reasoning. *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 324 (2005).

In keeping with this legislative history, courts have interpreted the purpose of Section 226 to be a statutory requirement that employers provide sufficient, itemized wage-related statements that the employee may easily determine whether he or she has been appropriately compensated for hours worked. *Wang v. Chinese Daily News, Inc.*, 435 F.Supp.2d 1042, 1050-51 (C.D. Cal. 2006).

The Court finds that § 226(a) is intended to ensure that employers provide accurate itemized wage statements to employees, not to govern employers' obligations with respect to meal periods. Graniterock indicates on the statements when a penalty hour is given, denoting it as Code 38 pay. Consequently, since Plaintiffs admit that Graniterock's wage statements accurately stated the pay they *were* provided, and because there is a separate Labor Code section addressing the one hour meal period penalty, judgment is granted on this cause of action.

In addition, to prevail Plaintiffs must show that the class "suffer[ed] injury as a result of a knowing and intentional failure by an employer to comply" with the requirements of Section 226(a). *Elliot v. Spherion Pacific Work*, 572 F.Supp.2d 1169, 1179-80 (C.D. Cal. 2008). Plaintiffs have not offered such proof of injury. Plaintiffs concede, as they must, that Code 38 pay was clearly shown on the wage statements when it was paid. (Jt. Exh. 11) Thus whether the class was paid for meal periods missed was not hidden nor did it require computation. The only evidence Plaintiffs offered is that they had difficulty determining when meal periods were missed. (RT 1607:18-28) But this is not the type of "injury" contemplated by the statute since there is no legal requirement that wage statements provide this information. Plaintiffs are

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

22

Exhibit F

1  attempting to bootstrap the one hour's pay that they seek in their Fifth Cause of Action as

2  evidence of injury for this cause of action, resulting in a double recovery.

3          Even assuming that Plaintiffs were able to overcome their hurdles in proving a § 226(e)

4  claim, Dr. Drogin's penalty calculations (Pltfs. Ex. 10) assume that the violations are spread

5  randomly across the drivers' days, weeks, locations and time, as well as across drivers, despite

6  evidence that the number of missed meal periods was not the same from driver to driver nor

7  randomly spread across locations or time periods.   The Court concludes that Dr. Drogin's

8  random distribution methodology biased his penalty calculation upwards.  (RT 7/7 41:4-45:17;

9  Exh. 554)   Dr. Levy's testimony established that as a result of Dr. Drogin's biased

10 methodology, Dr. Drogin inflated the total penalties by spreading penalties from those drivers

11 who reach the cap of $4,000 to other employees who were not entitled to recover additional

12 penalties.   (Id.)   The Court therefore rejects Plaintiffs' penalty calculation and finds that

13 Plaintiffs failed to meet their burden of proving the amount of penalties to which they would be

14 entitled, even assuming they were able to prove each of the other essential elements of this

15 claim, which they have not done.

16

17          Further, if Plaintiffs could prove injury, they still must show that the inaccuracies in the

18 wage statements were "knowing and intentional."  Lab. Code § 226(e).  Plaintiffs claim that

19 because Graniterock "knew" it was violating Labor Code Section 226.7 in not paying one

20 hour's wage that it automatically knowingly and intentionally violated Section 226(e).  Yet, the

21 two obligations are not identical and thus proof of violation of one statute does not prove a

22 knowing and intentional violation of the other.  Graniterock disputes in good faith that the one

23 hour penalty pay is due. (RT 7/7 116:13-117:5)  Plaintiffs consequently did not prove a

24 knowing and intentional inaccuracy in Graniterock's wage statements.  The Court finds this an

25 independent reason to grant judgment in Graniterock's favor on this Third Cause of Action, and

26 as   a   result   enters   judgment   for   Graniterock   on   this   cause   of   action.

27 //

28

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

23

Exhibit F

**I.      Plaintiffs' Claim for Penalties Under PAGA**

Plaintiffs seek the default penalty under PAGA, Labor Code § 2699(f), based on an alleged violation of Labor Code § 226.7, which requires one hour's pay for meals that were not provided. Since Plaintiffs have not met their burden to prove that meals were not provided or to establish a violation rate, the Court finds that Plaintiffs are not entitled to PAGA penalties.

**J.      The Higher "Subsequent Violation" Rate to Calculate Penalties Under PAGA**

Plaintiffs cannot obtain penalties that might be awarded under Labor Code Section 2699(f) for more than the $100 per pay period rate as no court or agency has found Graniterock to have violated Labor Code § 226.7. Labor Code § 2699(f) provides two penalty rates: "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation;" and "two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Plaintiffs interpret the statute to apply the "subsequent violation" rate to every pay period after the very first pay period up to the date of judgment. But Plaintiffs have no legal authority to support this interpretation. To the contrary, similar statutory language referencing "initial" violations has been held to refer to *all* violations before a court judgment or administrative citation, whereas "subsequent" violations references those occurring after a judgment was rendered.

In *Amaral*, the court interpreted the amount of penalties to be imposed under Labor Code §§ 210 and 225.5, which provide for "a civil penalty...(a) for any initial violation, one hundred dollars ($100) for each failure to pay each employee; (b) for each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee...." The Court held that this language contemplates the imposition of repeated penalties for each pay period that an "initial violation" continues. Therefore, a "subsequent" violation (which carries a double penalty) means something other than an underpayment occurring after the first pay period.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

24

In *Amalgamated Transit Union Local v. Laidlaw Transit Services*, 2009 U.S. Dist. Lexis 69842 (S.D. Cal. Aug. 10, 2009), the court likewise interpreted the penalty rate under Labor Code § 558, which provides that "[f]or any initial violation, fifty dollars ($50.00) for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages," and "[f]or each subsequent violation, one hundred dollars ($100.00) for each underpaid employee for each pay period during which the employee was underpaid...." Relying on *Amaral*, the court held that this language imposed the initial violation rate until and unless a court or commissioner had notified the employer of a violation. *Id*. at *26-27.

Like the statutory schemes considered by *Amaral* and *Amalgamated Transit*, the PAGA default penalty requires the initial violation rate of $100 per pay period if the Court were inclined to impose such PAGA default penalties. The California Division of Labor Standards Enforcement has agreed with this interpretation. DLSE Dec. 23, 1999 Memo.

None of Plaintiffs' attempts to justify their interpretation of the statute has merit. Plaintiffs contend that *Amaral* concerned violations that occurred before PAGA was passed. Yet this distinction is not valid because *Amaral* actually considered whether the imposition of penalties under PAGA had been proper. Plaintiffs' attempt to distinguish *Amaral* on the basis that meal periods were not at issue is not persuasive since the statutory construction is the same. Plaintiffs contend that their mere issuance of a notice by Plaintiffs' counsel to the Labor and Workforce Development Agency ("LWDA") and the employer, as required by Section 2699.3(a)(1), is sufficient to trigger the higher subsequent violation rate. The notice gives the agency an opportunity to investigate, and if it chooses not to investigate, then the employee may bring suit pursuant to Section 2699. *Id*., § 2699.3(a)(2). No citation or finding of wrongdoing ensues from this notice letter, and it hence is hardly the equivalent of an agency finding after an investigation. *Amalgamated Transit*, 2009 U.S. Dist. Lexis 69842 at *25 (rejecting this argument).

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

25

Plaintiffs dismiss this decision as not binding, but Plaintiffs ignore *Amaral*, which is binding on this Court and supports Graniterock. Further, Plaintiffs simultaneously ask this Court to rely on another non-binding federal district court case, *Smith v. Brinker International*, 2010 U.S. Dist. Lexis 54110 (N.D. Cal. May 5, 2010), as supposedly holding that the higher subsequent violation rate applies to the second pay period. While the defendant there calculated penalties in the manner Plaintiffs here advocate, the court did not hold that this calculation method was correct. It merely found that "solely for convenience," even accepting the employer's assumptions that maximized the amounts of penalties at issue, the $75,000 threshold still was not met.

In sum, the "initial" violation rate applies here because Graniterock has not been adjudged liable. Further, under the one year statute of limitations, the penalties cannot begin on December 18, 2006—as calculated by Plaintiffs' expert—but instead cannot start until January 17, 2007, one year before the complaint was filed. *Thomas v. Home Depot USA, Inc.*, 527 F.Supp.2d 1003, 1008 (N.D. Cal. 2007).[4]

Further, PAGA penalties are assessed on a pay period basis, meaning that the same penalty can be assessed per employee per pay period regardless of whether only one meal period is missed or all five meal periods are missed in that pay period. Thus, the amount of penalties assessed would vary depending upon how those missed meal periods are distributed among workweeks and among drivers. (7/7 RT.41:4-45:17.) Dr. Drogin's calculation of PAGA penalties utilizes a random distribution method that assumes that these missed meal periods were spread evenly across the drivers' days, weeks, locations and time, as well as across drivers, despite the fact that Dr. Drogin's own analysis shows that violation rates are not randomly spread across locations or time periods. (RT 7/7 41:8-28.) Dr. Drogin's calculation

---

[4] While Plaintiffs might arguably have been entitled to tolling for *up to* 33 calendar days (the maximum time period under Section 2699.3(a)(2)(A) for the LWDA to respond to a notice sent by Plaintiffs' counsel under Section 2699.3(a)(1)), they offered no evidence to establish when—or whether—the Labor and Workforce Development Agency issued a non-investigation notice, and thus Plaintiffs did not establish what tolling period under Labor Code section 2699.3(d) might apply.

1   results in an assessment of penalties for the maximum number of workweeks—all but two

2   workweeks in a single year. (*Id*; Exh. 553)  If one instead assumed that missed meal periods

3   were clustered, the number of workweeks in which a penalty would be assessed would drop

4   significantly. (Exh. 553)  The Court thus rejects Dr. Drogin's calculation as biased upward.

5        The flaw in Dr. Drogin's analysis highlights another failure in Plaintiffs' proof.  By

6   statute, PAGA penalties are required to be assessed for specific pay periods in which rights

7   were shown to be violated.  An "aggrieved employee" is defined as one "against whom one or

8   more of the alleged violations *was committed*." Lab. Code § 2699(c).  Subsection (f) states that

9   "any assessment of penalties for violations of the Labor Code must be made as to 'each

10  aggrieved employee per pay period.'"  *See Hibbs-Rines v. Seagate Technologies*, 2009 U.S.

11  Dist. Lexis 19283 at *11 (N.D. Cal. Mar. 2, 2009).  Plaintiffs do not offer evidence as to each

12  "aggrieved employee."  Evidence that is extrapolated to a class fails to show that employees are

13  entitled to any penalties or for which pay periods.   Plaintiffs' statistical evidence is thus

14  irrelevant to their PAGA claims and must be excluded for that purpose.  Since Plaintiffs assume

15  that each driver was injured, and offer no evidence as to which pay periods those injuries

16  occurred, this evidence is insufficient to assess penalties as to "each aggrieved employee per

17  pay period."  Plaintiffs thus failed to prove the amount that could be owed as civil penalties

18  even assuming they had been able to otherwise establish entitlement to penalties under PAGA,

19  which they have not.

20

21       The Court finds under these circumstances it would be unjust, arbitrary and improper to

22  impose any, let alone millions of dollars in PAGA penalties.  The Court therefore exercises its

23  discretion under Section 2699(e)(2) to eliminate PAGA penalties and grant judgment for

24  Graniterock on Plaintiffs' Fourth Cause of Action.

25

26  **K.      Injunctive Relief**

27       Plaintiffs seek an injunction to compel Graniterock to require all drivers to either take

28  an off-duty 30 minute meal period or receive one hour's wage every day.  This request is

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

27

Exhibit F

1   denied.

2       Plaintiffs are all former employees with no stake in what happens at Graniterock after

3   judgment. Not one current truck driver testified in support of Plaintiffs. Current truck drivers

4   testified consistently that they were satisfied with their ability to obtain a meal period when

5   they wanted one. This Court is reluctant to use the claims of former employees who will derive

6   no benefit from the injunction to alter dramatically the lives of current employees. *Sepulveda*

7   *v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 245 (C.D. Cal. 2006). "Unless the named plaintiffs

8   are themselves entitled to seek injunctive relief, they may not represent a class seeking that

9   relief." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Moreover, Mr.

10  Woolpert has instructed dispatchers to ensure that off-duty meal periods are given to any driver

11  who revokes an ODMPA without waiting one day. (RT 7/11 1494:18-1495:3) This Court

12  therefore finds in its discretion that injunctive relief is not warranted.

13

14      **L.      Defendant's Request to Decertify the Class**

15

16      In light of the Court's decision as to all other claims, this request is denied as moot.

17

18      **M.      Plaintiffs' Objections to Proposed Decision**

19      As noted, following the service of the Court's Tentative Decision Plaintiffs submitted a

20  "Request for Statement of Decision on Principal Controverted Issues" on September 6, 2011

21  ("Plaintiffs' Request"). The Court considers Plaintiffs' Request to be pursuant to Code of Civil

22  Procedure §634; it asks that the Court make additional rulings on forty-five "principal

23  controverted issues."

24      A statement of decision must explain the legal and factual basis of the decision "as to

25  each of the principal controverted issues" at trial. Code of Civil Procedure. § 632. Findings on

26  subsidiary issues are not required. Where, as here, the court has addressed the ultimate issues

27  in the case and has set out the ultimate facts supporting that determination as well as the legal

28  basis for its decision, the court has met the requirements of Section 632. *Muzquiz v. City of*

*Emeryville*, 79 Cal. App. 4th 1106, 1125-1126 (2000) (finding adequate a statement of decision which stated that plaintiff had not borne her burden of proving the stated reasons for eliminating her position were pretextual and addressed the ultimate facts and legal basis supporting that determination).

The Court is not required to address how it resolved intermediate evidentiary conflicts or respond point by point to the forty-five various issues posed in Plaintiffs' Request. *Pannu v. Land Rover North America, Inc.*, 191 Cal. App. 4th 1298, 1314 (2011). For example, in *Marriage of Balcof*, 141 Cal. App. 4th 1509, 1530 (2006), the appellate court explained that the trial court was not required to provide a statement of decision addressing every single one of a litigant's thirty-seven questions included in its request for a statement of decision on "principal controverted issues." Likewise, in *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1380 (1993), the appellate court held that a statement of decision adequately covered principal issues although it failed to respond to a party's outline of thirty-six issues claimed to be in controversy.

After further review the Court concludes this decision fully complies with the statutory requirements.

## III.    CONCLUSION AND ORDER

The salutary concept of ensuring employees have time for a lunch break is not subject to dispute. Whether for health, safety,[5] or morale issues this concept merits consideration and compliance by employers. Here the Court concludes that the overwhelming evidence is that the nature of the concrete business renders a routinized lunch break for mixer drivers difficult, if not impossible, making on-duty meal period agreements permissible under the Wage Order. The evidence presented was consistent that the class members – including the class representatives themselves – are content to eat while waiting in line for their truck to be filled

---

[5] There was no evidence that safety problems occurred as a result of Defendant's practices *vis a vis* the meal break issue.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*                                    29
*Statement of Decision*

Exhibit F

or emptied, or to forego their lunch break and leave work early instead.

This is not a case where class members toil in ignorance and it is only when a lawsuit is brought do they become aware of their possible recovery. Defendant took reasonable steps through meetings, handbooks, and posted materials, to inform the drivers of their rights, and to compensate them in those instances when they had not signed or had revoked their ODMPA. It is striking that no grievances were filed regarding the Defendant's practices in this regard, including complaints to the union although several of the drivers/witnesses were union shop stewards. At bottom, the drivers knew what their rights were but elected to forego those rights for their own reasons.

As has been stated in the context of insurance bad faith claims "litigation is not a game", *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 20. This Court declines to adopt a "gotcha" theory of litigation that imposes liability when the facts and real-world concerns dictate no liability.[6] The Court concludes this is such a case as Plaintiffs did not sustain their burden of proof.

Judgment shall be entered for Defendant on all claims. Defendant shall prepare a form of judgment and submit it to the Court after opposing counsel has had an opportunity to review it. Defendant to recover its costs.

IT IS SO ORDERED.

Dated: September 20, 2011

Honorable James P. Kleinberg
Judge of the Superior Court

---

[6] *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644, 654.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

30

# ENROLLED BILL REPORT

A-117 (REV. 8/

| AGENCY AGRICULTURE & SERVICES | BILL NUMBER AB 3731 |
|---|---|
| DEPARTMENT, BOARD OR COMMISSION INDUSTRIAL RELATIONS | AUTHOR Lockyer |

Requires employers to provide wage deductions on payroll stubs and permits employees suffering injury by an employer who knowingly or intentionally fails to provide this information to recover actual damages and reasonable attorney fees.

The current law requires employers to supply most of the information but does not specifically provide for damages. Such damages would be in the nature of loss of benefits under a health and welfare plan if the employer failed to make contributions or deductions and the employee was unaware of such failure due to lack of information on the payroll stub.

Employees would benefit by having an itemized statement of deductions which would include both the gross and net wages so that they will be in a better position to evaluate the effect of payroll deductions and their accuracy. Permits employer to aggregate those deductions authorized in writing by the employee. Most enlightened employers now provide this information as it prevents disputes.

Fiscal impact - Minimal.

Support - labor organizations; opposition - employer associations.

Al Reyff, Assistant Labor Commissioner
Division of Labor Standards Enforcement
Telephone:  Office (415) 557-3827    ATSS 597-3827
            Home  (415) 564-2807

Exhibit G

Exhibit H

ASSEMBLY COMMITTEE ON LABOR RELATIONS
Bill Lockyer, Chairman

HEARING DATE:  May 18, 1976

BILL:     AB 3731  (As Amended May 12, 1976)

AUTHOR:  Lockyer

SUBJECT:  Wage Statement and Workers Compensation Information

BACKGROUND

   Existing law requires employers to provide a wage stub or
statement showing all deductions, dates of pay period, name of
employee and employer.  There are no penalties for a failure to
comply with this provision.

   Employers are also required to conspicuously post at their
place of employment the name of the current workers compensation
insurance carrier and to inform injured employees of
compensation benefits.

PROPOSED LEGISLATION

   In addition to those items now required under law to be shown on
wage stubs, this measure requires the listing of gross and net
income, and all deductions by item, and entitles any employee
to damages for any injury suffered as a result of an employer's
knowing and intentional failure to provide wage information.

   This measure also requires every employer, except homeowners
employing domestics, to inform every new employee of workers
compensation benefits and medical treatment, and the procedure
for obtaining such benefits and treatment in the event of an
employee's work injury.

ANALYSIS

   The purpose of requiring greater wage stub information is to
insure that employees are adequately informed of compensation
received and are not shortchanged by their employers.  Lack of
wage information or improper information can also make it difficult
for employees to establish eligibility for unemployment insurance.

   The requirement that employees be informed of workers
compensation benefits and medical treatment will insure that
employees are aware of their rights to treatment and benefits
and know the correct procedure to obtain them.  There is

Exhibit H

Exhibit H

AB 3731                          -2-

evidence that certain workers, particularly non-english
speaking, are not aware of workers compensation and fail to
receive benefits when injured. Presently, many employers voluntarily
provide such information.


    This measure is supported by the California Rural
Legal Assistance and the Western Conference of Teamsters.

Exhibit H

Exhibit I

**STATE OF CALIFORNIA**                                                    Arnold Schwarzenegger, *Governor*

DEPARTMENT OF INDUSTRIAL RELATIONS

Headquarters

P.O. Box 420603
San Francisco, CA  94142
Tel: (415) 703-4810
Fax: (415) 703-4807

**Robert A. Jones**
*Acting State Labor Commissioner
and Chief Counsel
Division of Labor Standards Enforcement*

July 6, 2006

Colette Wolf
Boise Cascade LLC
Legal Department
11111 West Jefferson Street
P.O. Box 50
Boise, Id. 83728

        Re: Electronic Itemized Wage Statements

Dear Ms. Wolf:

        Thank you for your inquiry concerning the application of Labor Code section 226(a). Specifically, you have requested an opinion as to whether under certain circumstances an employer's obligation to provide an employee with a "wage statement" may be met by providing an employee with such a record in electronic form, as an alternative to a "hard copy" paper document.

        The requirement for an employer to provide employees with wage statements is contained in Labor Code section 226(a). Section 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or an applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if

**2006.07.06**

Exhibit I

Exhibit I

the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates[1] in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

The purpose of the wage statement requirement is to provide transparency as to the calculation of wages. A complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that deductions from wages are proper.[1] Section 226(a) makes it possible for an employee to retain a copy of his/her own pay records which are not subject to alteration.

Labor Code section 226(a) indicates that a wage statement may be in the form of an "accurate itemized statement in writing" when the employee is paid by personal check or cash. Labor Code section 8 states in pertinent part:  "Writing includes any form of recorded message capable of comprehension by ordinary visual means." As an electronically stored wage statement which is accessible by an employee may be read on a screen or printed and read as a hard copy, it appears to qualify as a "statement in writing."

Section 226(a) provides that an employee being paid with a payroll check be provided a wage statement as a "detachable part of the check." While the reference to "detachable part of the check" is susceptible to an interpretation that a "hard copy" may be required, in the context of the entire subsection it appears to allow for the continued use of the convenient and traditional "pay stub" alternative to a separate statement in writing.

The apparent intent of both forms of wage statements described in Section 226(a) is to allow employees to maintain their own records of wages earned, deductions, and pay received. The Division in recent years has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at

---

[1]  Whether an employee is properly classified as exempt from the overtime pay requirements of Labor Code section 510 and the IWC Orders is not susceptible to verification from review of the wage statement alone. However, a wage statement may reveal that an employee is non-exempt if it shows that an employee is paid a salary of less than twice the minimum wage calculated on the basis of a 40 hour week. See Labor Code section 515(a).

**2006.07.06**

Exhibit I

Exhibit I

no expense to the employee. Additionally, the Division has indicated that the record keeping requirements of Labor Code section 226 and 1174 must be adhered to and the pay records must be retained by the employer for a period of at least three years and be accessible by employees and former employees. Any electronic wage statement system must incorporate proper safeguards that ensure the confidentiality of the employee's confidential information.

The system envisioned by your client appears to meet the concerns outlined above. Your client indicates that its electronic wage statement procedures will incorporate the following features:

1.  An employee may elect to receive paper wage statements at any time;

2.  The wage statements will contain all information required under Labor Code section 226(a) and will be available on a secure website no later than pay day;

3.  Access to the website will be controlled by unique employee identification numbers and confidential personal identification numbers (PINs). The website will be protected by a firewall and is expected to be available at all times with the exception of downtime caused by system errors or maintenance requirements;

4.  Employees will be able to access their records through their own personal computers or by company provided computers. Computer terminals will be available to all employees for accessing these records at work.

5.  Employees will be able to print copies of their electronic wage statements at work on printers that are in close proximity to the computer or computer terminal. There will be no charge to the employee for accessing their records or printing them out. Employees may also access their records over the internet and save it electronically and/or print it on their own printer.

6.  Wage statements will be maintained electronically for at least three years and will continue to be available to active employees for that entire time. Former employees will be provided paper copies at no charge upon request.

There is no requirement for employers to obtain approval from the Division before implementing an electronic wage statement system. Indeed the Legislature has not established such a duty on the part of the DLSE or provided DLSE with such administrative authority. As with most provisions of the Labor Code employers are required to comply without any formal action by the Labor Commissioner.[2] Due to both changes in the law and confusion that has resulted from previous Opinion Letters 1999.07.19 and 2002.12.04, this letter supersedes them and they are withdrawn.

---

[2] Some provisions of the Labor Code and Wage Orders require prior Labor Commissioner action in the form of issuance of a registration, granting of approval, or provision of consent. For example, there are registration requirements in the garment, car wash, and farm labor industries which require employers to obtain a registration from the Labor Commissioner prior to employing workers. Similarly, employers must obtain the "consent" of the Labor Commissioner before a minor may be employed in the entertainment industry. Employers also may apply to the Labor Commissioner for exemptions to certain sections of the Orders of the Industrial Welfare Commission. [These examples are not intended as an exhaustive list of such provisions.]

**2006.07.06**

Exhibit I

Exhibit I

This opinion letter sets forth an interpretation of Labor Code section 226(a) which is utilized in our administrative enforcement efforts of the wage statement requirement. This interpretation is based on our understanding as to the current state of the law and, of course, is subject to subsequent interpretations by the courts and/or action of the Legislature. Employers are advised that while the courts may find this opinion of the enforcement agency to be persuasive authority, they are not required to follow this interpretation and that compliance with the guidelines suggested herein do not establish a "safe harbor" in actions brought by private parties under auspices of the Labor Code Private Attorneys General Act of 2004 (PAGA) or other private enforcement actions.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the questions presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Division of Labor Standards Enforcement.

Thank you for your attention to the requirements of the California wage and hour laws and your inquiry.

Very Truly Yours,

/s/

Robert A. Jones
Chief Counsel and Acting
Labor Commissioner

2006.07.06

Exhibit I

Exhibit J

STATE OF CALIFORNIA

DEPARTMENT OF INDUSTRIAL RELATIONS

INDUSTRIAL WELFARE COMMISSION

Public Hearing

June 30, 2000

State capitol, Room 4202

Sacramento, California

Exhibit J

Exhibit J

2

<u>P A R T I C I P A N T S</u>

--o0o--

<u>Industrial Welfare Commission</u>

BILL DOMBROWSKI, Chair

BARRY BROAD

LESLEE COLEMAN

DOUG BOSCO

HAROLD ROSE



<u>Staff</u>

ANDREW R. BARON, Executive Officer

MARGUERITE STRICKLIN, Legal Counsel

RANDALL BORCHERDING, Legal Counsel

MICHAEL MORENO, Principal Analyst

DONNA SCOTTI, Administrative Analyst

NIKKI VERRETT, Analyst

Exhibit J

I N D E X

Page

Proceedings                                                      6

Approval of Minutes                                             6

Amendments to Wage Orders                                       7

Reconsideration of May 26 Actions re Healthcare               11

    TOM RANKIN, California Labor Federation, AFL-CIO   15

    ALLEN DAVENPORT, Service Employees International   16
        Union

    BARBARA BLAKE, United Nurses Associations of       17
        California, AFSCME

    RICHARD HOLOBER, California Nurses Association      18

    DON MADDY, George Steffes, Inc.; California         19
        Healthcare Association

Meal and Rest Period Proposals                                 23

    TOM RANKIN, California Labor Federation, AFL-CIO   25

    JULIANNE BROYLES, California Chamber of Commerce   26

    JAMES ABRAMS, California Hotel and Motel           27
        Association

    SPIKE KAHN, AFSCME Council 57                      30

Amendment to Wage Order 5 - Personal Attendants,               33
Resident Managers, 24-Hour Childcare

Commercial Fishing Regulations                                 35

Ski Industry Regulations                                       38

    TOM RANKIN, California Labor Federation, AFL-CIO   39

Exhibit J

            PAM MITCHELL, Mammoth Mountain Ski Area employee  41

            BILL CAMP, Sacramento Central Labor Council       43


INDEX (Continued)                                        Page

            MARCIE BERMAN, California Employment Lawyers      44
                Association

            PATRICIA GATES, Van Bourg, Weinberg, Roger &      45
                Rosenfeld

            BOB ROBERTS, California Ski Industry Associations 47

Executive, Administrative, and Professional Duties       59

            BRUCE YOUNG, California Retailers Association      61

            LYNN THOMPSON, Law Firm of Bryan Cave, LLP;       63
                California Retailers Association

            ART PULASKI, California Labor Federation, AFL-CIO 106

            TOM RANKIN, California Labor Federation, AFL-CIO 111

            WALLY KNOX, California State Assembly member      113

            JUDY PEREZ, Communication Workers of America     117

            MARCIE BERMAN, California Employment Lawyers      117
                Association

            LAURA HO, Saperstein, Goldstein, Demchak &       124
                Baller

            PATRICIA GATES, Van Bourg, Weinberg, Roger &     126
                Rosenfeld

            TOM BRANDEN, Machinists Union, District          135
                Lodge 190

            DON HUNSUCKER, United Food and Commercial        137
                Workers Local 1288

            WALTER JOHNSON, San Francisco Labor Council      145

Exhibit J

5

| | |
|---|---|
| Summaries and Statements as to the Basis | 161 |
| Extension of Interim Wage Order 2000 | 162 |
| Other Business | 163 |
| MARY LOU THOMPSON, Littler, Mendelson, Fastiff, Tichy & Mathiason | 163 |

INDEX (Continued)                                                    Page

| | |
|---|---|
| TOM RANKIN, California Labor Federation, AFL-CIO | 166 |
| Adjournment | 167 |
| Certificate of Reporter/Transcriber | 168 |

Exhibit J

1            COMMISSIONER ROSE:  Aye.

2            COMMISSIONER DOMBROWSKI:  Five to nothing.  That

3    is adopted.

4            Let's go to Item 4.  Commissioner Broad has

5    circulated language concerning meal periods and rest

6    periods for Orders 1 through 13 and 15.  Would you like

7    to --

8            COMMISSIONER BROAD:  Yes, Mr. Chairman.  This is

9    a rather -- a relatively small issue, but I think a

10   significant one, and that is we received testimony that

11   despite the fact that employees are entitled to a meal

12   period or rest period, that there really is no incentive

13   as we establish it, for example, in overtime or other

14   areas, for employers to ensure that people are given

15   their rights to a meal period and rest period.  At this

16   point, if they are not giving a meal period or rest

17   period, the only remedy is an injunction against the

18   employer or -- saying they must give them.

19           And what I wanted to do, and I'd to sort of

20   amend the language that's in there to make it clearer,

21   that what it would require is that on any day that an

22   employer does not provide a meal period or rest period in

23   accordance with our regulations, that it shall pay the

24   employee one hour -- one additional hour of pay at the

1  employee's regular rate of compensation for each workday

2  that the meal or rest period is not provided.

3          I believe that this will ensure that people do

4  get proper meal periods and rest periods.  And I would --

5          COMMISSIONER DOMBROWSKI:  Let me ask a question.

6  If you're an employer and you provide for a 30-minute

7  meal period a day, and your employee misses that meal

8  period or eats while working through that meal period, I

9  believe you get paid, correct?  It's a paid -- it would

10  then be a paid meal period.

11          COMMISSIONER BROAD:  Yes, it would be a paid

12  meal period.

13          COMMISSIONER DOMBROWSKI:  Right.

14          COMMISSIONER BROAD:  I mean, assuming they pay

15  you for it.  I mean --

16          COMMISSIONER DOMBROWSKI:  Assuming that -- well,

17  okay.  Does this say, then, if you had a 30-minute meal

18  period as your standard procedure, you would get -- and

19  you missed that, you get an hour's worth of pay?  Is that

20  what I'm -- additional -- an hour additional pay.

21          COMMISSIONER BROAD:  If your employer did not

22  let you have your meal period, I think, is what it says.

23  So it's -- it doesn't involve, you know, waivers of a

24  meal period or time off or anything of that sort.  And

1    rest periods, of course, are somewhat different.

2    Employers are obligated to provide rest periods --

3              COMMISSIONER DOMBROWSKI:  Correct.

4              COMMISSIONER BROAD:  -- duty-free and must pay

5    for them.  So if you don't provide a rest period, then

6    the -- you know, the employee gets their day's pay, but

7    they don't get the rest, and so that's -- with respect to

8    a meal period, it doesn't have to be compensated.

9              COMMISSIONER DOMBROWSKI:  Okay.

10             COMMISSIONER BROAD:  So it's particularly

11   egregious with regard to rest periods.

12             COMMISSIONER DOMBROWSKI:  Okay.  I don't -- does

13   anyone wish to testify on this item?

14             MR. RANKIN:  Tom Rankin, California Labor

15   Federation.

16             I would like to express our support for

17   Commissioner Broad's proposal.  As he stated, the problem

18   exists right now that there is no remedy for a missed

19   meal period or a missed rest period.  And what his

20   proposal does is provide a remedy.

21             And the purpose of the rest period and the meal

22   period is, in the case of rest periods, to have a rest

23   break where an employee is relieved from work duties.

24   The same is true for meal periods, to provide a break

Exhibit J

28

1    where people can partake of a meal.  It is not sufficient

2    that they -- if they don't get their meal period, they

3    simply get paid for that half hour.  Sure they do;

4    they're working that half hour.  I would hope they would.

5              This provision of Mr. Broad's at least provides

6    a minor disincentive for employers not to deny employees

7    their rights to rest and meal breaks.

8              MS. BROYLES:  Good morning, commissioners.

9    Julianne Broyles, from the California Chamber of

10   Commerce.

11             We had not been apprised, of course, of this

12   particular provision early on.  Otherwise we probably

13   would have had more extensive comments on it.

14             I guess I would have to, first of all, raise the

15   issue of the authority to establish a new crime, which

16   basically this is doing.  Additionally, we would also

17   point out that if the employee has missed a meal period,

18   they are going to be paid for the meal period in almost

19   all instances.  In terms of setting up a new penalty and

20   a crime for basically missing a rest period, as far as I

21   know there is no statute that would permit that to be

22   done.  And we would oppose this particular amendment.

23             MR. ABRAMS:  Thank you, Mr. Chairman, members of

24   the Commission.  My name is Jim Abrams.  I'm with the

Exhibit J

1    California Hotel and Motel Association.

2          And two issues:  first of all, we also question

3    the legislative authority of the Commission to, in

4    essence, adopt and impose new penalties with respect to

5    violations of what is, in essence, a statute, and then

6    the statute picking up the regulations of the Industrial

7    Welfare Commission.  So, we object to and question the

8    authority of the IWC to adopt this particular provision.

9          If, however -- and not conceding the point --

10   if, however, this type of language is adopted, I have

11   several questions.

12         First of all, Commissioner Broad, is it your

13   intent that the hour of pay that you reference here would

14   be treated as an hour worked for purposes of calculating

15   daily or weekly overtime?

16         COMMISSIONER BROAD:  No.

17         MR. ABRAMS:  I think -- and again, not conceding

18   that the Commission has any authority to adopt any such

19   provision as this, but if you decide to do so, I would

20   suggest to you that you need to make that clear.

21         Secondly, I -- I'm not sure I understood your

22   comments with regard to on-duty -- agreed upon on-duty

23   meal periods.  I -- I think, in reading the language

24   here, my understanding was that it was intended that an

1   agreed upon on-duty meal period, for which the employee

2   is, in fact, paid for the half hour that he or she is

3   working, in essence, does not enter into this equation at

4   all.  But you made a comment a moment ago that quite --

5   with all due respect, confused me.  I just want to

6   clarify that.

7           COMMISSIONER BROAD:  The employer who, under our

8   regulations, lawfully establishes an on-duty meal period

9   would not be affected if the employee then takes the on-

10  duty meal period.  This is an employer who says, "You do

11  not get lunch today, you do not get your rest break, you

12  must work now."  That is -- that is the intent.

13          Let me respond, if I may.  Clearly, I don't

14  intend this to be an hour counted towards hours worked

15  any more than the overtime penalty.  And, of course, the

16  courts have long construed overtime as a penalty, in

17  effect, on employers for working people more than full --

18  you know, that is how it's been construed, as more than

19  the -- the daily normal workday.  It is viewed as a

20  penalty and a disincentive in order to encourage

21  employers not to.  So, it is in the same authority that

22  we provide overtime pay that we provide this extra hour

23  of pay.  And that --

24          So, now, with regard to creating a new crime, I

1   guess you could argue that anything we do that changes

2   something creates a new crime to the extent that things -

3   - that there are certain aspects of our wage orders that,

4   if violated, can be prosecuted criminally.  But I don't

5   believe we have the authority to establish a new crime in

6   the sense that we could say if you -- if you deny someone

7   their meal period or rest period, that you shall spend

8   six months in jail or a year in jail or it will be a

9   felony and so forth.  No, we cannot establish new crimes.

10  The Legislature, however, can establish crimes for

11  violations of our wage orders, which is their

12  prerogative, not ours.

13          MR. ABRAMS:  Understood.  I -- and on that note,

14  I would -- we -- the California Hotel and Motel

15  Association objects to the proposal on the ground that

16  the -- we submit the Commission does not have the legal

17  authority to adopt such a penalty, also on the ground

18  that if -- to any extent that an employer is required to

19  pay this one hour of pay for a meal period missed, that

20  that has to be offset against whatever penalties the

21  Legislature has established for violation of the

22  Commission's wage orders.  Otherwise you are basically

23  saying to an employer, "You are going to be punished

24  twice."

1          So we object to the proposed amendment.

2          MS. BROYLES:  Mr. Commissioner, can I make one

3    final point?

4          If this is something that the Commission would

5    like to move forward on and put over -- or at least put

6    out notice so --

7          COMMISSIONER DOMBROWSKI:  It was noticed.  It

8    was in the notice.

9          COMMISSIONER BROAD:  It has been in our notice

10   for a month.  I mean, we did --

11         MS. BROYLES:  In terms of the full penalty, the

12   hour penalty?

13         COMMISSIONER BROAD:  No.  The language that's

14   proposed to be adopted has been out there.  I think --

15         MS. BROYLES:  Right.

16         COMMISSIONER BROAD:  -- you may agree with that

17   substantively --

18         MS. BROYLES:  The amendment of Mr. -- of

19   Commissioner Broad.

20         COMMISSIONER BROAD:  -- but there's no last-

21   minute aspect to this at all.

22         MS. KAHN:  Spike Kahn, AFSCME Council 57.

23         I represent quite a few workers in the hospital

24   industry at UCSF that -- just in policy, the clinics are

1  always understaffed and they just never have enough

2  staffing to let that person come out on a break.  It's

3  not every day, it just happens that people, because the

4  clinics are full, the patients are coming, you have to

5  keep the flow going because you don't want your patients

6  to be waiting while you go out.  And day after day,

7  people don't get a break.

8          And I would like to support this amendment and

9  explain that, by having it on the books, it would give us

10  quite a bit of incentive to our employers that they would

11  just start following the contracts and following the laws

12  that are already down there, that you have to have a

13  break, just by having it on the books.  I don't think it

14  would come up that often, in the same way that they don't

15  usually violate any of the -- the overtime laws.  It's

16  just a matter of they would be encouraged much more to

17  not keep on working us through our breaks and our lunch

18  times if it were there.

19          So we're in support of that.

20          COMMISSIONER DOMBROWSKI:  Thank you.

21          Ms. Stricklin, regarding the legal question?

22          MS. STRICKLIN:  You were asking whether there

23  was any legal impediment to such a penalty.  And 516 of

24  the Labor Code allows the Commission to adopt or amend

1   working condition orders with respect to break periods,

2   meal periods, and days of rest.

3          And then again, if you look at Section 558, the

4   last section says that civil penalties provided in 558

5   are in addition to any other civil or criminal penalty

6   provided by law, so that a regulation which sets forth a

7   penalty would just be an additional penalty, which the

8   IWC has the power to do.

9          COMMISSIONER DOMBROWSKI:  Any other questions

10  from the commissioners?

11         (No response)

12         COMMISSIONER DOMBROWSKI:  Okay.  Commissioner

13  Broad, I believe you want to make a motion?

14         COMMISSIONER BROAD:  Yeah.  I'll move it.

15         COMMISSIONER DOMBROWSKI:  Is there a second?

16         COMMISSIONER ROSE:  Second.

17         COMMISSIONER DOMBROWSKI:  Okay.  Call the roll.

18         MR. BARON:  Dombrowski.

19         COMMISSIONER DOMBROWSKI:  No.

20         MR. BARON:  Bosco.

21         COMMISSIONER BOSCO:  Aye.

22         MR. BARON:  Broad.

23         COMMISSIONER BROAD:  Aye.

24         MR. BARON:  Coleman.

35

```
 1              COMMISSIONER COLEMAN:  No.

 2              MR. BARON:  Rose.

 3              COMMISSIONER ROSE:  Aye.

 4              MR. BARON:  Three to two.

 5              (Applause)

 6              COMMISSIONER DOMBROWSKI:  Okay.  I'd like to

 7    move to Item 5, consideration of --

 8              COMMISSIONER BOSCO:  How about a round of

 9    applause for the veterinary?

10              COMMISSIONER BROAD:  Take care of the dogs and

11    cats right now.

12              (Laughter)

13              COMMISSIONER DOMBROWSKI:  Here we are, moving

14    along so well.

15              Item 5, consideration of amendment to Wage Order

16    5 concerning personal attendants.

17              I'd ask Mr. Baron to brief us.

18              MR. BARON:  This is an overall issue that has

19    been discussed previously.  The background to this is

20    that there had been language in the earlier version of

21    the wage orders, in 5-93, that, when we went -- going

22    back to that -- had been changed in '98, but then when we

23    went back to, now, the earlier versions, referenced a 54-

24    hour workday (sic) for these categories of employees.
```

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                                 SAN JOSE DIVISION

11

12   JOHN BARRERA, et al.,              |   Case No. 12-CV-05199-LHK

13                 Plaintiffs,          |   **ORDER GRANTING FINAL**
                                            **APPROVAL OF THE CLASS ACTION**
14         v.                               **SETTLEMENT**

15   THE HOME DEPOT U.S.A., INC.,       |

16                 Defendant.           |

17

18         This matter came before the Court for hearing on February 19, 2015, on the

19   parties' Joint Motion for Final Approval of the Class Action Settlement reached in

20   this action.  All parties appeared through their counsel of record.

21         The Court has considered the papers submitted in support of the Motion, the

22   terms of the Amended Settlement Agreement, the favorable reaction of the

23   settlement class, and that the settlement was reached through vigorous arms-length

24   negotiation and mediation before an experienced class-action mediator, as well as

25   with input from this Court.  Based on the papers and pleadings on file, and the

26   argument presented by counsel, the Court hereby finds as follows:

27         1.     The notice of settlement provided to settlement class members

28

United States District Court
Northern District of California

adequately informed settlement class members of the terms of the settlement.  Since the notice adequately described the release of claims in the settlement, it was not necessary to inform class members of the pendency of *Terria Harris v. Home Depot U.S.A., Inc*., No. 14-cv-04206-VC, filed August 15, 2014 in Alameda County Superior Court, and removed to the Northern District of California, San Francisco Division, on September 17, 2014, which action includes some overlap of claims and putative class members with this action.

2.      In response to the class notice, the claims administrator received three requests to be excluded from the settlement.

3.      The claims administrator and the Court received one objection to the settlement filed by Kamal Chafiane, who objected on the ground that the settlement would not adequately compensate him for emotional distress allegedly caused by the defendant.  The Court finds this objection is without merit as class members cannot recover emotional distress damages under either of the class claims alleged in this action.  *See, e.g*., *Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243, 1256 (2008) (holding that a plaintiff suing for violation of the Labor Code's wage and hour provisions is limited to the remedies provided by the Labor Code; "[t]he breach of an obligation arising out of an employment contract, even when the obligation is implied in law, permits contractual damages but does not support tort recoveries")

4.      Defendant provided notice under CAFA on or about February 13, 2015, and the Court has received no comments or objections from the governmental officials who received CAFA notice.

5.      The settlement is fair, reasonable, and adequate.

The Court therefore makes the following findings and orders:

1.      This Court confirms as final its conditional certification for settlement purposes of the settlement class pursuant to Fed. R. Civ. P. 23(b)(3), as defined in the settlement agreement as: "Any person who worked in one or more Home Depot

2

Case No. 12-CV-05199-LHK
ORDER GRANTING FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

1   retail stores in California and, based on Home Depot's records, was involuntarily

2   terminated by Home Depot at any time from September 4, 2009 through September

3   25, 2014, and was paid wages after his or her date of termination." Agreement, ¶

4   IV.A.2.

5       2.      The Court confirms the appointment of Edgar Padilla as the

6   representative of the settlement class.

7       3.      The Court confirms the appointment of the Diversity Law Group, APC,

8   Polaris Law Group LLP, and Hyun Legal, APC as class counsel for the settlement

9   class.

10      4.      The class notice was distributed to class members, pursuant to this

11  Court's orders, and fully met the requirements of Rule 23 of the Federal Rules of

12  Civil Procedure, due process, and any other applicable law.  The claims

13  administrator employed reasonable means for distribution of the class notice,

14  including reasonable efforts to locate proper addresses for class members whose

15  notices were returned as undeliverable.  All settlement class members who did not

16  timely opt out of the settlement shall be bound by the terms of the settlement

17  agreement whether or not they actually received such notice.

18      5.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the

19  Court grants final approval of the settlement agreement.  The Court specifically

20  finds that the settlement confers a substantial benefit to settlement class members,

21  considering the strength of plaintiffs' claims and the risk, expense, complexity, and

22  duration of further litigation.  The favorable response of the class to the settlement

23  also supports settlement approval.  This Court also finds that the settlement

24  agreement is the result of arms-length negotiations between experienced counsel,

25  after thorough factual and legal investigation, and incorporates input and direction

26  from this Court.  This further supports approval of the settlement.

27      6.      The Court approves an allocation of $25,000 from the settlement fund

28

3

Case No. 12-CV-05199-LHK
ORDER GRANTING FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

United States District Court
Northern District of California

Exhibit K

to the settlement of plaintiff's claim brought pursuant to section 2698 of the California Labor Code.  In compliance with section 2699(i) of the California Labor Code, 75 percent of that amount (i.e., $18,750) shall be paid to the California Labor Workforce and Development Agency, and the remaining 25 percent (i.e., $6,250) will remain part of the settlement fund to be distributed to settlement class members.

7.      The Court finds that the settlement administrator, Gilardi & Co., LLC, is entitled to $35,000 for its administrative fees associated with administering the settlement.

8.      The Court directs the parties to effectuate the payments to settlement class members pursuant to the terms of the settlement agreement.

9.      Neither the settlement nor any of the terms set forth in the settlement agreement constitute an admission by Home Depot of liability to the plaintiff or any member of the settlement class.

10      The Court hereby dismisses the Fourth and Fifth causes of action in the Second Amended Complaint, alleging violations of California Labor Code § 203 and § 2698, respectively, with prejudice.

11.     The Court retains jurisdiction to enforce the terms of the settlement, including the payment of the settlement fund.

**IT IS SO ORDERED.**

Dated: May 20, 2015

_Lucy H. Koh_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

4

Case No. 12-CV-05199-LHK
ORDER GRANTING FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

Exhibit K